ERON Z. CANNON, ESQ.
Nevada Bar No. 8013
McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP
8837 West Sunset Road, Suite 350
Las Vegas, NV 89113
Telephone:      (702) 949-1100
Facsimile:       (702) 949-1101
*eron.cannon@mccormickbarstow.com*
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> RUSSELL J. SHAH, MD, DIPTI R. SHAH, MD, RUSSELL J. SHAH, MD, LTD., DIPTI R. SHAH, MD, LTD., and RADAR MEDICAL GROUP, LLP dba UNIVERSITY URGENT CARE, DOES 1-100, and ROES 101-200, <br><br> Defendants. | CASE NO. ___ <br><br> **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

Plaintiffs ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY (hereinafter collectively referred to as "Plaintiffs" or "Allstate"), by and through their attorneys of record of the law firm McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP, hereby submit the following Complaint for Damages against Defendants RUSSELL J. SHAH, MD ("Dr. Russell Shah"), DIPTI R. SHAH, MD ("Dr. Dipti Shah"), DIPTI R. SHAH, MD, LTD. ("DRS"), RUSSELL J. SHAH, MD, LTD. ("RJS"), and RADAR

1  MEDICAL GROUP, LLP, dba UNIVERSITY URGENT CARE ("Radar" or "UUC"), as more fully

2  set forth below.

### DEMAND FOR A JURY TRIAL

4      1.    Plaintiffs hereby demand a trial by jury on all issues, counts, claims and allegations

5  contained within this Complaint or to be pleaded in the future, if necessary.

### JURISDICTION AND VENUE

7      2.    This action is brought under the Federal Racketeer Influenced and Corrupt

8  Organization Act ("RICO Act"), 18 USC §1961, *et seq.*, and various other Nevada common law

9  doctrines and/or statutes. Jurisdiction is vested in this Court by virtue of 17 USC §501(b) and 28 USC

10  §1331. Plaintiffs' claims brought under Nevada law are so related to Plaintiffs' Federal claims, over

11  which the Court has original jurisdiction, that they form part of the same case or controversy. Under

12  Article III of the United States Constitution, the Court has supplemental jurisdiction over Plaintiffs'

13  Nevada common law and/or statutory claims pursuant to 28 USC §1367.

14      3.    This Court further and alternatively has jurisdiction over this action pursuant to 28

15  USC §1332(a) based upon diversity of citizenship. Plaintiffs are citizens and residents of the State of

16  Illinois. Defendants are citizens and residents of the State of Nevada, and have their principal place of

17  business in the State of Nevada. The amount in controversy exceeds $75,000 exclusive of interest and

18  costs.

19      4.    A substantial part of the acts and omissions giving rise to the claims stated herein

20  occurred in this District (within the cities of Las Vegas and Henderson, in the state of Nevada) and all

21  Defendants are found in this District. Venue is proper in this District and this Division pursuant to 28

22  USC §§1391(b)(2) and (3) and pursuant to 18 USC §1965(b).

### PARTIES TO THIS LITIGATION

24      5.    Plaintiff, ALLSTATE INSURANCE COMPANY, is a corporation incorporated under

25  the laws of the state of Illinois, with its principal place of business in Illinois.

26      6.    Plaintiff, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, is a

27  corporation incorporated under the laws of the state of Illinois, with its principal place of business in

28  Illinois.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

2

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

7.     Plaintiff, ALLSTATE INDEMNITY COMPANY, is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Illinois.

8.     Plaintiff, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Illinois.

9.     Defendant, DIPTI R. SHAH, MD, ("Dr. Dipti Shah") is a competent adult, and a resident of the State of Nevada and has been employed as and working as a doctor of medicine, licensed and practicing within the state of Nevada focusing on internal medicine and nephrology. Dr. Dipti Shah is, and at all relevant times was, a managerial employee and/or agent of the other defendants. Dr. Dipti Shah participated in each of the wrongful acts, omissions and conduct described below and/or had actual and/or constructive notice of the wrongful acts, omissions and conduct perpetrated upon Plaintiffs, as set forth below. At all times relevant herein, Dr. Dipti Shah had both the authority and duty to prevent and correct the same, and by her conduct condoned, supported and ratified such wrongful acts, omissions and/or conduct described herein.

10.    Defendant, DIPTI R. SHAH, MD, LTD. ("DRS") is, and an at all relevant time was, a professional corporation organized under the laws of the State of Nevada, located at 2628 W. Charleston Boulevard, Las Vegas, Nevada. Plaintiffs further allege that Dr. Dipti Shah, at all relevant times, maintained ownership and/or control over, and/or managed DRS and that Dr. Dipti Shah is a corporate officer of DRS. Dr. Dipti Shah has owned, operated and managed DRS since it opened in or about 2007. Dr. Dipti Shah at all times herein relevant has also been employed as a licensed doctor at DRS. Plaintiffs are further informed and believe that at all times relevant herein, Dr. Dipti Shah and Dr. Russell Shah derived a monetary profit from or had a financial interest in DRS.

11.    Defendant, RUSSELL J. SHAH, MD, ("Dr. Russell Shah") is a competent adult, and a resident of the State of Nevada and has been employed as and working as a doctor of medicine, licensed and practicing within the state of Nevada. Dr. Russell Shah is a non-board certified neurologist. Dr. Russell Shah is, and at all relevant times was, a managerial employee and/or agent of the other defendants. Dr. Russell Shah participated in each of the wrongful acts, omissions and conduct described below and/or had actual and/or constructive notice of the wrongful acts, omissions

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

3
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1 | and conduct perpetrated upon Plaintiffs, as set forth below. At all times relevant herein, Dr. Russell

2 | Shah had both the authority and duty to prevent and correct the same, and by his conduct condoned,

3 | supported and ratified such wrongful acts, omissions and/or conduct described herein.

