ERON Z. CANNON, ESQ.
Nevada Bar No. 8013
FAIN ANDERSON VANDERHOEF ROSENDAHL
O'HALLORAN SPILLANE PLLC
701 Fifth Avenue, Suite 4750
Seattle, WA 98104
Telephone:      (206) 749-0094
Facsimile:      (206) 749-0194
*eron@favros.com*

JARED P. GREEN, ESQ.
Nevada Bar No. 10059
McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP
8337 West Sunset Road, Suite 350
Las Vegas, NV 89113
Telephone:      (702) 949-1100
Facsimile:      (702) 949-1101
*jared.green@mccormickbarstow.com*

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,<br><br>          Plaintiffs,<br><br>          v.<br><br>RUSSELL J. SHAH, MD, DIPTI R. SHAH, MD, RUSSELL J. SHAH, MD, LTD., DIPTI R. SHAH, MD, LTD., and RADAR MEDICAL GROUP, LLP dba UNIVERSITY URGENT CARE, DOES 1-100, and ROES 101-200,<br><br>          Defendants. | CASE NO.      2:15-cv-01786-APG-CWH<br><br>**AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

Plaintiffs ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY

INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE &

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1

1

AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   CASUALTY INSURANCE COMPANY (hereinafter collectively referred to as "Plaintiffs" or

2   "Allstate"), by and through their attorneys of record of the law firm FAIN ANDERSON

3   VANDERHOEF ROSENDAHL O'HALLORAN SPILLANE PLLC and McCORMICK, BARSTOW,

4   SHEPPARD, WAYTE & CARRUTH LLP, hereby submit the following Amended Complaint for

5   Damages against Defendants RUSSELL J. SHAH, MD ("Dr. Russell Shah"), DIPTI R. SHAH, MD

6   ("Dr. Dipti Shah"), DIPTI R. SHAH, MD, LTD. ("DRS"), RUSSELL J. SHAH, MD, LTD. ("RJS"),

7   and RADAR MEDICAL GROUP, LLP, dba UNIVERSITY URGENT CARE ("Radar" or "UUC"),

8   as more fully set forth below.

9                           **DEMAND FOR A JURY TRIAL**

10       1.      Plaintiffs hereby demand a trial by jury on all issues, counts, claims, and allegations

11   contained within this Complaint or to be pleaded in the future, if necessary.

12                          **JURISDICTION AND VENUE**

13       2.      This action is brought under the Federal Racketeer Influenced and Corrupt

14   Organization Act ("RICO Act"), 18 USC §1961, *et seq.*, and various other Nevada common law

15   doctrines and/or statutes. Jurisdiction is vested in this Court by virtue of 17 USC §501(b) and 28 USC

16   §1331. Plaintiffs' claims brought under Nevada law are so related to Plaintiffs' Federal claims, over

17   which the Court has original jurisdiction, that they form part of the same case or controversy. Under

18   Article III of the United States Constitution, the Court has supplemental jurisdiction over Plaintiffs'

19   Nevada common law and/or statutory claims pursuant to 28 USC §1367.

20       3.      This Court further and alternatively has jurisdiction over this action pursuant to 28

21   USC §1332(a) based upon diversity of citizenship. Plaintiffs are citizens and residents of the State of

22   Illinois. Defendants are citizens and residents of the State of Nevada, and have their principal place of

23   business in the State of Nevada. The amount in controversy exceeds $75,000 exclusive of interest and

24   costs.

25       4.      A substantial part of the acts and omissions giving rise to the claims stated herein

26   occurred in this District (within the cities of Las Vegas and Henderson, in the state of Nevada) and all

27   Defendants are found in this District. Venue is proper in this District and this Division pursuant to 28

28   USC §§1391(b)(2) and (3) and pursuant to 18 USC §1965(b).

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                   2
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**PARTIES TO THIS LITIGATION**

5.     Plaintiff, ALLSTATE INSURANCE COMPANY, is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Illinois.

6.     Plaintiff, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Illinois.

7.     Plaintiff, ALLSTATE INDEMNITY COMPANY, is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Illinois.

8.     Plaintiff, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Illinois.

9.     Defendant, DIPTI R. SHAH, MD, ("Dr. Dipti Shah") is a competent adult, and a resident of the State of Nevada and has been employed as and working as a doctor of medicine, licensed and practicing within the state of Nevada focusing on internal medicine and nephrology. Dr. Dipti Shah is, and at all relevant times was, a managerial employee and/or agent of the other defendants. Dr. Dipti Shah participated in each of the wrongful acts, omissions and conduct described below and/or had actual and/or constructive notice of the wrongful acts, omissions and conduct perpetrated upon Plaintiffs, as set forth below. At all times relevant herein, Dr. Dipti Shah had both the authority and duty to prevent and correct the same, and by her conduct condoned, supported and ratified such wrongful acts, omissions and/or conduct described herein.

10.     Defendant, DIPTI R. SHAH, MD, LTD. ("DRS") is, and an at all relevant time was, a professional corporation organized under the laws of the State of Nevada, located at 2628 W. Charleston Boulevard, Las Vegas, Nevada. Plaintiffs further allege that Dr. Dipti Shah, at all relevant times, maintained ownership and/or control over, and/or managed DRS and that Dr. Dipti Shah is a corporate officer of DRS. Dr. Dipti Shah has owned, operated and managed DRS since it opened in or about 2007. Dr. Dipti Shah at all times herein relevant has also been employed as a licensed doctor at DRS. Plaintiffs are further informed and believe that at all times relevant herein, Dr. Dipti Shah and Dr. Russell Shah derived a monetary profit from or had a financial interest in DRS.

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1

3

AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

11.     Defendant, RUSSELL J. SHAH, MD, ("Dr. Russell Shah") is a competent adult, and a resident of the State of Nevada and has been employed as and working as a doctor of medicine, licensed and practicing within the state of Nevada. Dr. Russell Shah is a non-board certified neurologist. Dr. Russell Shah is, and at all relevant times was, a managerial employee and/or agent of the other defendants. Dr. Russell Shah participated in each of the wrongful acts, omissions and conduct described below and/or had actual and/or constructive notice of the wrongful acts, omissions and conduct perpetrated upon Plaintiffs, as set forth below. At all times relevant herein, Dr. Russell Shah had both the authority and duty to prevent and correct the same, and by his conduct condoned, supported and ratified such wrongful acts, omissions and/or conduct described herein.

12.     Defendant, RUSSELL J. SHAH, MD, LTD. ("RJS") is, and at all relevant times was, a professional corporation organized under the laws of the State of Nevada, located at 2628 W. Charleston Boulevard, Las Vegas, Nevada. Plaintiffs further allege that Dr. Russell Shah, at all relevant times, maintained ownership and/or control over, and/or managed RJS and that Dr. Russell Shah is a corporate officer of DRS. Dr. Russell Shah has owned, operated and managed RJS since it opened in or about 2004. Dr. Dipti Shah is the registered agent for RJS. Dr. Russell Shah at all times herein relevant has also been employed as a licensed doctor at RJS. Plaintiffs are further informed and believe that at all times relevant herein, Dr. Russell Shah and Dr. Dipti Shah derived a monetary profit from or had a financial interest in RJS.

13.     Defendant, RADAR MEDICAL GROUP, LLP, dba UNIVERSITY URGENT CARE ( "Radar" or "UUC"), is, and at all relevant times was, a limited liability partnership organized under the laws of the State of Nevada, located at 2628 W. Charleston Boulevard, Las Vegas, Nevada. Radar also does business as University Urgent Care. Plaintiffs further allege that Dr. Dipti Shah and Dr. Russell Shah, at all relevant times, maintained ownership and/or control over, and/or managed UUC and that they are the managing partners and corporate officers of UUC. Dr. Dipti Shah and Dr. Russell Shah have owned, operated and managed UUC since it opened in or about 2007. Dr. Dipti Shah, at all relevant times herein, has also been employed as a licensed doctor at UUC. Plaintiffs are further informed and believe that at all times relevant herein, Dr. Dipti Shah and Dr. Russell Shah derived a monetary profit from or had a financial interest in UUC.

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                      4
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**ALLEGED CO-CONSPIRATORS**

14.    Plaintiffs are informed and believe that there are various physicians, attorneys, and entities in Las Vegas and Henderson that have conspired with the above defendants to defraud Plaintiffs. Plaintiffs reserve the right to amend their complaint to add said physicians, attorneys, and entities as defendants in this matter as their identities are ascertained.

**FACTUAL ALLEGATIONS COMMON TO EACH COUNT**

15.    Plaintiffs re-allege and restate paragraphs 1 through 14 as if fully set forth herein.

16.    This Complaint involves payments Allstate made to, and/or on behalf of, claimants who were involved in automobile accidents. Such claimants were individuals who either had claims against Allstate's insureds (third party claimants) or who were making claims as Allstate insureds (first party claimants.)