4 |        12.    Defendant, RUSSELL J. SHAH, MD, LTD. ("RJS") is, and at all relevant times was, a

5 | professional corporation organized under the laws of the State of Nevada, located at 2628 W.

6 | Charleston Boulevard, Las Vegas, Nevada. Plaintiffs further allege that Dr. Russell Shah, at all

7 | relevant times, maintained ownership and/or control over, and/or managed RJS and that Dr. Russell

8 | Shah is a corporate officer of DRS. Dr. Russell Shah has owned, operated and managed RJS since it

9 | opened in or about 2004. Dr. Dipti Shah is the registered agent for RJS. Dr. Russell Shah at all times

10 | herein relevant has also been employed as a licensed doctor at RJS. Plaintiffs are further informed and

11 | believe that at all times relevant herein, Dr. Russell Shah and Dr. Dipti Shah derived a monetary profit

12 | from or had a financial interest in RJS.

13 |        13.    Defendant, RADAR MEDICAL GROUP, LLP, dba UNIVERSITY URGENT CARE (

14 | "Radar" or "UUC"), is, and at all relevant times was, a limited liability partnership organized under

15 | the laws of the State of Nevada, located at 2628 W. Charleston Boulevard, Las Vegas, Nevada. Radar

16 | also does business as University Urgent Care. Plaintiffs further allege that Dr. Dipti Shah and Dr.

17 | Russell Shah, at all relevant times, maintained ownership and/or control over, and/or managed UUC

18 | and that they are the managing partners and corporate officers of UUC. Dr. Dipti Shah and Dr. Russell

19 | Shah have owned, operated and managed UUC since it opened in or about 2007. Dr. Dipti Shah, at all

20 | relevant times herein, has also been employed as a licensed doctor at UUC. Plaintiffs are further

21 | informed and believe that at all times relevant herein, Dr. Dipti Shah and Dr. Russell Shah derived a

22 | monetary profit from or had a financial interest in UUC.

23 | **ALLEGED CO-CONSPIRATORS**

24 |        14.    Plaintiffs are informed and believe that there are various physicians, attorneys, and

25 | entities in Las Vegas and Henderson that have conspired with the above defendants to defraud

26 | Plaintiffs. Plaintiffs reserve the right to amend their complaint to add said physicians, attorneys, and

27 | entities as defendants in this matter as their identities are ascertained.

28 | / / /

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
8337 W. Sunset Rd. Suite 350
Las Vegas, NV 89113

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

## FACTUAL ALLEGATIONS COMMON TO EACH COUNT

15.    Plaintiffs re-allege and restate paragraphs 1 through 14 as if fully set forth herein.

16.    This Complaint involves payments Allstate made to, and/or on behalf of, claimants who were involved in automobile accidents. Such claimants were individuals who either had claims against Allstate's insureds (third party claimants) or who were making claims as Allstate insureds (first party claimants.)

17.    Attached to this Complaint as Exhibit "A"[1] is a list of the two hundred and fifteen (215) specific claimants that Plaintiffs are, at this time, claiming involved Defendants and resulted in substantial monetary damages. Generally, the claimants listed in Exhibit "A" had interactions with Defendants between 2008 and the filing of this civil action. This list of claimants is incorporated herein by reference when reference is made to the underlying claims that form the basis of this litigation.

18.    Each of these claimants as identified in Exhibit "A", whether third party claimants or first party claimants, were billed for services (e.g., physician examinations, referrals, procedures, etc.) allegedly provided for their personal injuries at UUC, DRS, and/or RJS between 2007 and 2014, and received a settlement payment from Plaintiffs pursuant to insurance policies issued by Plaintiffs.

19.    The treatment which UUC, DRS, and RJS provided was based upon a standardized pattern developed by Dr. Dipti Shah and Dr. Russell Shah with the express purpose of creating inflated medical bills that would be used to leverage artificially enhanced settlement values to be paid by insurance companies rather than providing patient-centered treatment with the goal of actually healing injuries. Defendants and each of them, caused to be presented to Plaintiffs grossly exaggerated bills for treatment that was medically unnecessary for claimants identified in Exhibit "A."

20.    Dr. Dipti Shah has a financial interest in UUC, DRS, and RJS. Dr. Dipti Shah either directly referred or indirectly caused to be referred patients from UUC to DRS and/or RJS. The referral of patients from UUC to DRS and/or RJS amounted to an illegal-self referral in violation of 42

---

[1] Exhibit A identifies patients by initials.  Patient names have not been provided in order protect patient confidentiality.  Once a Qualified Protective Order is in place, the patient's identities will be disclosed.

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
8337 W. SUNSET RD. SUITE 350
LAS VEGAS, NV 89113

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  USC § 1395nn and NRS § 439B.425. Further, Dr. Dipti Shah either directly referred or indirectly

2  caused to be referred patients from DRS to RJS. The referral of patients from DRS to RJS also

3  amounted to an illegal-self referral in violation of 42 USC § 1395nn and NRS § 439B.425.

4      21.    Dr. Russell Shah has a financial interest in UUC, DRS, and RJS. Dr. Russell Shah

5  either directly referred or indirectly caused to be referred patients from UUC to DRS and/or RJS. The

6  referral of patients from UUC to DRS and/or RJS amounted to an illegal-self referral in violation of 42

7  USC § 1395nn and NRS § 439B.425. Further, Dr. Russell Shah either directly referred or indirectly

8  caused to be referred patients from RJS to DRS. The referral of patients from RJS to DRS also

9  amounted to an illegal-self referral in violation of 42 USC § 1395nn and NRS § 439B.425.