17.    Attached to this Complaint as Exhibit "A"[1] is a list of the two hundred and thirteen (213) specific claimants that Plaintiffs are, at this time, claiming involved Defendants and resulted in substantial monetary damages. Generally, the claimants listed in Exhibit "A" had interactions with Defendants between 2008 and the filing of this civil action. This list of claimants is incorporated herein by reference when reference is made to the underlying claims that form the basis of this litigation.

18.    Each of these claimants as identified in Exhibit "A", whether third party claimants or first party claimants, were billed for services (e.g., physician examinations, referrals, procedures, etc.) allegedly provided for their personal injuries at UUC, DRS, and/or RJS between 2008 and 2014, and received a settlement payment from Plaintiffs pursuant to insurance policies issued by Plaintiffs.

19.    The treatment which UUC, DRS, and RJS provided was based upon a standardized pattern developed by Dr. Dipti Shah and Dr. Russell Shah with the express purpose of creating inflated medical bills that would be used to leverage artificially enhanced settlement values to be paid by insurance companies rather than providing patient-centered treatment with the goal of actually

---

[1] Exhibit A identifies the underlying claimants by initials.  However, pursuant to the protective order in this case, the full name, last known addresses and the medical records and billing of these patients have been produced to the Defendants.

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                              5
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

healing injuries. Defendants and each of them, caused to be presented to Plaintiffs grossly exaggerated bills for treatment that was medically unnecessary for claimants identified in Exhibit "A."

20.     Dr. Dipti Shah has a financial interest in UUC, DRS, and RJS. Dr. Dipti Shah either directly referred or indirectly caused to be referred patients from UUC to DRS and/or RJS. The referral of patients from UUC to DRS and/or RJS amounted to an illegal-self referral in violation of NRS § 439B.425. Further, Dr. Dipti Shah either directly referred or indirectly caused to be referred patients from DRS to RJS. The referral of patients from DRS to RJS also amounted to an illegal-self referral in violation of and NRS § 439B.425. Dr. Dipti Shah engaged in self-referrals and steered patients to the Defendants' enterprise so the Defendants could inflate their collective billing and cause the Plaintiffs to pay more for the Defendants' bills than was necessary.

21.     Dr. Russell Shah has a financial interest in UUC, DRS, and RJS. Dr. Russell Shah either directly referred or indirectly caused to be referred patients from UUC to DRS and/or RJS. The referral of patients from UUC to DRS and/or RJS amounted to an illegal-self referral in violation of and NRS § 439B.425. Further, Dr. Russell Shah either directly referred or indirectly caused to be referred patients from RJS to DRS. The referral of patients from RJS to DRS also amounted to an illegal-self referral in violation of and NRS § 439B.425. Dr. Russel Shah engaged in self-referrals and steered patients to the Defendants' enterprise so the Defendants could inflate their collective billing and cause the Plaintiffs to pay more for the Defendants' bills than was necessary.

22.     With regard to the actual treatment of patients at UUC, DRS, and RJS, both Dr. Dipti Shah and Dr. Russell Shah were instrumental in carrying out the fraudulent scheme.

23.     There is substantial evidence of grossly exaggerated clinical findings and diagnoses in the reports and referrals made by UUC, DRS and RJS. Typically, patient records reported generic diagnoses not related to any specific patient's presentation. Patients were generally reported as having cervical, thoracic or lumbar pain and/or sprain/strain, as well as neuropathy. Based upon such diagnoses, patients were treated according to a "recipe" of medically unnecessary care. In addition, the dose of care prescribed for each claimant was not significantly altered regardless of the documented clinical complaints of the patient. For example, one would expect different treatment based upon the individual characteristics of the patient and the injury and accident involved. One would also expect a

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                     6
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  decrease in the level of treatment over time as patients clinical conditions improved. However, UUC,

2  DRS, and RJS did not vary treatment according to each claimant's needs or actual physical condition,

3  but rather the treatment was based upon a recipe that was inconsistent with the patient's probable

4  clinical needs. Moreover, even the grossly exaggerated diagnoses of these patients still did not support

5  the need for the ultimate delivery of multiple tests and procedures prior to any attempt to provide

6  conservative treatment such as physical or chiropractic therapy. This pattern and practice of the

7  enterprise and tortious conduct is found throughout the records of the various claimants.

8       24.     Claimant #24 was treated by both Dr. Russell Shah and Dr. Dipti Shah in a manner that

9  has no medical reasoning and was completely duplicative. The only reason for this unorthodox course

10  of treatment was to build up medical specials to further their scheme.  On 7/31/09 Dr. Russell Shah

11  saw Claimant #24 for an initial exam where he charged $795.00 for the exam and $350.00 for a

12  "special report charge." He had a follow up visit on 8/14/09, where he administered a neurological

13  exam and charged $1,400.00 for this test. A mere 4 days later on 8/18/09, claimant was sent to Dr.

14  Dipti Shah for an initial exam that cost $475.00 along with $172.25 in prescription medication and

15  dispensing fee that was processed at the facility owned by the Defendants. Ten days later on 8/28/09,

16  claimant was back for a follow up with Dr. Russell Shah where he charged a $250.00 exam fee with a

17  $200.00 special report charge. No explanation for this visit was included nor was there mention of

18  claimant's 4 appointments in the last 30 days. After a 9/4/09 visit with Dr. Russell Shah for an

19  EMG/NCV test that cost $3,775.00, claimant was back to Dr. Dipti Shah on 9/24/09 for another

20  $225.00 follow up exam with $172.25 in prescription charges and dispensing fee.  Again, 8 days later

21  on 10/2/09, claimant was back with Dr. Russell Shah for a follow up visit at $275.00 with a special

22  report charge of $150.00.  The ping pong treatment continued with a visit on 10/29/09 to Dipti Shah

23  for another follow up and $225.00 bill. Claimant was back to Dr. Russell Shah on 12/4/09 for a

24  $300.00 follow up exam with a $150.00 special report charge, and just 6 days later on 12/10/09, Dr.

25  Dipti Shah saw claimant for a $225.00 follow up visit.  There is no justification for the duplication of

26  efforts with Claimant #24. Dr. Russell Shah could have prescribed the claimant pain medication and

27  directed her treatment. Instead, the claimant was bounced back and forth between the two providers –

28  intent on providing duplicative treatment to build up medical specials.

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                              7

AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

25.     Plaintiffs further allege that Defendants prepared and/or caused to be presented to Plaintiffs, between 2008 and 2014, medical reports and billing records that falsely reported symptoms, complaints, and injuries for each of the claimants identified in Exhibit "A" which were either exaggerated or not supported at all by the facts of the accident, that made pre-programmed, unsubstantiated findings and diagnoses and which prescribed treatment plans which were more consistent with generating large medical bills rather than patient-centered and evidence-based treatment of the patients' actual clinical conditions.

26.     Upon a claimant presenting at UUC, DRS or RJS for treatment, Defendants' fraudulent scheme would begin by requiring the claimants to execute a lien that required payment for the medical services provided to be made out of any settlement or judgment the patient might obtain. Accordingly, at all times Defendants knew that the liens for these claimants ultimately would be paid by insurance money when the case either settled or went to judgment in the claimant's favor. Dr. Dipti Shah admitted under oath in deposition testimony that she knew that demand packages from the plaintiff attorneys were sent to Allstate Insurance Company that included her bills and records, and that Allstate relied on the accuracy of her medical treatment and bills to support payment for a personal injury claim. As such, Dr. Dipti Shah understood that Plaintiffs would be a direct victim of the Defendants' fraud scheme as Plaintiffs either directly (first party) or indirectly (third-party) paid the Defendants' bills.

27.     Since UUC, DRS, and RJS would be paid from settlement proceeds, it was the hope of Defendants to get the medical specials as high as possible by inflating their bills or for billing for services never provided. This was accomplished by providing and billing for unnecessary medical procedures. Plaintiffs have reason to believe that this conduct was known by the other Defendants to be occurring. Thus, with inflated and/or fraudulent bills, it was easy for UUC, DRS, and RJS to "reduce" their lien while still generating a profit.

28.     Patients were uniformly referred for further procedures in a manner that would be consistent with a pre-programmed protocol, rather than a response to a patient's clinical need for such referrals. Patients experienced referrals without evidence of documented clinical questions necessitating the need for such procedures. For example, it was the practice for UUC patients to be

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                         8

AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

seen by Nurse Practitioners rather than a physician. Subsequently, UUC patients, regardless of their clinical presentation, would routinely be set up with a referral from UUC, where Dr. Dipti Shah is the supervising physician, to DRS, where Dr. Dipti Shah would then see the patient under the umbrella of DRS. Additionally, patients would come back for follow up visits conducted by Nurse Practitioners. This process was for the purpose of driving up the medical expenses of that claimant. Plaintiffs are informed and believe that such referrals were again for the purpose of "building a case" and increasing the "value" of said case by inflating the medical specials rather than treating a patient's actual, clinical needs.