10     22.    With regard to the actual treatment of patients at UUC, DRS, and RJS, both Dr. Dipti

11 Shah and Dr. Russell Shah were instrumental in carrying out the fraudulent scheme.

12     23.    Plaintiffs further allege that Defendants prepared and/or caused to be presented to

13 Plaintiffs, between 2007 and 2014, medical reports and billing records that falsely reported symptoms,

14 complaints, and injuries for each of the claimants identified in Exhibit "A" which were either

15 exaggerated or not supported at all by the facts of the accident, that made pre-programmed,

16 unsubstantiated findings and diagnoses and which prescribed treatment plans which were more

17 consistent with generating large medical bills rather than patient-centered and evidence-based

18 treatment of the patients' actual clinical conditions.

19     24.    Upon a claimant presenting at UUC, RJS, or DRS for treatment, Defendants'

20 fraudulent scheme would begin by requiring the claimants to execute a lien that required payment for

21 the medical services provided to be made out of any settlement or judgment the patient might obtain.

22 Accordingly, at all times Defendants knew that the liens for these claimants ultimately would be paid

23 by insurance money when the case either settled or went to judgment in the claimant's favor.

24     25.    Since UUC, DRS, and RJS would be paid from settlement proceeds, it was the hope of

25 Defendants to get the medical specials as high as possible by inflating their bills or for billing for

26 services never provided. This was accomplished by providing and billing for unnecessary medical

27 procedures. Plaintiffs have reason to believe that this conduct was known by the other Defendants to

28 be occurring. Thus, with inflated and/or fraudulent bills, it was easy for UUC, DRS, and RJS to

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

6
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   "reduce" their lien while still generating a profit.

2       26.    Patients were uniformly referred for further procedures in a manner that would be

3   consistent with a pre-programmed protocol, rather than a response to a patient's clinical need for such

4   referrals. Patients experienced referrals without evidence of documented clinical questions

5   necessitating the need for such procedures. For example, it was the practice for UUC patients to be

6   seen by Nurse Practitioners rather than a physician. Subsequently, UUC patients, regardless of their

7   clinical presentation, would routinely be set up with a referral from UUC, where Dr. Dipti Shah is the

8   supervising physician, to DRS, where Dr. Dipti Shah would then see the patient under the umbrella of

9   DRS. Additionally, patients would come back for follow up visits conducted by Nurse Practitioners.

10   This process was for the purpose of driving up the medical expenses of that claimant. Plaintiffs are

11   informed and believe that such referrals were again for the purpose of "building a case" and increasing

12   the "value" of said case by inflating the medical specials rather than treating a patient's actual, clinical

13   needs.

14       27.    The claimant's records show many MRI scans without adequate justification in the

15   medical record for the imaging, in particular where the record indicated the patient was improving.

16   Further, the medical records show that across claimants the entries were pre-programmed entries.

17       28.    For example, claimant F.M. stated that he was initially seen at UUC by a Nurse

18   Practitioner. F.M. was referred by UUC to Dr. Dipti Shah and DRS. However, once F.M. began

19   going to DRS, he continued to be treated by the same Nurse Practitioner from UUC. Later, Dr. Dipti

20   Shah/DRS referred F.M. to Dr. Russell Shah. Claimant K.N. also initially saw Dr. Dipti Shah, who

21   prescribed and dispensed medication. Later K.N. described being treated by Dr. Russell Shah, who

22   filled his prescription, as well as ordered an MRI and nerve test.

23       29.    UUC's and DRS's reports and clinical records for these claimants were prepared by or

24   under the direction of Dr. Dipti Shah. UUC's and DRS's reports were filled with substantially similar

25   descriptions and virtually identical statements, regardless of the actual circumstances of the accident,

26   or the, gender, age, and physical condition of the claimant designed to misrepresent the need for

27   ongoing treatment.

28   / / /

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
8337 W. Sunset Rd, Suite 350
Las Vegas, NV 89113

7

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

30. There is evidence of billing for services using billing codes ("CPT codes") that indicate a substantially higher level of care than what was actually provided. This is commonly referred to as "upcoding."

31. Further, patients were routinely prescribed medication at either UUC or DRS with little or no clinical utility and with no concern for individual treatment of the patients' symptoms. Said prescriptions were then dispensed by Dr. Dipti Shah at prices well above market value.

32. Dr. Russell Shah provided testing for patients indicating a pattern of improbable findings of "numbness" and "tingling." As such, Dr. Russell Shah conducted EMG/NCV testing conducted that was not warranted or was otherwise excessive based on patient's symptoms and complaints.

33. There is also substantial evidence of grossly exaggerated clinical findings and diagnoses in the reports and referrals made by UUC and DRS. Typically, patient records reported generic diagnoses not related to any specific patient's presentation. Patients were generally reported as having cervical, thoracic or lumbar pain and/or sprain/strain, as well as neuropathy. Based upon such diagnoses, patients were treated according to a "recipe" of medically unnecessary care consisting of primarily aggressive procedures.

34. In addition, the dose of care prescribed for each claimant was not significantly altered regardless of the documented clinical complaints of the patient. For example, one would expect different treatment based upon the individual characteristics of the patient and the injury and accident involved. One would also expect a decrease in the level of treatment over time as patients clinical conditions improved. However, UUC, DRS, and RJS did not vary treatment according to each claimant's needs or actual physical condition, but rather the treatment was based upon a recipe that was inconsistent with the patient's probable clinical needs. Moreover, even the grossly exaggerated diagnoses of these patients still did not support the need for the ultimate delivery of multiple tests and procedures prior to any attempt to provide conservative treatment such as physical therapy. This pattern and practice of the enterprise and tortious conduct is found throughout the records of the various claimants.