29.     A former nurse practitioner, Don Don Dimailig stated in his deposition that the decision to refer a patient from UUC to DRS was made by the front office staff. It was not up to his clinical discretion to make the referral, but rather all patients treating on a lien as a result of a personal injury case were given the referral. Mr. Dimailig followed the orders from Dr. Dipti Shah's staff who instructed him in the steering of patients between UUC and DRS.

30.     The underlying claims files of the claimants identified in Exhibit "A", are replete with examples of referrals from UUC to DRS wherein "new patient" exams were performed by the nurse practitioner at UUC and then an identical "new patient" exams were performed by Dr. Dipti Shah at DRS a few days later. For example, Claimant # 37 presented to UUC on 12/11/09 for an initial evaluation with a nurse practitioner who charged $200.00 for a new patient exam identified in the billing codes as a CPT 99204 (comprehensive new patient exam), a $100.00 "urgent care fee", and prescribed $237.90 in medication that was filled at the same office by Dr. Dipti Shah with a "dispensing fee" of $30.00. The total initial visit was $697.90. Claimant #37 was then referred from UUC to DRS wherein Dr. Dipti Shah performed another initial exam, at DRS, billed under 99204 and charged $475.00 for the same exam that was already performed and billed by the nurse practitioner at UUC. Dr. Dipti Shah has testified in a deposition that she was the "supervising" doctor at UUC and that she reviewed all reports and exams from the nurse practitioners working under her license at UUC. These duplicative initial exams amount to double-billing.

31.     Another example is identified in Claimant #53, where a new patient exam was performed by a nurse practitioner at UUC for $200.00 under CPT 99204. The patient was then

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                                9
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  referred to DRS wherein Dr. Dipti Shah at DRS performed another initial exam under CPT 99244 and

2  charged $475.00.  Dr. Dipti Shah then steered Claimant #53 to RJS wherein Dr. Russell Shah

3  performed an initial exam under CPT code 99244 and charged $755.00, with an accompanying

4  $300.00 "special report charge."

5       32.      The practice of building up medical specials in these underlying cases is also illustrated

6  in the treatment of claimant #73.  Claimant #73 was first treated at UUC wherein a new patient exam

7  was performed by nurse practitioner Edwin Favis who charged $350.00 under CPT 99204 along with

8  a $100.00 "urgent care fee," without any documentation that this urgent care fee was justified.  The

9  medical records from the UUC visit list a "referral" by Edwin Favis to Dr. Dipti Shah at DRS.  Dr.

10  Dipti Shah saw Claimant #73 and again performed an initial patient exam and charged $475.00 under

11  CPT 99204.  The patient was then seen by the same nurse practitioner at UUC, Edwin Favis, for 5

12  more visits under the umbrella of DRS.  The 5 subsequent visits included charges of $225.00 under

13  CPT 99214 and the final visit of $200.00 under CPT 99213.  There were no clinical questions that

14  needed to be answered by the repeated return visits to the same nurse practitioner who initially saw the

15  claimant. Further, Claimant #73 was under the care of a chiropractor at exact same time.  Due to the

16  complete lack of medical necessity, the true purpose of the referral from UUC to DRS was to charge

17  for two initial exams and continued treatment with the nurse practitioner, who was to build up the

18  medical specials for profit by the Defendants.

19       33.      Claimant #83 was treated at UUC on 11/30/10 by Edwin Favis wherein he billed

20  $200.00 for a new patient exam under CPT 99204 along with the unjustified $100.00 urgent care fee.

21  Mr. Favis made the required referral to DRS. On 12/7/10, Dr. Dipti Shah duplicated the initial exam

22  and billed $475.00 under CPT 99204. As further evidence of the superfluous nature of the treatment,

23  claimant #83 was visiting a chiropractor who also performed an initial examination on 12/9/10 and

24  continued to treat the claimant until 3/1/11 at which point claimant #83 was released from care having

25  reached maximum medical improvement ("MMI"). Yet, without explanation, claimant #83 was still

26  asked to follow up with nurse practitioner Edwin Favis for two visits between 3/8/11 and 4/28/11 –

27  long after the claimant was released from chiropractic treatment. In the continued treatment at DRS

28  between 3/8/11 and 4/28/11, there is no mention of claimant #83 being released from chiropractic care

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                  10
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

as MMI.  Despite being MMI, Mr. Favis continued to indicate "no change" in claimant #83's condition.

34.     Dr. Dipti Shah steered Claimant #83 to RJS for an evaluation on 2/22/11, only 8 days before claimant was found to have reached MMI by the chiropractor.  On that single visit, RJS billed $4,485.00 for completely unnecessary EMG/NCV studies.  There was no medical justification for the referral and there was a complete lack of relation to the claimant's injuries when Dr. Russell Shah treated claimant #83. It had only one purpose, to build up medical bills for the Defendants' monetary gain.

35.     The claimant's records show many X-rays and MRI scans without adequate justification in the medical record for the imaging, in particular where the record indicated the patient was improving.  For example, see claimants #'s 109, 110, 115, 123, 146, 151, 164, 166, 170, 177, 185 and 188.

36.     UUC's and DRS's reports and clinical records for these claimants were prepared by or under the direction of Dr. Dipti Shah. UUC's and DRS's reports were filled with substantially similar descriptions and virtually identical statements, regardless of the actual circumstances of the accident, or the, gender, age, and physical condition of the claimant designed to misrepresent the need for ongoing treatment.

37.     An example of the boilerplate language found in Dr. Dipti Shah's medical records is under the "Review of Systems" from the majority of the claimants is identical. For example, Claimants #206, #210, #211 and #212 all have the exact same review of systems.  Another cookie cutter part of Dr. Shah's report is found in the follow up exam done by the nurse practitioner where there is absent any record of a chief complaint. This is again evidenced in Claimants #193, #194 and #195, where the claimants are never asked their chief complaint after the first visit with Dr. Dipti Shah which results in the inability to diagnose and treat the patients. This leads to directionless and completely pointless follow up visits with nurse practitioner.

38.     There is evidence of billing for services using billing codes ("CPT codes") that indicate a substantially higher level of care than what was actually provided.  This is commonly referred to as "upcoding." The "urgent care fee" under CPT S9088 that was discussed above makes it appear that

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                    11
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    the claimants came off the street, without an appointment or any warning that they would be visiting

2    UUC.  However, that is simply not true and nothing about how UUC is run qualifies it as an "urgent

3    care facility." Allstate alleges that when a claimant was involved in an accident and subsequently met

4    with their attorney, the attorney's office would direct the claimant to go to UUC for treatment (per a

5    pre-arranged referral relationship with the Defendants), and would make a phone call over to UUC to

6    schedule an appointment for the claimant. The claimant would not just drop in off the street, UUC

7    knew they were coming.  Simply because the sign above the door says, "Urgent Care" does not mean

8    that the treatment provided to claimants who went there allowed for the superfluous $100.00 charge.

9    Thus, the charge for "urgent care" is simply another way to further the fraudulent practices by the

10    Defendants.  For example, claimants #'s 118, 119, and 205 were referred to UUC directly from their

11    attorney.

12            39.      According to a former employee at a plaintiff attorney firm who regularly referred their

13    client's to the Defendants, Drs. Dipti and Russell Shah were on the attorneys "approved" list of

14    referral providers. The former employee was required by the attorney to refer patients to UUC for an

15    initial exam.  The former employee was told by the supervisor to pressure the client to go to UUC and

16    nowhere else for an initial exam. The former employee had a script to tell the client that UUC is a

17    "one stop shop" where they could see a nurse practitioner right away, see a medical doctor,

18    neurologist and receive prescription medications.  The former employee was scripted to tell the client

19    to not worry about the high cost of the bills from UUC, DRS or RJS, because the law firm had a

20    prearranged agreement with the Defendants to reduce their lien as much as 50%. And that the high

21    medical bills increased the settlement value.  If the client refused to go to the Defendants for care, the

22    former employee was required to tell the client that the firm could not represent them in their auto

23    accident case. The former employee indicated that the treatment given by the Defendants were driven

24    by the policy limits. For example, if Dr. Russell Shah found out the policy limits were higher than

25    15/30, he would do his unnecessary and expensive EMG/NCV tests. The former employee was

26    coached to do whatever the former employee could to refer clients to the Dr. Russell Shah in order to

27    increase the medical specials. The Defendants were complicit in this scheme to fraudulently build up

28    the medical specials.