///

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

35.     After rendering their purported care to the claimants, Defendants would then submit to the claimants' personal injury attorney medical records and invoices for examinations, surgical procedures, testing, and ancillary services purportedly performed. At all times, Defendants knew that these invoices and medical records would be used to substantiate the claimants' injury claims and that insurers such as Plaintiffs would eventually receive the invoices and medical records as part of a settlement demand package in the injury case. At all times, the Defendants herein knew that insurers such as Plaintiffs would receive and rely upon the medical reports and billings to evaluate and determine settlement positions in the injury cases to which they pertained.

36.     UUC, DRS, and RJS typically submitted the bills for treatment of the claimants to the claimants' respective legal counsel, who used the inflated billing statements as leverage to extract artificially enhanced settlements.

37.     Upon settlement of the personal injury claim, or upon the entry of a judgment in the claimant's favor, the claimant's personal injury counsel would receive a payment from an insurance company to fund the settlement or satisfy the judgment.

38.     Defendants would then enforce medical liens after the claimants and/or their legal counsel received these proceeds from the insurer on the file, which in the instances complained of herein was Plaintiffs. Thus, payment for medical, diagnostic, surgical, and other services provided were all based upon a settlement or judgment in the underlying claim, with the understanding in every case that insurance money would provide the settlement or judgment proceeds.

39.     In cases involving first party claims, after rendering their purported care to the claimants, Defendants would then submit directly to insurance companies, including Plaintiffs, medical records and invoices for therapy.

40.     At all times, in cases involving first party claims, Defendants knew that insurers such as Plaintiffs would receive and rely upon the medical reports and billings to evaluate and determine payments directly to Defendants in the injury cases to which they pertained.

41.     Plaintiffs in the normal and due course, received and reasonably relied upon the reports and bills from Defendants. It was foreseeable to Defendants that this would occur and that Plaintiffs would rely on this information.

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

9

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

42. Further, Plaintiffs did reasonably rely upon this documentary information to their detriment in investigating and evaluating claims and determining the amounts to pay in settlement of the claims being made by or against Plaintiffs' insureds.

43. Insurance companies such as Plaintiffs have thereby been defrauded through the false, fraudulent scheme of Defendants to extract excessive settlement monies from insurers, including Plaintiffs. The Defendants herein have perpetrated their fraudulent scheme upon Plaintiffs through a concerted effort participated in by all of the defendants as detailed more fully below.

44. These Defendants all worked in concert together for the shared purpose of defrauding Plaintiffs. In order to achieve this purpose, these Defendants developed relationships with each other and worked in concert over a period of time from at least 2007 forward. In addition, the individuals employed by or associated with each entity Defendant participated in performing the predicate acts which constitute the racketeering and fraudulent activity alleged below.

45. Plaintiffs first became aware of the injury caused by Defendants' wrongful conduct in 2014. Plaintiffs had no actual knowledge of Defendants' malfeasance and tortuous conduct before 2014. Plaintiffs could not have discovered, through the use of reasonable diligence, the existence of facts, evidence and circumstances establishing the injury caused by the wrongful conduct of Defendants any sooner than this time.

## COUNT ONE

### Racketeer Influenced and Corrupt Organizations Act 18 USC §1962(c) –

### Conduct of Enterprise through Racketeering

### (Against All Defendants)

46. Plaintiffs re-allege and restate paragraphs 1 through 45 as if fully set forth herein.

47. Plaintiffs have standing to seek to recover damages from Defendants. In this case, the claimants were mere conduits through which the Defendants herein extracted funds from Plaintiffs to which they were not entitled. As a result of the fraudulent billings, referrals, treatment and medical reports which the participants of the enterprise generated and caused to be presented to Plaintiffs, the claimants received settlements and judgments at amounts/sums to which (at least in part) the claimants were not otherwise entitled. Defendants knowingly used these individual claimants as the vehicles by

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
8337 W. Sunset Rd, Suite 350
Las Vegas, NV 89113

10

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    which Defendants fraudulently obtained money from Plaintiffs to which they were not entitled.

2        48.    Dr. Dipti Shah was and is an individual "person," within the meaning of 18 USC

3    §§1961(3) and 1962(c), who associated with and/or participated in the conduct and affairs of the

4    enterprise as described above. This participation consisted of forming and operating the various

5    components of the enterprises, and the combined parts of them, through the illegal self-referral of

6    patients between UUC, DRS, and RJS, the fraudulent procedures and billings described in greater

7    detail above.

8        49.    Dr. Russell Shah was and is an individual "person," within the meaning of 18 USC

9    §§1961(3) and 1962(c), who associated with and/or participated in the conduct and affairs of the

10   enterprise as described above. This participation consisted of forming and operating the various

11   components of the enterprises, and the combined parts of them, through the illegal self-referral of

12   patients between UUC, DRS, and RJS, the fraudulent procedures and billings described in greater

13   detail above.

14       50.    The combination of UUC, DRS, RJS, Dr. Dipti Shah, and Dr. Russell Shah constituted

15   an "association in fact" enterprise within the meaning of 18 USC §1961(4). These Defendants all

16   worked in concert together for the shared purpose of defrauding Plaintiffs.  In order to achieve this

17   purpose, these Defendants developed relationships with each other and worked in concert over a

18   period of time from at least 2007 forward. In addition, the individuals employed by or associated with

19   each entity Defendant, joined and became part of the association in fact enterprise by combining with

20   the entities with which they were not employed, and with the individuals employed by those entities,

21   in performing the predicate acts which constitute the racketeering activity alleged below.