FAIN ANDERSON
VANDERHOEF
OSENDAHL, O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                                    12
                    AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

40.     As an example of fraudulently building up the medical specials at UUC, claimant #109 was seen for an initial visit by Edwin Favis at UUC on 8/12/11 where he performed a complex new patient evaluation and billed under 99204 for $350.00. He was then referred internally to Dr. Dipti Shah on 8/29/11 where she performed a 99244 exam for $475.00 on an established patient to her office, thus this was not a new patient exam and thus this resulted in upcoding this exam. The two follow up visits with Dr. Dipti Shah on 9/13/11 and 10/25/11 are charged as 99214 for $225.00, which should be billed as simple follow up visits with straightforward decision making as there is no justification in the medical records that support a history and extensive physical exam, as is required for billing under 99214. Under 99214 it requires that the records identify a "Chief Complaint" extended history of present illness, extended review of symptoms and pertinent family/social history directly related to the claimant's problems. All of these are absent from claimant's records to justify this charge.

41.     Claimant #129 was first seen by Edwin Favis at UUC on 1/11/12 where he performed a new patient complex exam under 99204 for $350.00. The referral was made to Dr. Dipti Shah at DRS where on 1/30/12 she performed a complex new patient exam under 99244. DRS then billed for 6 follow up exams, all charged under 99214. Another example of the upcoding that was used to charge for services well beyond the actual level of service.

42.     Further, patients were routinely prescribed medication at either UUC or DRS with little or no clinical utility and with no concern for individual treatment of the patients' symptoms. Said prescriptions were then dispensed by Dr. Dipti Shah at prices well above market value. There was a pattern of providing boilerplate prescription medications, either from the nurse practitioner at UUC or from DRS or RJS, that were filled at the Defendants' medical office. Many of the patients were not provided the opportunity to fill a prescription at another location, nor is there supporting documentation in the medical records that shows consent from patients to have their prescription filled by Dr. Dipti Shah, rather they were handed a written prescription and taken to an area of the office where the prescription was filled. The charge for the prescriptions themselves and the "fill charge" were collected by Defendants. Plaintiffs allege that the charge for the prescription drugs was highly overpriced for the community, sometimes 10 times what is reasonable to charge at a regular

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                              13
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

pharmacy. The person holding the prescription license was Dr. Dipti Shah, and Allstate alleges that she did not properly supervise the employees, including Edwin Favis, who dispensed the prescription medication. Further, Plaintiffs believe that the medication was not dispensed by a licensed or trained individual allowed to bottle and distribute prescription medication under the law. Plaintiffs allege that Dr. Dipti Shah was not present at the facility for more than a few days a week as her outside interests, including a music/singing career, kept her from being at UUC full time. Accordingly, there are times where proper dispensing procedures were not followed. The progress notes in the records do not justify the continued refill of prescriptions and that this was part of a pre-programmed treatment plan that was not centered on patient care. Dr. Dipti Shah justified the prescription charges based on the fact she is working on a lien basis. The prescription medication that was provided was virtually identical for each claimant. The majority of patients were prescribed an anti-inflammatory, pain medication and/or muscle relaxer. The prices, tied with the uniform dispensing to most claimants of the same medication, reflect a goal of dispensing and charging for medication regardless of the claimants' needs in order to achieve a higher profit.

43. For example, claimant #14 visited Dr. Dipti Shah on 5/13/09, and claimant #14 was provided a prescription for 30 pills of Naprosyn for $79.80 and 30 pills of Vicodin for $85.80 with a $20.00 dispensing fee. Claimant returned 11 days later on 5/27/09 and was given a refill on the exact same medication for 30 each. Claimant was given an identical refill again on 6/11/09, 6/23/09 and 7/20/09. In two months she was given 4 prescription refills that were all filled at Dr. Dipti Shah's office, with a total of 300 pills. On 8/18/09 Dr. Dipti Shah changed the prescription to 30 pills of Lortab 7.5 for $90.00 and a $10.00 dispensing fee. However, during the dispensing of these powerful narcotics, Dr. Dipti Shah noted that on 6/23/09 the claimant only had 4/10 pain. On the 7/20/09 visit, Dr. Dipti Shah noted claimant was "feeling slightly better" from her last visit, and on 8/18/09 found the claimant was at 4/10 pain in mid back and 5/10 pain in low back. Finally, on 9/21/09 Dr. Dipti Shah released the patient from care when it was reported "patient reports that she is pain free." There was no medical need for Dr. Dipti Shah to continue to hand out hundreds of pills of prescription medication after the claimant was making improvement from the beginning of the treatment.

/ / /

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1

14

AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

44.     Another example of dispensing and charging for medication, irrespective of a patients need, claimant #29 was seen by Edwin Favis at UUC on 10/2/09 and was prescribed 15 pills of Flexeril for $82.95 and 45 pills of Motrin (600 mg).  Claimant #29 was then referred to Dr. Dipti Shah at DRS a mere 4 days later on 10/6/09 and Dr. Dipti Shah prescribed another 45 pills of Motrin (600 mg).  Claimant #29 was overprescribed and over charged by Defendants, much like the other claimants in Exhibit "A" who received prescription medications from the Defendants.

45.     Dr. Dipti Shah prescribed medication to patients without making a determination as to the need for those prescriptions or whether the patient was already receiving prescriptions. Claimant #119 told the providers at DRS and UUC that she was already receiving similar prescription medication from her primary care doctor. Despite this, Dr. Dipti Shah prescribed the medications to her. Regularly, no provider at UUC or DRS would explain the prescriptions, what they were for and what side effects were associated with that prescription. Claimant #119 stated that when she received prescriptions from the Defendants, no provider discussed the reason for the prescriptions or the potential side effects. Dr. Dipti Shah prescribed medications to the various claimants not for the need of the patient, but to increase the profits of the Defendants.

46.     Dr. Russell Shah provided testing for patients indicating a pattern of improbable findings of "numbness" and "tingling."  As such, Dr. Russell Shah conducted EMG/NCV testing that was not warranted or was otherwise excessive based on patient's symptoms and complaints.

47.     Dr. Russell Shah, through RJS, consistently billed CPT codes 99244 and 99245 for his initial exams of patients. These codes require a high complexity exam that is problem focused. This CPT code is reserved for high complexity patients. The initial exams conducted by Dr. Russell Shah required low complexity decision-making on typical soft tissue injury cases. Dr. Russell Shah upcoded the initial exams in order to fraudulently inflate the Defendants' bills for profit.  Examples of billing for CPT codes 99244 and 99245 can be found in the files relating to claimants #'s 138, #140, #141, #148, #165.

48.     Dr. Russell Shah, through RJS, consistently billed for a "Special Report" under CPT code 99080. He billed for this "Special Report" even though he billed for the upcoded CPT charge of 99244 and 99245 for his initial exams. CPT codes 99244 and 99245 require a written report detailing

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                    15
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

the history and findings. As such, billing for a "Special Report" is unwarranted. In the records of the claimants in Exhibit "A", no separate Special Report was found. Dr. Russell Shah through RJS was double-billing for a report of the history and findings in order to fraudulently inflate the Defendants' bills for profit. Examples of Dr. Russell Shah and RJS billing for a "Special Report" can be found in the files relating to claimant #'s 122, 138, 140, 141, 148 and 164.

49.     Dr. Russell Shah, through RJS, billed for rhythm strips under CPT code 93040 which was an inappropriate charge and an example of unbundling of procedures. This code was regularly charged in conjunction with EMG/NCV studies that Dr. Russell Shah performed on the underlying claimants. This code should not have been billed as a stand-alone charge as this charge is subsumed within the charge for the EMG/NCV study. Dr. Russell Shah through RJS unbundled the charge for CPT code 93040, in order to fraudulently inflate the Defendants' bills for profit. Examples of the unbundled charges for CPT code 93040 can be found in the files relating to claimants #'s 136 and 148.

50.     Dr. Russell Shah, through RJS, billed for testing called short-latency somatosensory evoked potential studies under CPT codes 95925 and 95926. There was no rationale to perform these studies. Especially, in light of the use of an EMG/NCV on the same patient. It is inappropriate to perform this procedure as a rationale for the work up of radiculopathy. Dr. Russell Shah, through RJS, unbundled the charges for CPT 95925 and 95296 in order to fraudulently inflate the Defendants' bills for profit. Examples of unbundled charges of CPT codes 95925 and 95926 can be found in the files relating to claimant #'s 148, 150 and 171.