22       51.    With regard to the actual treatment of patients, Dr. Dipti Shah and Dr. Russell Shah

23   were instrumental in carrying out the fraudulent scheme of the enterprise. The treatment which was

24   provided was based upon a standardized pattern developed by the enterprise participants with the

25   express purpose of creating inflated medical bills that would be used to leverage artificially enhanced

26   settlement values to be paid by insurance companies rather than providing patient-centered treatment

27   with the goal of actually healing injuries.

28   / / /

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

11

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

52.     Under the auspices of purportedly legitimate professional corporations, the structures were in place for Dr. Dipti Shah and Dr. Russell Shah to conduct the enterprise's illicit referral schemes and for the enterprise to benefit from the income being realized by UUC, DRS, and RJS.

53.     At all relevant times, UUC provided treatment, care and referrals for numerous claimants involved with personal injury claims against Plaintiffs. UUC treated these claimants on a lien basis and therefore knew from the inception of the treatment that the best source of payment for that treatment would be monies paid by Plaintiffs in settlement of these claims and/or in satisfaction of any judgment the claimants might obtain. Dr. Dipti Shah and Dr. Russell Shah owned and/or controlled UUC. Employees of UUC, under the oversight of Dr. Dipti Shah, saw claimants, generated written reports, made referrals and created bills for the professional services rendered at UUC.

54.     At all relevant times, DRS provided treatment, care and referrals for numerous claimants involved with personal injury claims against Plaintiffs. DRS treated these claimants on a lien basis and therefore knew from the inception of the treatment that the best source of payment for that treatment would be monies paid by Plaintiffs in settlement of these claims and/or in satisfaction of any judgment the claimants might obtain. Dr. Dipti Shah owned and/or controlled DRS. Dr. Dipti Shah and others employed by DRS saw claimants, generated written reports, made referrals and created bills for the professional services rendered at DRS.

55.     At all relevant times, RJS provided testing, procedures, treatment, care and referrals for numerous claimants involved with personal injury claims against Plaintiffs. RJS treated these claimants on a lien basis and therefore knew from the inception of the treatment that the best source of payment for that treatment would be monies paid by Plaintiffs in settlement of these claims and/or in satisfaction of any judgment the claimants might obtain. Dr. Russell Shah owned and/or controlled RJS. Dr. Russell Shah and others employed by RJS saw claimants, preformed tests and procedures, generated written reports, made referrals and created bills for the professional services rendered at RJS.

56.     Dr. Dipti Shah and Dr. Russell Shah controlled and/or managed employees of UUC, DRS, and RJS who administered the processing of bills for the professional services rendered at UUC, DRS, and RSJ and caused the bills to be presented to Plaintiffs.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

12
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

57.     Between 2007 through 2014, the Defendants conducted, participated in, engaged in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 USC §§1961(1), 1961(5) and 1962(c).

58.     The Defendants, either directly or through employees, committed predicate acts of mail fraud and wire fraud within the meaning of 18 USC §§1341, 1343 and 1961(1). These acts consisted of making false and misleading statements, or statements made as an artifice or scheme to defraud, in written medical records and associated billing records relating to services, diagnoses, tests, and treatments that either were medically unnecessary or at a minimum were greatly exaggerated or embellished, for the specific intent and purpose of supporting inflated and fraudulent settlement demands in personal injury cases for which these services were performed.

59.     The separate acts of mail and wire fraud are numerous, but consist, at a minimum, of separate mailings and/or wire transmissions of information included within medical records, diagnoses, tests, MRIs, scans, procedures, and/or treatments to attorneys retained by claimants and or Plaintiffs themselves for the purposes of carrying out the enterprise's fraudulent scheme. The predicate acts further consist of mailings and or wire transmissions of fraudulent information to Plaintiffs designed to enhance the value of the claimant's cases for the purposes of supporting those claimant's artificially enhanced settlement demands.

60.     Every act of falsehood or item containing misleading information in such transmissions, facilitated through the use of the United States Mail or wire transmissions, constitutes a separate act of mail and/or wire fraud and hence a separate predicate act within the meaning of RICO and cases interpreting RICO as well as the mail fraud provisions of 18 USC §1341, and wire fraud provisions of 18 USC §1343, which are both recognized predicate acts of racketeering activity under 18 USC §1961(1) and (4).

61.     From in or about 2007 through 2014, Defendants knowingly and willfully, and with intent to defraud, devised a scheme to defraud certain entities, including Allstate, by obtaining money from these entities through false and fraudulent pretenses and representations. These acts all occurred after the effective date of the RICO Act and more than two such acts occurred within ten years of one another.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W SUNSET RD. SUITE 350
LAS VEGAS. NV 89113

13
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

62.    Plaintiffs became aware of the injury caused by Defendants' pattern of racketeering activity in 2014. Plaintiffs could not have discovered, through the use of reasonable diligence, the injury caused by the predicate acts of racketeering activity any sooner than this time. In fact, it was not until the Plaintiffs confirmed their suspicions through the retention of qualified medical experts who reviewed a sampling of the medical records and billings of various claimants. Prior to 2014, Plaintiffs were unaware of the fraudulent conduct and activity of Defendants. Up until that point, it was reasonable, proper and appropriate for Plaintiffs to rely upon the documents Plaintiffs received in evaluating and ultimately settling the claims of those individuals set forth in Exhibit A.

63.    At all relevant times, the enterprise alleged above was engaged in, and its activities affected, interstate commerce. Not only were the defendants aware that their activities would have an effect on interstate commerce, but, more importantly, many of the fraudulent and false representations at issue were actually transmitted by wire and or sent through the mail across state lines.