51.     Dr. Russell Shah, through RJS, billed for digital analysis of an EEG under CPT code 95957. There was no rationale to perform this study. It is another example of unbundling of a procedure wherein the charge was already subsumed under a charge for an EEG billed under CPT code 95816. Dr. Russell Shah, through RJS, was charging for CPT code 95957 for the analysis of spike wave forms. Dr. Russell Shah, through RJS, charged for CPT code 95957 in order to fraudulently inflate the Defendants' bills for profit. Examples of unbundled charges of CPT code 95957 can be found in the files relating to claimant #'s 136, 148, 158, 165 and 180.

52.     Dr. Russell Shah, through DRS, billed for transcranial doppler studies (TCD) under CPT code 93886. There was no rationale to perform these studies and is typically used to test for an

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                    16
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

inter-cranial hemorrhage. Dr. Russell Shah, through RJS, charged for CPT code 93886 in order to fraudulently inflate the Defendants' bills for profit. An example of an inappropriate charge of CPT code 93886 can be found in the file relating to claimant #'s 148 and 181.

53.     Dr. Russell Shah, through RJS, billed for EEGs under CPT code 95816. There was no rationale to perform these studies as this study is typically used to test for epilepsy or serious brain disorders. These tests are not appropriate for cognitive/memory work ups in which Dr. Russell Shah used to justify these charges. Dr. Russell Shah, through RJS, charged for CPT code 95816 in order to fraudulently inflate the Defendants' bills for profit. An example of an inappropriate charge of CPT code 95816 can be found in the file relating to claimant #'s 138, 180 and 185.

54.     Dr. Russell Shah, through RJS, billed for EMG/NCV studies under CPT codes 95900, 95903, 95904, 95934, 95861, 95886.  Claimant #'s 1-12, 15-16, 18, 20-21, 24, 26-28, 31-34, 36, 39-41, 43-44, 46-56, 58, 60-62, 66-67, 70-72, 74-80, 83, 87-90, 93-95, 99, 104, 106, 108, 111-112, 114-115, 118-121, 126, 131-133, 140, 148-152, 162-164, 167-169, 171, 173-175, 179-181, 183-185, 187, 191, 196-199, 204, 207, 213 received various types of EMG/NCV studies from Dr. Russell Shah.

55.     For the NCV studies, Dr. Russell Shah would typically use a technician to perform the test and then he would interpret the results. Upon information and belief, the technicians that performed the NCV testing between 2008 to 2014 were not properly trained or supervised and otherwise were not qualified to conduct these tests.

56.     In each and every instance that and EMG/NCV test was performed on one of the claimants listed in paragraph 54, the test was either not indicated in its entirety or there was highly excessive testing of the various muscles. Often there was no clinical question pending in order to justify the expensive testing, there was rarely any action taken on the results after the testing was complete (For example, see claimant #'s 99, 126, 140 and 148) and the results did not match clinical findings from other providers.  In addition, the EMG/NCV testing was not justified in light of prior normal diagnostic exams such as MRIs (For example, see claimant #'s 111, 152 and 154).

57.     Dr. Russell Shah, through RJS, regularly failed to discuss with the patient the outcome of the expensive EMG/NCV studies as these studies were conducted solely in order to increase the amount of the Defendants' bills and not for the needs of the patient. Claimant #99 stated that after

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                              17
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   receiving EMG/NCV testing from Dr. Russell Shah in the amount of $6235.00, Dr. Russell Shah

2   never discussed with her the results of the study or the need to conduct the study in the first place.

3   Claimant #184 stated that after receiving over $6000 of tests from Dr. Russell Shah, claimant #184

4   was never told of her results. She believed that the testing was unnecessary and not helpful in the

5   treatment of her injuries.

6        58.    Upon information and belief, Dr. Russell Shah, through RJS, billed for treatment that

7   was not rendered. For example, claimant #179 was billed for EMG testing of her upper extremities

8   wherein Dr. Russell Shah indicated he poked her 26 times with a needle. An EMG requires the

9   provider to insert a small needle into the patient's skin and into the muscle that is being tested.

10  Claimant #179 stated that she was never poked with a needle by Dr. Russell Shah in her upper

11  extremities. Claimant #179 stated that her upper extremities were not tested by Dr. Russell Shah. Dr.

12  Russell Shah's report indicated that he tested 22 muscles in claimant #179's lower extremities.

13  Claimant #179 stated that the EMG study conducted by Dr. Russell Shah on her lower extremities was

14  so painful that it made her bleed and cry. Claimant #179 recalls that after the EMG study of the lower

15  extremities she left the Defendants' office with blood drying on her legs and was in pain.  However,

16  claimant #179 stated that she was only poked with a needle 12 times and not the 22 times indicated by

17  Dr. Russell Shah's report. Claimant # 119 was charged for an EMG study of the lower extremities. Dr.

18  Russell Shah's report indicated that claimant #119 had 11 muscles tested, but claimant #119 was

19  poked with a needle only a couple times and thus at a minimum had only 3 to 4 muscles tested.

20  Further, her EMG study lasted only 15 minutes which would be commensurate with an EMG test of 3

21  to 4 muscles.

22       59.    Upon information and belief, it was the pattern and practice of Dr. Russell Shah and

23  RJS to bill for much more expansive EMG testing than what was actually performed.

24       60.    Dr. Russell Shah, through RJS, grossly exaggerated his diagnosis without any objective

25  or diagnostic criteria to support the same. For example, when a patient complained of dizziness,

26  confusion, hitting their head in the vehicle, he would regularly diagnose traumatic brain injury with

27  post concussive syndrome and/or cognitive impairments. Examples of can be found in the files

28  relating to claimant #'s 26 and 173. Dr. Russell Shah would maximize the severity of the diagnoses in

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                    18
                    AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   order to increase the value of the case so that it would increase the chances of the Defendants' inflated

2   bills being paid by the Plaintiffs.

3       61.     Dr. Russell Shah, through RJS, grossly exaggerated his findings of radiculopathy,

4   numbness and tingling without any objective or diagnostic criteria to support the same. Dr. Russell

5   Shah would list these findings within his report in an attempt to justify expensive EMG/NCV testing.

6   Examples of this can be found in the files relating to claimants #'s 111, 126, 140, 152 and 154. Dr.

7   Russell Shah would find radiculopathy in order to conduct the EMG/NCV studies and thereafter to

8   inflate the Defendants bills for profit.

9       62.     Dr. Russell Shah regularly referred patients out to other medical providers with no need

10  to answer a clinical question. The sole purpose to refer patients out to another medical provider was to

11  increase the overall medical bills. This was done in an effort to satisfy Plaintiff attorneys so that they

12  would continue the flow of referrals to the Defendants. Claimant #119 told Dr. Russell Shah that she

13  did not want to get injections. Thereafter, claimant #119 received a call from a paralegal at her

14  attorney's office stating that "if you want to get a decent amount of money, you need to get the

15  injections." She then promptly received the referral from Dr. Russell Shah and the injections.

16  Claimant #119 stated that the injections did not help and in fact, made her feel worse. She expressed

17  this to Dr. Russell Shah and then was promptly released from Dr. Russel Shah's care.

18      63.     Claimant #119 believed the treatment she received from the Defendants was a "sham."

19  Claimant #119 stated that that her attorneys office who referred her to UUC said that in order to

20  "make money" on her cases, she had to go to UUC, Dr. Dipti Shah and Dr. Russell Shah as well as

21  other providers. Many of the claimants in Exhibit "A" were referred by their attorney to UUC or the

22  other Defendants directly. The Defendants had a relationship with the Plaintiffs' attorneys to build up

23  the medical bills by their own treatment and referring patients out for needless diagnostic exams and

24  other treatment providers like pain management doctors.  For some attorneys, the Defendants were

25  one of a few doctors that they would refer their clients, because the attorneys knew that the

26  Defendants would build up the medical bills for the case and also reduce their liens on the back end.

27  This arrangement allowed the Defendants to receive a large volume of patients through attorney

28  referrals relating to auto accidents.

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                        19
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

64.     After rendering their purported care to the claimants, Defendants would then submit to the claimants' personal injury attorney medical records and invoices for examinations, surgical procedures, testing, and ancillary services purportedly performed. At all times, Defendants knew that these invoices and medical records would be used to substantiate the claimants' injury claims and that insurers such as Plaintiffs would eventually receive the invoices and medical records as part of a settlement demand package in the injury case. At all times, the Defendants herein knew that insurers such as Plaintiffs would receive and rely upon the medical reports and billings to evaluate and determine settlement positions in the injury cases to which they pertained.

65.     UUC, DRS, and RJS typically submitted the bills for treatment of the claimants to the claimants' respective legal counsel, who used the inflated billing statements as leverage to extract artificially enhanced settlements.