64.    All of the predicate acts described in this Complaint were related and establish a pattern of racketeering activity, within the meaning of 18 USC §1962(c), in that their common purpose, and their common result, was to defraud Plaintiffs of money. Plaintiffs were the victim of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

65.    All of the predicate acts described within this Complaint were continuous so as to form a pattern of racketeering activity in that "persons" participating in the enterprise engaged in the predicate acts over a substantial period of time or in that such predicate acts had become part of the enterprise participants' regular way of conducting business and said business practices would have continued indefinitely into the future but for this lawsuit.

66.    At all times, Plaintiffs were the reasonably foreseeable and/or anticipated victims of Defendants' scheme and Plaintiffs were the target or victim of the fraudulent scheme to have Plaintiffs pay damages or settlements based on UUC's, DRS's, and RJS's fraudulent medical reports and billings. Defendants reasonably knew that Plaintiffs would have a legal obligation to negotiate in good faith and make reasonable attempts to settle the underlying claims. As such, it was reasonably foreseeable and anticipated that Plaintiffs would rely on the conduct, documents and other information

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1   provided by Defendants in evaluating the respective cases and, ultimately, entering into settlements.

2        67.    Plaintiffs were directly injured by the Defendants' fraudulent conduct, since Plaintiffs

3   paid settlements and judgments that were based, at least in part, on inflated medical bills, illegal self-

4   referrals, and procedures that were not medical necessary.

5        68.    As a direct and proximate result of, and by reason of, the activities of the Defendants

6   and their conduct in violation of 18 USC §1962(c), Plaintiffs have been injured in their business or

7   property, within the meaning of 18 USC §1964(c).

8        69.    Among other things, Plaintiffs have suffered damages to the extent they paid for

9   settlements or judgments of UUC, DRS, and RJS patients on the basis of fraudulently inflated billings.

10   Plaintiffs are, therefore, entitled to recover threefold the damage they have sustained together with the

11   cost of the suit including costs, reasonable attorneys' fees and reasonable experts' fees.

12                                  **COUNT TWO**

13     **Racketeer Influenced and Corrupt Organizations Act 18 USC §1962(d) – Conspiracy**

14                              **(Against All Defendants)**

15        70.    Plaintiffs re-allege and restate paragraphs 1 through 69 as if fully set forth herein.

16        71.    Upon Plaintiffs' information and belief, Dr. Dipti Shah, Dr. Russell Shah, DRS, RJS,

17   and UUC, and each of them, conspired together to conduct or participate, directly or indirectly, in the

18   conduct of the affairs of the enterprise described within this Complaint through a pattern of

19   racketeering activity in violation of 18 USC §1962(d). In particular, these Defendants intended to

20   further an endeavor which, if completed, would satisfy all of the elements of a fraudulent scheme to

21   extract excessive settlement monies from insurers including Plaintiffs. Moreover, as referenced above,

22   these defendants agreed to use the U.S. Mail and/or wire services such as telephone, facsimile or email

23   to carry out their fraudulent scheme.

24        72.    From in or about 2007 through 2014, Defendants knowingly and willfully, and with

25   intent to defraud, devised a scheme to defraud insurance companies, including Allstate, by obtaining

26   money from these insurance companies through false and fraudulent pretenses and representations as

27   outlined more fully above.

28   ///

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
6337 W. Sunset Rd. Suite 350
Las Vegas, NV 89113

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

73.     Plaintiffs were injured by the co-conspirators' overt acts that are acts of racketeering or otherwise unlawful under the RICO Act, which included (among other acts) acts of mail and wire fraud.

74.     As a direct and proximate result of, and by reason of, the activities of the co-conspirators of the enterprise, and the conspiracy alleged herein, Plaintiffs have been injured in its business or property, within the meaning of 18 USC §1964(c).

75.     Among other things, Plaintiffs have suffered damages to the extent the co-conspirators and/or each of them, received money from settlements or judgments paid by Plaintiffs on the basis of UUC's, DRS's and RJS's fraudulently inflated billings. Plaintiffs have additionally suffered further damages to the extent Plaintiffs had to settle, for grossly inflated amounts, claims with first party claimants who had pending personal injury claims with Allstate, directly, or claims of third party claimants against Plaintiffs' insureds. Plaintiffs are, therefore, entitled to recover threefold the damage they have sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

## COUNT THREE

### Fraud and Intentional Misrepresentations

### (Against All Defendants)

76.     Plaintiffs re-allege and restate paragraphs 1 through 75 as if fully set forth herein.

77.     At all times herein relevant, Defendants knowingly communicated to Plaintiffs false representations of material fact in their reports, records, referrals and billings. Defendants engaged in numerous misrepresentations pursuant to the scheme, set forth with particularity above in this Complaint. This includes, but is not limited to numerous evaluations and treatment reports, referrals and billing records of UUC, DRS, and RJS containing statements of services that were at best grossly exaggerated, and misrepresentations that services were medically necessary or called for by the condition presented by the claimants.

78.     At all times herein relevant, Defendants knew and intended that others, such as insurance companies like Plaintiffs, would rely on their misrepresentations in evaluating pending claims against Plaintiffs' insureds or by Plaintiffs' insureds themselves. Defendants made these

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

16

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

misrepresentations with knowledge of their falsity or at minimum in reckless disregard for their truth. Defendants knew that numerous physician referrals were excessive, not medically necessary and unreasonable. Further, the Defendants were aware that the diagnoses provided were not accurate and were not supportable by the medical evidence present. Defendants acted to aggrandize themselves financially by inflating the medical bills knowing that settlement decisions are made in material part on the extent of medical treatment and cost.

79.     From in or about 2007 through 2014, Defendants knowingly and willfully, and with intent to defraud, devised a scheme to defraud certain entities, including Plaintiffs, by obtaining money from these entities through false and fraudulent pretenses and representations.