66.     Upon settlement of the personal injury claim, or upon the entry of a judgment in the claimant's favor, the claimant's personal injury counsel would receive a payment from an insurance company to fund the settlement or satisfy the judgment.

67.     Defendants would then enforce medical liens after the claimants and/or their legal counsel received these proceeds from the insurer on the file, which in the instances complained of herein was Plaintiffs. Thus, payment for medical, diagnostic, surgical, and other services provided were all based upon a settlement or judgment in the underlying claim, with the understanding in every case that insurance money would provide the settlement or judgment proceeds.

68.     In cases involving first party claims, after rendering their purported care to the claimants, Defendants would then submit directly to insurance companies, including Plaintiffs, medical records and invoices for therapy.

69.     At all times, in cases involving first party claims, Defendants knew that insurers such as Plaintiffs would receive and rely upon the medical reports and billings to evaluate and determine payments directly to Defendants in the injury cases to which they pertained.

70.     Plaintiffs in the normal and due course, received and reasonably relied upon the reports and bills from Defendants. It was foreseeable to Defendants that this would occur and that Plaintiffs would rely on this information.

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                    20

AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

71.     Further, Plaintiffs did reasonably rely upon this documentary information to their detriment in investigating and evaluating claims and determining the amounts to pay in settlement of the claims being made by or against Plaintiffs' insureds.

72.     Insurance companies such as Plaintiffs have thereby been defrauded through the false, fraudulent scheme of Defendants to extract excessive settlement monies from insurers, including Plaintiffs. The Defendants herein have perpetrated their fraudulent scheme upon Plaintiffs through a concerted effort participated in by all of the defendants as detailed more fully below.

73.     These Defendants all worked in concert together for the shared purpose of defrauding Plaintiffs. In order to achieve this purpose, these Defendants developed relationships with each other and worked in concert over a period of time from at least 2008 forward. In addition, the individuals employed by or associated with each entity Defendant participated in performing the predicate acts which constitute the racketeering and fraudulent activity alleged below.

74.     Plaintiffs first became aware of the injury caused by Defendants' wrongful conduct in 2014. Plaintiffs had no actual knowledge of Defendants' malfeasance and tortuous conduct before 2014. Plaintiffs could not have discovered, through the use of reasonable diligence, the existence of facts, evidence and circumstances establishing the injury caused by the wrongful conduct of Defendants any sooner than this time.

## COUNT ONE

### Racketeer Influenced and Corrupt Organizations Act 18 USC §1962(c) –

### Conduct of Enterprise through Racketeering (Against All Defendants)

75.     Plaintiffs re-allege and restate paragraphs 1 through 74 as if fully set forth herein.

76.     Plaintiffs have standing to seek to recover damages from Defendants. In this case, the claimants were mere conduits through which the Defendants herein extracted funds from Plaintiffs to which they were not entitled. As a result of the fraudulent billings, referrals, treatment and medical reports which the participants of the enterprise generated and caused to be presented to Plaintiffs, the claimants received settlements and judgments at amounts/sums to which (at least in part) the claimants were not otherwise entitled. Defendants knowingly used these individual claimants as the vehicles by which Defendants fraudulently obtained money from Plaintiffs to which they were not entitled.

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                          21
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

77. Dr. Dipti Shah was and is an individual "person," within the meaning of 18 USC §§1961(3) and 1962(c), who associated with and/or participated in the conduct and affairs of the enterprise as described above. This participation consisted of forming and operating the various components of the enterprises, and the combined parts of them, through the illegal self-referral and steering of patients between UUC, DRS, and RJS, the fraudulent procedures and billings described in greater detail above.

78. Dr. Russell Shah was and is an individual "person," within the meaning of 18 USC §§1961(3) and 1962(c), who associated with and/or participated in the conduct and affairs of the enterprise as described above. This participation consisted of forming and operating the various components of the enterprises, and the combined parts of them, through the illegal self-referral and steering of patients between UUC, DRS, and RJS, the fraudulent procedures and billings described in greater detail above.

79. The combination of UUC, DRS, RJS, Dr. Dipti Shah, and Dr. Russell Shah constituted an "association in fact" enterprise within the meaning of 18 USC §1961(4). These Defendants all worked in concert together for the shared purpose of defrauding Plaintiffs. In order to achieve this purpose, these Defendants developed relationships with each other and worked in concert over a period of time from at least 2008 forward. In addition, the individuals employed by or associated with each entity Defendant, joined and became part of the association in fact enterprise by combining with the entities with which they were not employed, and with the individuals employed by those entities, in performing the predicate acts which constitute the racketeering activity alleged below.

80. With regard to the actual treatment of patients, Dr. Dipti Shah and Dr. Russell Shah were instrumental in carrying out the fraudulent scheme of the enterprise. The treatment which was provided was based upon a standardized pattern developed by the enterprise participants with the express purpose of creating inflated medical bills that would be used to leverage artificially enhanced settlement values to be paid by insurance companies rather than providing patient-centered treatment with the goal of actually healing injuries.

///

///

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1

22

AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

81.     Under the auspices of purportedly legitimate professional corporations, the structures were in place for Dr. Dipti Shah and Dr. Russell Shah to conduct the enterprise's illicit referral schemes and for the enterprise to benefit from the income being realized by UUC, DRS, and RJS.

82.     At all relevant times, UUC provided treatment, care and referrals for numerous claimants involved with personal injury claims against Plaintiffs. UUC treated these claimants on a lien basis and therefore knew from the inception of the treatment that the best source of payment for that treatment would be monies paid by Plaintiffs in settlement of these claims and/or in satisfaction of any judgment the claimants might obtain. Dr. Dipti Shah and Dr. Russell Shah owned and/or controlled UUC. Employees of UUC, under the oversight of Dr. Dipti Shah, saw claimants, generated written reports, made referrals and created bills for the professional services rendered at UUC.

83.     At all relevant times, DRS provided treatment, care and referrals for numerous claimants involved with personal injury claims against Plaintiffs. DRS treated these claimants on a lien basis and therefore knew from the inception of the treatment that the best source of payment for that treatment would be monies paid by Plaintiffs in settlement of these claims and/or in satisfaction of any judgment the claimants might obtain. Dr. Dipti Shah owned and/or controlled DRS. Dr. Dipti Shah and others employed by DRS saw claimants, generated written reports, made referrals and created bills for the professional services rendered at DRS.

84.     At all relevant times, RJS provided testing, procedures, treatment, care and referrals for numerous claimants involved with personal injury claims against Plaintiffs. RJS treated these claimants on a lien basis and therefore knew from the inception of the treatment that the best source of payment for that treatment would be monies paid by Plaintiffs in settlement of these claims and/or in satisfaction of any judgment the claimants might obtain. Dr. Russell Shah owned and/or controlled RJS. Dr. Russell Shah and others employed by RJS saw claimants, preformed tests and procedures, generated written reports, made referrals and created bills for the professional services rendered at RJS.

85.     Dr. Dipti Shah and Dr. Russell Shah controlled and/or managed employees of UUC, DRS, and RJS who administered the processing of bills for the professional services rendered at UUC, DRS, and RSJ and caused the bills to be presented to Plaintiffs.

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                              23
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

86.     Between 2008 through 2014, the Defendants conducted, participated in, engaged in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 USC §§1961(1), 1961(5) and 1962(c).

87.     The Defendants, either directly or through employees, committed predicate acts of mail fraud and wire fraud within the meaning of 18 USC §§1341, 1343 and 1961(1). These acts consisted of making false and misleading statements, or statements made as an artifice or scheme to defraud, in written medical records and associated billing records relating to services, diagnoses, tests, and treatments that either were medically unnecessary or at a minimum were greatly exaggerated or embellished, for the specific intent and purpose of supporting inflated and fraudulent settlement demands in personal injury cases for which these services were performed.

88.     The separate acts of mail and wire fraud are numerous, but consist, at a minimum, of separate mailings and/or wire transmissions of information included within medical records, diagnoses, tests, MRIs, scans, procedures, and/or treatments to attorneys retained by claimants and or Plaintiffs themselves for the purposes of carrying out the enterprise's fraudulent scheme. The predicate acts further consist of mailings and or wire transmissions of fraudulent information to Plaintiffs designed to enhance the value of the claimant's cases for the purposes of supporting those claimant's artificially enhanced settlement demands.

89.     Every act of falsehood or item containing misleading information in such transmissions, facilitated through the use of the United States Mail or wire transmissions, constitutes a separate act of mail and/or wire fraud and hence a separate predicate act within the meaning of RICO and cases interpreting RICO as well as the mail fraud provisions of 18 USC §1341, and wire fraud provisions of 18 USC §1343, which are both recognized predicate acts of racketeering activity under 18 USC §1961(1) and (4).