80.     In making the above-described misrepresentations, Defendants intended to defraud Plaintiffs and to induce Plaintiffs' reliance. Defendants were aware that the claimants each had litigated claims for which insurance would be the likely source of recovery. Defendants further were aware that the professional services being provided by them would be paid from the proceeds of any settlement or judgment paid by Plaintiffs. Defendants' reports, referrals and bills each included medically unnecessary services in these claims, all of which would be used to form the basis for a monetary settlement.

81.     At all times herein relevant, Allstate reasonably and justifiably relied, to its detriment, on the misrepresentations made by Defendants. Plaintiffs have a legal obligation to protect the interests of its insureds and pay reasonable bills, judgments and/or settlements of claims involving their insureds. Thus, Plaintiffs were legally bound to pay money, pursuant to their policies with their insureds, to resolve claims caused by the negligence of Plaintiffs' insureds or others who injured Plaintiffs' insureds. Because of Defendants' fraudulent conduct, Plaintiffs greatly overvalued and thus, overpaid, for the settlements of over twenty-seven claims.

82.     Defendants' misrepresentations proximately caused damages to Plaintiffs. As a direct and proximate result of Defendants' fraud and intentional misrepresentations, Plaintiffs have suffered damages in an amount which is unknown at this time, but which is estimated to be in excess of Seventy-Five Thousand Dollars ($75,000.00).

/ / /

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
8337 W. Sunset Rd, Suite 350
Las Vegas, NV 89113

17

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

83.     Further, the conduct of Defendants, as described within this Complaint was willful, malicious, and done with a conscious and reckless disregard to Plaintiffs and with the purpose of fraudulently obtaining money from Plaintiffs through dishonest and untruthful billings, reports, records and referrals. The Defendants' actions thus entitle Plaintiffs to punitive damages.

**COUNT FOUR**

**Conspiracy to Defraud**

**(Against All Defendants)**

84.     Plaintiffs re-allege and paragraphs 1 through 83 as if fully set forth within this Count.

85.     At all times herein relevant, the named Defendants consist of two or more persons or business entities who, had a shared objective to be accomplished, had a meeting of the minds on how to achieve their objective, committed one or more unlawful or overt acts in furtherance of that objective, and this conspiracy resulted in damages to Plaintiffs.

86.     All of the above listed Defendants, jointly and individually, had an agreement whereby they each knowingly and wrongfully agreed to facilitate, conceal, advance, promote, and otherwise further a scheme to defraud Plaintiffs. The objective of this conspiracy was to generate as many fees as possible, all of which would be paid by Plaintiffs as part of any settlement or satisfaction of a judgment concerning the involved patients.

87.     These co-conspirators engaged in numerous wrongful acts pursuant to their agreement to defraud insurers such as Plaintiffs as set forth with particularity above in this Complaint.

88.     From in or about 2007 through 2014, Defendants knowingly and willfully, and with intent to defraud, devised a scheme to defraud insurance companies, including Allstate, by obtaining money from these insurance companies through false and fraudulent pretenses and representations.

89.     As a direct and proximate result of the herein alleged conspiracy to defraud Plaintiffs, Plaintiffs have suffered damages in an amount which is unknown at this time, but which is estimated to be in excess of Seventy-Five Thousand Dollars ($75,000.00).

90.     Further, the conduct of Defendants, as described within this Complaint was willful, malicious, and done with a reckless disregard to Plaintiffs and with the express purpose of obtaining money from Plaintiffs through fraudulent billings, reports, records and referrals.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD. SUITE 350
LAS VEGAS, NV 89113

18

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## COUNT FIVE

### Nevada State RICO Violations – NRS §207.400

### (Against All Defendants)

91.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 90 of the Complaint as if fully set forth herein.

92.     Each of the fraudulent claims described above demonstrate that Defendant committed: (1) grand larceny by obtaining money under false pretenses, a crime related to racketeering under NRS §207.360(16); (2) taking property from another under circumstances not amounting to robbery, a crime related to racketeering under NRS §207.360(9); (3) insurance fraud pursuant to NRS §686A.291, a crime related to racketeering under NRS §207.360(30); and (4) illegal self-referral of patients in violation of NRS §439B.425.

93.     Dr. Dipti Shah and Dr. Russell Shah, working in concert through UUC, DRS, and RJS, made false and fraudulent representations, reports, bills and referrals in support of excessive, inflated, medically unreasonable and inflated claims with the intent to obtain and did, in fact, obtain insurance proceeds that Defendants knew they had no right to receive.

94.     Plaintiffs justifiably and reasonably relied upon these misleading documents and misrepresentations to their detriment in evaluating, assessing and paying insurance claims and claims-related expenses.

95.     UUC, DRS, RJS, Dr. Dipti Shah, and. Dr. Russell Shah together constitute an enterprise separate and distinct from each individual Defendant. Each and every Defendant conducted and participated in the affairs of the enterprise through a pattern of racketeering activity including grand larceny, insurance fraud and taking property from another under circumstance not amounting to robbery.

96.     The Defendants further conducted the affairs of the foregoing enterprise through racketeering activity as identified above.

97.     Each Defendant associated with the enterprise and participated directly or indirectly in the conduct of the enterprise through racketeering activity as identified above.

/ / /

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
8337 W. SUNSET RD. SUITE 350
LAS VEGAS, NV 89113

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

98.     The predicate acts committed by each Defendant were not isolated, but related by similar pattern, intent, result, accomplices, victim and method of commission. This is best exemplified by the similar reporting, treatment plans, referrals and diagnostic studies ordered for claimants, purportedly to treat and cure personal injuries sustained by various claimants.

99.     Plaintiffs have been injured in their business and property by reason of the Defendants' misconduct.

100.    By virtue of the Defendants' violations of NRS §207.400(b)(c), Plaintiffs are entitled to recover from each defendant identified three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit including reasonable attorneys' fees and investigative costs.