90.     From in or about 2008 through 2014, Defendants knowingly and willfully, and with intent to defraud, devised a scheme to defraud certain entities, including Allstate, by obtaining money from these entities through false and fraudulent pretenses and representations. These acts all occurred after the effective date of the RICO Act and more than two such acts occurred within ten years of one another.

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                    24
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

91.     Plaintiffs became aware of the injury caused by Defendants' pattern of racketeering activity in 2014. Plaintiffs could not have discovered, through the use of reasonable diligence, the injury caused by the predicate acts of racketeering activity any sooner than this time. In fact, it was not until the Plaintiffs confirmed their suspicions through the retention of qualified medical experts who reviewed a sampling of the medical records and billings of various claimants. Prior to 2014, Plaintiffs were unaware of the fraudulent conduct and activity of Defendants. Up until that point, it was reasonable, proper and appropriate for Plaintiffs to rely upon the documents Plaintiffs received in evaluating and ultimately settling the claims of those individuals set forth in Exhibit A.

92.     At all relevant times, the enterprise alleged above was engaged in, and its activities affected, interstate commerce. Not only were the defendants aware that their activities would have an effect on interstate commerce, but, more importantly, many of the fraudulent and false representations at issue were actually transmitted by wire and or sent through the mail across state lines.

93.     All of the predicate acts described in this Complaint were related and establish a pattern of racketeering activity, within the meaning of 18 USC §1962(c), in that their common purpose, and their common result, was to defraud Plaintiffs of money. Plaintiffs were the victim of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

94.     All of the predicate acts described within this Complaint were continuous so as to form a pattern of racketeering activity in that "persons" participating in the enterprise engaged in the predicate acts over a substantial period of time or in that such predicate acts had become part of the enterprise participants' regular way of conducting business and said business practices would have continued indefinitely into the future but for this lawsuit.

95.     At all times, Plaintiffs were the reasonably foreseeable and/or anticipated victims of Defendants' scheme and Plaintiffs were the target or victim of the fraudulent scheme to have Plaintiffs pay damages or settlements based on UUC's, DRS's, and RJS's fraudulent medical reports and billings. Defendants reasonably knew that Plaintiffs would have a legal obligation to negotiate in good faith and make reasonable attempts to settle the underlying claims. As such, it was reasonably foreseeable and anticipated that Plaintiffs would rely on the conduct, documents and other information

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

provided by Defendants in evaluating the respective cases and, ultimately, entering into settlements.

96.     Plaintiffs were directly injured by the Defendants' fraudulent conduct, since Plaintiffs paid settlements and judgments that were based, at least in part, on inflated medical bills, illegal self-referrals, and procedures that were not medical necessary.

97.     As a direct and proximate result of, and by reason of, the activities of the Defendants and their conduct in violation of 18 USC §1962(c), Plaintiffs have been injured in their business or property, within the meaning of 18 USC §1964(c).

98.     Among other things, Plaintiffs have suffered damages to the extent they paid for settlements or judgments of UUC, DRS, and RJS patients on the basis of fraudulently inflated billings. Plaintiffs are, therefore, entitled to recover threefold the damage they have sustained together with the cost of the suit including costs, reasonable attorneys' fees and reasonable experts' fees.

## COUNT TWO

### Racketeer Influenced and Corrupt Organizations Act 18 USC §1962(d) – Conspiracy

### (Against All Defendants)

99.     Plaintiffs re-allege and restate paragraphs 1 through 98 as if fully set forth herein.

100.    Upon Plaintiffs' information and belief, Dr. Dipti Shah, Dr. Russell Shah, DRS, RJS, and UUC, and each of them, conspired together to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise described within this Complaint through a pattern of racketeering activity in violation of 18 USC §1962(d). In particular, these Defendants intended to further an endeavor which, if completed, would satisfy all of the elements of a fraudulent scheme to extract excessive settlement monies from insurers including Plaintiffs. Moreover, as referenced above, these defendants agreed to use the U.S. Mail and/or wire services such as telephone, facsimile or email to carry out their fraudulent scheme.

101.    From in or about 2008 through 2014, Defendants knowingly and willfully, and with intent to defraud, devised a scheme to defraud insurance companies, including Allstate, by obtaining money from these insurance companies through false and fraudulent pretenses and representations as outlined more fully above.

/ / /

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1

26

AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

102.    Plaintiffs were injured by the co-conspirators' overt acts that are acts of racketeering or otherwise unlawful under the RICO Act, which included (among other acts) acts of mail and wire fraud.

103.    As a direct and proximate result of, and by reason of, the activities of the co-conspirators of the enterprise, and the conspiracy alleged herein, Plaintiffs have been injured in its business or property, within the meaning of 18 USC §1964(c).

104.    Among other things, Plaintiffs have suffered damages to the extent the co-conspirators and/or each of them, received money from settlements or judgments paid by Plaintiffs on the basis of UUC's, DRS's and RJS's fraudulently billings. Plaintiffs have additionally suffered further damages to the extent Plaintiffs had to settle, for grossly inflated amounts, claims with first party claimants who had pending personal injury claims with Allstate, directly, or claims of third party claimants against Plaintiffs' insureds. Plaintiffs are, therefore, entitled to recover threefold the damage they have sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

## COUNT THREE

### Fraud and Intentional Misrepresentations (Against All Defendants)

105.    Plaintiffs re-allege and restate paragraphs 1 through 104 as if fully set forth herein.

106.    At all times herein relevant, Defendants knowingly communicated to Plaintiffs false representations of material fact in their reports, records, referrals and billings. Defendants engaged in numerous misrepresentations pursuant to the scheme, set forth with particularity above in this Complaint. This includes, but is not limited to numerous evaluations and treatment reports, referrals and billing records of UUC, DRS, and RJS containing statements of services that were at best grossly exaggerated, and misrepresentations that services were medically necessary or called for by the condition presented by the claimants.

107.    At all times herein relevant, Defendants knew and intended that others, such as insurance companies like Plaintiffs, would rely on their misrepresentations in evaluating pending claims against Plaintiffs' insureds or by Plaintiffs' insureds themselves. Defendants made these misrepresentations with knowledge of their falsity or at minimum in reckless disregard for their truth.

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                    27
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   Defendants knew that numerous physician referrals were excessive, not medically necessary and

2   unreasonable. Further, the Defendants were aware that the diagnoses provided were not accurate and

3   were not supportable by the medical evidence present. Defendants acted to aggrandize themselves

4   financially by inflating the medical bills knowing that settlement decisions are made in material part

5   on the extent of medical treatment and cost.

6       108.   From in or about 2008 through 2014, Defendants knowingly and willfully, and with

7   intent to defraud, devised a scheme to defraud certain entities, including Plaintiffs, by obtaining

8   money from these entities through false and fraudulent pretenses and representations.

9       109.   In making the above-described misrepresentations, Defendants intended to defraud

10  Plaintiffs and to induce Plaintiffs' reliance. Defendants were aware that the claimants each had

11  litigated claims for which insurance would be the likely source of recovery. Defendants further were

12  aware that the professional services being provided by them would be paid from the proceeds of any

13  settlement or judgment paid by Plaintiffs. Defendants' reports, referrals and bills each included

14  medically unnecessary services in these claims, all of which would be used to form the basis for a

15  monetary settlement.

16      110.   At all times herein relevant, Allstate reasonably and justifiably relied, to its detriment,

17  on the misrepresentations made by Defendants. Plaintiffs have a legal obligation to protect the

18  interests of its insureds and pay reasonable bills, judgments and/or settlements of claims involving

19  their insureds. Thus, Plaintiffs were legally bound to pay money, pursuant to their policies with their

20  insureds, to resolve claims caused by the negligence of Plaintiffs' insureds or others who injured

21  Plaintiffs' insureds. Because of Defendants' fraudulent conduct, Plaintiffs greatly overvalued and

22  thus, overpaid, for the settlements of over twenty-seven claims.

23      111.   Defendants' misrepresentations proximately caused damages to Plaintiffs. As a direct

24  and proximate result of Defendants' fraud and intentional misrepresentations, Plaintiffs have suffered

25  damages in an amount which is unknown at this time, but which is estimated to be in excess of

26  Seventy-Five Thousand Dollars ($75,000.00).

27      112.   Further, the conduct of Defendants, as described within this Complaint was willful,

28  malicious, and done with a conscious and reckless disregard to Plaintiffs and with the purpose of

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1          28
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

fraudulently obtaining money from Plaintiffs through dishonest and untruthful billings, reports, records and referrals. The Defendants' actions thus entitle Plaintiffs to punitive damages.

## COUNT FOUR

### Conspiracy to Defraud (Against All Defendants)

113.    Plaintiffs re-allege and paragraphs 1 through 112 as if fully set forth within this Count.

114.    At all times herein relevant, the named Defendants consist of two or more persons or business entities who, had a shared objective to be accomplished, had a meeting of the minds on how to achieve their objective, committed one or more unlawful or overt acts in furtherance of that objective, and this conspiracy resulted in damages to Plaintiffs.

115.    All of the above listed Defendants, jointly and individually, had an agreement whereby they each knowingly and wrongfully agreed to facilitate, conceal, advance, promote, and otherwise further a scheme to defraud Plaintiffs. The objective of this conspiracy was to generate as many fees as possible, all of which would be paid by Plaintiffs as part of any settlement or satisfaction of a judgment concerning the involved patients.

116.    These co-conspirators engaged in numerous wrongful acts pursuant to their agreement to defraud insurers such as Plaintiffs as set forth with particularity above in this Complaint.

117.    From in or about 2008 through 2014, Defendants knowingly and willfully, and with intent to defraud, devised a scheme to defraud insurance companies, including Allstate, by obtaining money from these insurance companies through false and fraudulent pretenses and representations.

118.    As a direct and proximate result of the herein alleged conspiracy to defraud Plaintiffs, Plaintiffs have suffered damages in an amount which is unknown at this time, but which is estimated to be in excess of Seventy-Five Thousand Dollars ($75,000.00).

119.    Further, the conduct of Defendants, as described within this Complaint was willful, malicious, and done with a reckless disregard to Plaintiffs and with the express purpose of obtaining money from Plaintiffs through fraudulent billings, reports, records and referrals.

/ / /

/ / /

/ / /

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                                   29
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## COUNT FIVE

### Nevada State RICO Violations – NRS §207.400 (Against All Defendants)

120.    Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 119 of the Complaint as if fully set forth herein.

121.    Each of the fraudulent claims described above demonstrate that Defendant committed: (1) grand larceny by obtaining money under false pretenses, a crime related to racketeering under NRS §207.360(16); (2) taking property from another under circumstances not amounting to robbery, a crime related to racketeering under NRS §207.360(9); (3) insurance fraud pursuant to NRS §686A.291, a crime related to racketeering under NRS §207.360(30); and (4) illegal self-referral of patients in violation of NRS §439B.425.

122.    Dr. Dipti Shah and Dr. Russell Shah, working in concert through UUC, DRS, and RJS, made false and fraudulent representations, reports, bills and referrals in support of excessive, inflated, medically unreasonable and inflated claims with the intent to obtain and did, in fact, obtain insurance proceeds that Defendants knew they had no right to receive.

123.    Plaintiffs justifiably and reasonably relied upon these misleading documents and misrepresentations to their detriment in evaluating, assessing and paying insurance claims and claims-related expenses.

124.    UUC, DRS, RJS, Dr. Dipti Shah, and. Dr. Russell Shah together constitute an enterprise separate and distinct from each individual Defendant. Each and every Defendant conducted and participated in the affairs of the enterprise through a pattern of racketeering activity including grand larceny, insurance fraud and taking property from another under circumstance not amounting to robbery.

125.    The Defendants further conducted the affairs of the foregoing enterprise through racketeering activity as identified above.

126.    Each Defendant associated with the enterprise and participated directly or indirectly in the conduct of the enterprise through racketeering activity as identified above.

127.    The predicate acts committed by each Defendant were not isolated, but related by similar pattern, intent, result, accomplices, victim and method of commission. This is best exemplified

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                              30
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  by the similar reporting, treatment plans, referrals and diagnostic studies ordered for claimants,

2  purportedly to treat and cure personal injuries sustained by various claimants.

3      128.    Plaintiffs have been injured in their business and property by reason of the Defendants'

4  misconduct.

5      129.    By virtue of the Defendants' violations of NRS §207.400(b)(c), Plaintiffs are entitled to

6  recover from each defendant identified three times the damages sustained by reason of the claims

7  submitted by the Defendants, and others acting in concert with them, together with the costs of suit

8  including reasonable attorneys' fees and investigative costs.

9      130.    Plaintiffs demand judgment against the Defendants as follows: actual and

10  consequential damages to be established at trial; treble damages, interest, costs and reasonable

11  attorneys' fees; investigative costs pursuant to NRS §207.470(1); and injunctive relief enjoining the

12  Defendants from engaging in the wrongful activities alleged in the Complaint as the Court deems just.

13  **<u>COUNT SIX</u>**

14  **Constructive Trust and Unjust Enrichment (Against All Defendants)**

15      131.    Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 130 of the

16  Complaint as if fully set forth herein.

17      132.    At all times relevant hereto, Defendants fraudulently obtained money in the form of

18  insurance payments and settlement proceeds from Plaintiffs under such circumstances that, in equity,

19  said money and/or property should be returned.

20      133.    At all relevant times, Defendants had a relationship with Plaintiffs that required them to

21  honestly treat these claimants, honestly and accurately report on the medical condition of these

22  claimants and to honestly and accurately submit billings for said treatment and care.

23      134.    Defendants understood that these bills and reports would form the basis of Plaintiffs

24  evaluation of these claims, assessment of the value of each claim and the amounts to be paid to settle

25  these claims against or by Plaintiffs' insureds.

26      135.    By paying Defendants money to which they had no legitimate right, Plaintiffs

27  conferred a benefit on Defendants, a benefit about which Defendants are aware and a benefit that

28  Defendants were not truly, legally and/or legitimately entitled.

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1          31

AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

136.   Although Plaintiffs were able to obtain settlements of the numerous claims, these settlements came at a great price to Plaintiffs in the form of overpaying the underlying claims due to the tortious conduct of Defendants. Plaintiffs acknowledge that it would likely have had to pay some compensation/consideration to obtain closure of most of the underlying claims (assuming the claimants would have even pursued their own claims absent the interference of Defendants). However, "but for" the conduct of Defendants, the costs associated with the resolution of those claims would have been accomplished at a savings of hundreds of thousands of dollars less than what was paid as a direct result of Defendants conduct.

137.   Those funds received by Defendants from Plaintiffs, to which Defendants were not entitled, have unjustly enriched Defendants at the expense of Plaintiffs.

138.   By the conduct of Defendants in making false reports, unnecessary referrals, material misrepresentations, nondisclosures and other false representations to its claimants and, indirectly to Plaintiffs to fraudulently obtain insurance proceeds by false pretenses, it would be inequitable for Defendants to retain the benefit of the insurance and/or settlement payments made by Plaintiffs.

139.   Plaintiffs demand judgment against Defendants individually, jointly and separately and that this Court impose a constructive trust upon Defendants in an amount representing those funds received by Defendants from Plaintiffs, as set forth above in this Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.   That Plaintiffs be awarded a judgment in their favor for each of the Counts set forth in this Complaint;

2.   For damages consisting of, but not limited to, the following:

    a.   Actual and consequential damages, including economic, general and special damages, caused by the Defendants' conduct as alleged herein;

    b.   Treble damages as permitted by the Federal and Nevada State RICO Act;

    c.   Attorney's fees and all costs, including expert expenses, incurred by Plaintiffs as a result of Defendants' conduct as permitted by both Federal and Nevada State law both before and after the filing of this Complaint;

FAIN ANDERSON
VANDERHOEF
OSENDAHL O'HALLORAN
SPILLANE PLLC

03246-01559 3961929.1                    32
AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   d. Punitive damages in an appropriate amount in the discretion of the jury as

2     permitted by both Federal and Nevada State law, and more specifically under

3     Count Three, Fraud and Intentional Misrepresentation;

4  3. For Judgment that Defendants disgorge to Plaintiffs all amounts received by

5 Defendants from Plaintiffs;

6  4. For Judgment in favor of the Plaintiffs for damages arising from the billing of

7 unreasonable and unnecessary healthcare services by Defendants; and

8  5. That Plaintiffs be awarded such other and further relief as the Court deem just and

9 proper.

10 DATED this 20th day of June, 2016

11    FAIN ANDERSON VANDERHOEF ROSENDAHL
     O'HALLORAN SPILLANE PLLC

13

14   By */s/ Eron Z. Cannon*
     ERON Z. CANNON, ESQ.

15     Nevada Bar No. 8013
     701 Fifth Avenue, Suite 4750

16     Seattle, WA 98104
     Attorneys for Plaintiffs

17 DATED this 20th day of June, 2016

18    McCORMICK, BARSTOW, SHEPPARD,
     WAYTE & CARRUTH LLP

20

21   By */s/ Jared P. Green*
     JARED P. GREEN, ESQ.

22     Nevada Bar No. 10059
     8337 West Sunset Road, Suite 350

23     Las Vegas, NV 89113
     Attorneys for Plaintiffs