101.    Plaintiffs demand judgment against the Defendants as follows: actual and consequential damages to be established at trial; treble damages, interest, costs and reasonable attorneys' fees; investigative costs pursuant to NRS §207.470(1); and injunctive relief enjoining the Defendants from engaging in the wrongful activities alleged in the Complaint as the Court deems just.

<u>COUNT SIX</u>

**Innocent Victim Enterprise Violations of NRS §207.400(C)**

**(Against All Defendants)**

102.    Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 101 of the Complaint as if fully set forth herein.

103.    Plaintiffs are an enterprise engaged in, and the activities of which, effect interstate commerce.

104.    In violation of NRS §207.400(c), Defendants, by acting with purpose to cause Plaintiffs to make payments on false, excessive, inflated and fraudulent insurance claims, victimized Plaintiffs by participating in their affairs directly and/or indirectly through a pattern of racketeering activity including grand larceny and insurance fraud.

105.    Plaintiffs have been injured in their business and property in violation of NRS §207.400(c).

/ / /

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5337 W. SUNSET RD. SUITE 350
LAS VEGAS, NV 89113

20
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

106. By virtue of Defendants' violations of NRS §207.400(c), Plaintiffs are entitled to recover from each Defendant identified three times the damages sustained by reason of the claims submitted by Defendants, and others acting in concert with them, together with the cost of suit including reasonable attorneys' fees.

107. Plaintiffs demand judgment against Defendants, individually, jointly and separately as follows: actual and consequential damages to be established at trial; treble damages, interest, costs and reasonable attorneys' fees; investigative costs pursuant to NRS §207.470(1); and injunctive relief enjoining the Defendants from engaging in the wrongful activities alleged in the Complaint as the Court deems just.

## COUNT SEVEN

### Constructive Trust and Unjust Enrichment

### (Against All Defendants)

108. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 107 of the Complaint as if fully set forth herein.

109. At all times relevant hereto, Defendants fraudulently obtained money in the form of insurance payments and settlement proceeds from Plaintiffs under such circumstances that, in equity, said money and/or property should be returned.

110. At all relevant times, Defendants had a relationship with Plaintiffs that required them to honestly treat these claimants, honestly and accurately report on the medical condition of these claimants and to honestly and accurately submit billings for said treatment and care.

111. Defendants understood that these bills and reports would form the basis of Plaintiffs' evaluation of these claims, assessment of the value of each claim and the amounts to be paid to settle these claims against or by Plaintiffs' insureds.

112. By paying Defendants money to which they had no legitimate right, Plaintiffs conferred a benefit on Defendants, a benefit about which Defendants are aware and a benefit that Defendants were not truly, legally and/or legitimately entitled.

113. Although Plaintiffs were able to obtain settlements of the numerous claims, these settlements came at a great price to Plaintiffs in the form of overpaying the underlying claims due to

1   the tortious conduct of Defendants. Plaintiffs acknowledge that it would likely have had to pay some

2   compensation/consideration to obtain closure of most of the underlying claims (assuming the

3   claimants would have even pursued their own claims absent the interference of Defendants). However,

4   "but for" the conduct of Defendants, the costs associated with the resolution of those claims would

5   have been accomplished at a savings of hundreds of thousands of dollars less than what was paid as a

6   direct result of Defendants conduct.

7       114.   Those funds received by Defendants from Plaintiffs, to which Defendants were not

8   entitled, have unjustly enriched Defendants at the expense of Plaintiffs.

9       115.   By the conduct of Defendants in making false reports, unnecessary referrals, material

10  misrepresentations, nondisclosures and other false representations to its claimants and, indirectly to

11  Plaintiffs to fraudulently obtain insurance proceeds by false pretenses, it would be inequitable for

12  Defendants to retain the benefit of the insurance and/or settlement payments made by Plaintiffs.

13      116.   Plaintiffs demand judgment against Defendants individually, jointly and separately and

14  that this Court impose a constructive trust upon Defendants in an amount representing those funds

15  received by Defendants from Plaintiffs, as set forth above in this Complaint.

16                          **PRAYER FOR RELIEF**

17      WHEREFORE, Plaintiffs pray for relief as follows:

18      1.   That Plaintiffs be awarded a judgment in their favor for each of the Counts set forth in

19  this Complaint;

20      2.   For damages consisting of, but not limited to, the following:

21          a.   Actual and consequential damages, including economic, general and special

22  damages, caused by the Defendants' conduct as alleged herein;

23          b.   Treble damages as permitted by the Federal and Nevada State RICO Act;

24          c.   Attorney's fees and all costs, including expert expenses, incurred by Plaintiffs

25  as a result of Defendants' conduct as permitted by both Federal and Nevada State law both

26  before and after the filing of this Complaint;

27          d.   Punitive damages in an appropriate amount in the discretion of the jury as

28  permitted by both Federal and Nevada State law, and more specifically under Count Five,

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

22

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Fraud and Intentional Misrepresentation;

3.      For Judgment that Defendants disgorge to Plaintiffs all amounts received by Defendants from Plaintiffs;

4.      For Judgment in favor of the Plaintiffs for damages arising from the billing of unreasonable and unnecessary healthcare services by Defendants; and

5.      That Plaintiffs be awarded such other and further relief as the Court deem just and proper.

DATED this 17th day of September, 2015

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP


By      //s// Eron Z. Cannon
ERON Z. CANNON, ESQ.
Nevada Bar No. 8013
JARED P. GREEN, ESQ.
Nevada Bar No. 10059
8337 West Sunset Road, Suite 350
Las Vegas, NV 89113
Attorneys for Plaintiffs

03246-01559 3587291.1

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL