DENNIS L. KENNEDY
Nevada Bar No. 1462
JOSEPH A. LIEBMAN
Nevada Bar No. 10125
JOSHUA P. GILMORE
Nevada Bar No. 11576
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: 702.562.8820
Facsimile: 702.562.8821
DKennedy@BaileyKennedy.com
JLiebman@BaileyKennedy.com
JGilmore@BaileyKennedy.com

*Attorneys for Defendants & Counterclaimants*
RUSSELL J. SHAH, M.D.; DIPTI R. SHAH, M.D.; RUSSELL J. SHAH, MD, LTD.; DIPTI R. SHAH, MD, LTD.; and RADAR MEDICAL GROUP, LLP dba UNIVERSITY URGENT CARE

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,

Plaintiffs,

vs.

RUSSELL J. SHAH, M.D.; DIPTI R. SHAH, M.D.; RUSSELL J. SHAH, MD, LTD.; DIPTI R. SHAH, MD, LTD.; and RADAR MEDICAL GROUP, LLP dba UNIVERSITY URGENT CARE, Does 1-100, and ROES 101-200,

Defendants.

---

RUSSELL J. SHAH, M.D.; DIPTI R. SHAH, M.D.; and RADAR MEDICAL GROUP, LLP,

Counterclaimants,

vs.

Case No. 2:15-cv-01786-APG-CWH

**ANSWER; COUNTERCLAIMS; AND DEMAND FOR JURY TRIAL**

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,

Counterdefendants.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**ANSWER**

Defendants Russell J. Shah, M.D. ("Dr. Russell Shah"), Dipti R. Shah, M.D. ("Dr. Dipti Shah"), Russell J. Shah, MD, Ltd. ("Russell PC"), Dipti R. Shah, MD, Ltd. ("Dipti PC"), and Radar Medical Group, LLP d/b/a University Urgent Care ("Radar Medical") (collectively, the "Defendants"), respond to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, and Allstate Fire & Casualty Insurance Company's (collectively, the "Plaintiffs") Amended Complaint for Damages [Dkt. #41] (the "Amended Complaint") as follows:

**DEMAND FOR A JURY TRIAL**

1. Answering Paragraph 1, the allegations are not directed at Defendants, and therefore, no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore, deny the same.

**JURISDICTION AND VENUE**

2. Answering Paragraph 2, the allegations are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

3. Answering Paragraph 3, Defendants admit that they are citizens and residents of the State of Nevada and have their principal place of business in the State of Nevada. Defendants deny all remaining allegations.

4. Answering Paragraph 4, the allegations are legal conclusions to which no response is required. To the extent a response is required, Defendants admit that they "are found in this District." Defendants deny all remaining allegations.

**PARTIES TO THIS LITIGATION**

5. Answering Paragraph 5, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore, deny the same.

6. Answering Paragraph 6, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore, deny the same.

7. Answering Paragraph 7, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore, deny the same.

8. Answering Paragraph 8, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore, deny the same.

9. Answering Paragraph 9, Defendants admit that Dr. Dipti Shah is a competent adult; that Dr. Dipti Shah is a resident of the State of Nevada and has been employed and working as a doctor of medicine, licensed and practicing within the State of Nevada, focusing on internal medicine and nephrology; and that Dr. Dipti Shah is an agent of Radar Medical. Defendants deny all remaining allegations.

10. Answering Paragraph 10, Defendants admit that Dipti PC is and was a professional corporation organized under the laws of the State of Nevada; that Dipti PC's address is 2628 W. Charleston Boulevard, Las Vegas, Nevada; that Dr. Dipti Shah owns Dipti PC; that Dr. Dipti Shah is a corporate officer of Dipti PC; that Dr. Dipti Shah is an employee of Dipti PC; and that Dr. Dipti Shah derives a profit from Dipti PC. Defendants deny all remaining allegations.

11. Answering Paragraph 11, Defendants admit that Dr. Russell Shah is a competent adult; that Dr. Russell Shah is a resident of the State of Nevada and has been employed and working as a doctor of medicine, licensed and practicing within the State of Nevada; that Dr. Russell Shah is a clinical neurologist; and that Dr. Russell Shah is an agent of Radar Medical. Defendants deny all remaining allegations.

12. Answering Paragraph 12, Defendants admit that Russell PC is and was a professional corporation organized under the laws of the State of Nevada; that Russell PC's address is 2628 W. Charleston Boulevard, Las Vegas, Nevada; that Dr. Russell Shah owns Russell PC; that Dr. Russell

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Shah is a corporate officer of Russell PC; that Dr. Russell Shah is an employee of Russell PC; and that Dr. Russell Shah derives a profit from Russell PC. Defendants deny all remaining allegations.

13. Answering Paragraph 13, Defendants admit that Radar Medical is and was a limited liability partnership organized under the laws of the State of Nevada; that Radar Medical's address is 2628 W. Charleston Boulevard, Las Vegas, Nevada; and that Radar Medical also does business as University Urgent Care ("UUC"). Defendants deny all remaining allegations.

## ALLEGED CO-CONSPIRATORS

14. Answering Paragraph 14, the allegations are not directed at Defendants, and therefore, no response is required. To the extent a response is required, Defendants deny that they have conspired with anyone to defraud Plaintiffs. As to the remaining allegations, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore, deny the same.

## FACTUAL ALLEGATIONS COMMON TO EACH COUNT

15. Defendants reassert and incorporate by reference the above Paragraphs 1-14, inclusive, as though fully set forth herein.

16. Answering Paragraph 16, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore, deny the same.

17. Answering Paragraph 17, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore, deny the same.

18. Answering Paragraph 18, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore, deny the same.

19. Answering Paragraph 19, Defendants deny the allegations.

20. Answering Paragraph 20, Defendants admit that Dr. Dipti Shah has a financial interest in Dipti PC. Defendants deny the remaining allegations.

21. Answering Paragraph 21, Defendants admit that Dr. Russell Shah has a financial interest in Russell PC. Defendants deny the remaining allegations.

22. Answering Paragraph 22, Defendants deny the allegations.

23. Answering Paragraph 23, Defendants deny the allegations.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

24. Answering Paragraph 24, Defendants admit that Claimant #24 was treated by Drs. Russell and Dipti Shah; that Dr. Russell Shah saw Claimant #24 on July 31, 2009, for an exam; that Claimant #24 was billed $795 for the July 31, 2009, exam and $350 for a special report; that Dr. Dipti Shah saw Claimant #24 on August 18, 2009, for an exam; that Claimant #24 was billed $475 for the August 18, 2009, exam and $172.25 in prescription medication and dispensing fee ($82.95 for one medication, $69.30 for a second medication, and a $20 dispensing fee related to both medications); that Dr. Russell Shah saw Claimant #24 on August 28, 2009, for a follow up; that Claimant #24 was billed $250 for the August 28, 2009, follow up and $200 for a special report; that Dr. Russell Shah saw Claimant #24 on September 4, 2009, for EMG/NCV testing and follow up; that Dr. Dipti Shah saw Claimant #24 on September 24, 2009, for a follow up; that Claimant #24 was billed $225 for the September 24, 2009, follow up and $172.25 in prescription medication and dispensing fee ($82.95 for one medication, $69.30 for a second medication, and a $20 dispensing fee related to both medications); that Dr. Russell Shah saw Claimant #24 on October 2, 2009, for a follow up; that Claimant #24 was billed $275 for the October 2, 2009, follow up and $150 for a special report; that Dr. Dipti Shah saw Claimant #24 on October 29, 2009, for a follow up; that Claimant #24 was billed $225 for the October 29, 2009, follow up; that Dr. Russell Shah saw Claimant #24 on December 4, 2009, for a follow up; that Claimant #24 was billed $300 for the December 4, 2009, follow up and $150 for a special report; that Dr. Dipti Shah saw Claimant #24 on December 10, 2009, for a follow up; and that Claimant #24 was billed $225 for the December 10, 2009, follow up. Defendants deny all remaining allegations.

25. Answering Paragraph 25, Defendants deny the allegations.

26. Answering Paragraph 26, Defendants deny the allegations.

27. Answering Paragraph 27, Defendants deny the allegations.

28. Answering Paragraph 28, Defendants deny the allegations.

29. Answering Paragraph 29, Defendants deny the allegations.

30. Answering Paragraph 30, Defendants admit that Claimant #37 presented to UUC on December 11, 2009, for an exam with a nurse practitioner; that Claimant #37 was charged $200 for the December 11, 2009, exam using CPT code 99204, $100 for an urgent care fee, $237.90 in

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

prescription medication and dispensing fee ($88.80 for one medication, $79.80 for a second medication, $69.30 for a third medication, and a $30 dispensing fee related to all three medications); that Claimant #37 filled the prescriptions at UUC; that Dr. Dipti Shah saw Claimant #37 for an exam; and that Claimant #37 was billed $475 for the exam with Dr. Dipti Shah using CPT code 99204. Defendants deny all remaining allegations.

31. Answering Paragraph 31, Defendants admit that Claimant #53 presented to UUC for an exam with a nurse practitioner; that Claimant #53 was charged $200 for the exam with the nurse practitioner using CPT code 99204; that Dr. Dipti Shah saw Claimant #53 for an exam; that Claimant #53 was billed $475 for the exam with Dr. Dipti Shah using CPT code 99244; that Dr. Russell Shah saw Claimant #53 for an exam; and that Claimant #53 was billed $755 for the exam with Dr. Russell Shah using CPT code 99244 and $300 for a special report. Defendants deny all remaining allegations.

32. Answering Paragraph 32, Defendants admit that Claimant #73 presented to UUC for an exam with Edwin Favis ("Mr. Favis"), a nurse practitioner; that Claimant #73 was billed $350 for the exam with Mr. Favis using CPT code 99204 and a $100 urgent care fee; that the UUC Check-Out Form, dated April 14, 2011, being in writing, speaks for itself; that Dr. Dipti Shah saw Claimant #73 for an exam; that Claimant #73 was billed $475 for the exam with Dr. Dipti Shah using CPT code 99204; that Mr. Favis had five follow ups with Claimant #73; and that Claimant #73 was billed $225 for four of the follow ups with Mr. Favis using CPT code 99214 and $200 for the last follow up with Mr. Favis using CPT code 99213. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that Claimant #73 was under the care of a chiropractor at exact same time, and therefore, deny the same. Defendants deny all remaining allegations.

33. Answering Paragraph 33, Defendants admit that Claimant #83 presented to UUC on November 30, 2010, for an exam with Mr. Favis; that Claimant #83 was billed $200 for the exam with Mr. Favis and a $100 urgent care fee; that Dr. Dipti Shah saw Claimant #83 on December 7, 2010, for an exam; that Claimant #83 was billed $475 for the exam with Dr. Dipti Shah using CPT code 99204; and that Mr. Favis had two follows up with Claimant #83 on March 8, 2011, and April 28, 2011. Defendants lack knowledge or information sufficient to form a belief about the truth of

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

the allegations relating to chiropractic care, and therefore, deny the same. Defendants deny all remaining allegations.

34. Answering Paragraph 34, Defendants admit that Dr. Russell Shah saw Claimant #83 on February 22, 2011, for EMG/NCV testing; and that Claimant #83 was billed a total of $4,485 for the EMG/NCV testing with Dr. Russell Shah ($1,785 for the EMG, $900 for sensory nerve testing, $1,000 for motor nerve testing, and $800 for H Wave reflexes). Defendants deny all remaining allegations.

35. Answering Paragraph 35, Defendants deny the allegations.

36. Answering Paragraph 36, Defendants deny the allegations.

37. Answering Paragraph 37, Defendants admit that the Internal Medicine Evaluations for Claimant #206, Claimant #210, Claimant #211, and Claimant #212, being in writing, speak for themselves. Defendants deny all remaining allegations.

38. Answering Paragraph 38, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that Claimant #118, Claimant #119, and Claimant #205 were referred to UUC from their attorneys, and therefore, deny the same. Defendants deny all remaining allegations.

39. Answering Paragraph 39, Defendants deny that they were involved in any alleged scheme to fraudulently build up medical specials. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations, and therefore, deny the same.

40. Answering Paragraph 40, Defendants admit that Claimant #109 presented to UUC on August 12, 2011, for an exam with Mr. Favis; that Claimant #109 was billed $350 for the August 12, 2011, exam with Mr. Favis using CPT code 99204; that Dr. Dipti Shah saw Claimant #109 for an exam; that Claimant #109 was billed $475 for the exam with Dr. Dipti Shah using CPT code 99244; that Claimant #109 had follow ups on September 13, 2011, and October 25, 2011; and that Claimant #109 was billed $225 for each follow up using CPT code 99214. Defendants deny all remaining allegations.

41. Answering Paragraph 41, Defendants admit that Claimant #129 presented to UUC on January 11, 2012, for an exam with Mr. Favis; that Claimant #129 was billed $350 for the January

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

11, 2012, exam with Mr. Favis using CPT code 99204; that Dr. Dipti Shah saw Claimant #129 on January 30, 2012, for an exam; that Claimant #129 was billed $475 for the January 30, 2012, exam with Dr. Dipti Shah using CPT code 99244; that Claimant #129 had follow ups; and that Claimant #129 was billed for each follow up using CPT code 99214. Defendants deny all remaining allegations.

42. Answering Paragraph 42, Defendants deny the allegations.

43. Answering Paragraph 43, Defendants admit that Dr. Dipti Shah saw Claimant #14 on May 13, 2009, for an exam; that Dr. Dipti Shah prescribed Naprosyn and Vicodin to Claimant #14 on May 13, 2009; that Claimant #14 was billed $79.80 for 30 pills of Naprosyn, $85.50 for 30 pills of Vicodin, and a $20 dispensing fee related to both medications; that Dr. Dipti Shah saw Claimant #14 on May 27, 2009, for an exam; that Dr. Dipti Shah prescribed Naprosyn and Vicodin to Claimant #14 on May 27, 2009; that Claimant #14 was billed $79.80 for 30 pills of Naprosyn, $85.50 for 30 pills of Vicodin, and a $20 dispensing fee related to both medications; that Claimant #14 was prescribed Naprosyn and Vicodin on June 11, 2009, June 23, 2009, and July 20, 2009; that Dr. Dipti Shah prescribed Lortab to Claimant #14 on August 18, 2009; that Claimant #14 was billed $90 for 30 pills of Lortab and a $10 dispensing fee related to the medication; and that the Internal Medicine Follow-Ups for the June 23, 2009, July 20, 2009, August 18, 2009, and September 21, 2009, exams, being in writing, speak for themselves. Defendants deny all remaining allegations.

44. Answering Paragraph 44, Defendants admit that Claimant #29 presented to UUC on October 2, 2009, for an exam with Mr. Favis; that Mr. Favis prescribed Flexeril and Motrin (600 mg) to Claimant #29 on October 2, 2009; that Claimant #29 was billed $82.95 for 15 pills of Flexeril and $69.30 for 45 pills of Motrin (600 mg); that Dr. Dipti Shah saw Claimant #29 on October 6, 2009, for an exam; and that Dr. Dipti Shah prescribed Motrin (600 mg) to Claimant #29 on October 6, 2009. Defendants deny all remaining allegations.

45. Answering Paragraph 45, Defendants deny the allegations.

46. Answering Paragraph 46, Defendants deny the allegations.

47. Answering Paragraph 47, Defendants deny the allegations.

48. Answering Paragraph 48, Defendants deny the allegations.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

49. Answering Paragraph 49, Defendants deny the allegations.

50. Answering Paragraph 50, Defendants deny the allegations.

51. Answering Paragraph 51, Defendants deny the allegations.

52. Answering Paragraph 52, Defendants deny the allegations.

53. Answering Paragraph 53, Defendants deny the allegations.

54. Answering Paragraph 54, Defendants admit that Dr. Russell Shah performed one or more EMG/NCV studies for the following claimants: Claimant ##1-12; Claimant ##15-16; Claimant #18; Claimant ##20-21; Claimant #24; Claimant ##26-28; Claimant ##31-34; Claimant #36; Claimant ##39-41; Claimant ##43-44; Claimant ##46-56; Claimant #58; Claimant ##60-62; Claimant ##66-67; Claimant ##70-71; Claimant ##74-79; Claimant #83; Claimant ##87-90; Claimant #93; Claimant #95; Claimant #99; Claimant #104; Claimant #106; Claimant #108; Claimant ##111-112; Claimant ##114-115; Claimant ##118-121; Claimant #126; Claimant ##131-133; Claimant #140; Claimant ##148-152; Claimant ##162-164; Claimant ##167-169; Claimant #171; Claimant ##173-175; Claimant ##179-181; Claimant ##183-185; Claimant #187; Claimant #191; Claimant ##196-199; Claimant #204; Claimant #207; and Claimant #213. Defendants deny the remaining allegations.

55. Answering Paragraph 55, Defendants deny the allegations.

56. Answering Paragraph 56, Defendants deny the allegations.

57. Answering Paragraph 57, Defendants admit that Dr. Russell Shah performed EMG/NCV testing for Claimant #99; that Claimant #99 was billed a total of $6,235 for the EMG/NCV testing ($1,785 for the needle EMG (two extremities), $300 for two motor nerves without F wave, $3,150 for 14 sensory nerves, and $1,000 for four motor nerves with F wave); that Dr. Russell Shah performed EMG/NCV testing for Claimant #184; and that Claimant #184 was billed over $6,000 for the EMG/NCV testing ($3,560 for 13+ lower extremity nerves, $570 for the needle EMG (one extremity), and $3,560 for 13+ upper extremity nerves). Defendants deny the remaining allegations.

58. Answering Paragraph 58, Defendants admit that Dr. Russell Shah performed EMG testing for Claimant #179 (four extremities); that the Electrodiagnostic Results for Claimant #179,

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

being in writing, speak for themselves; that Dr. Russell Shah performed EMG testing for Claimant #119 (one extremity); and that the Electrodiagnostic Results for Claimant #119, being in writing, speak for themselves. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations concerning statements made by Claimant #179 to an unidentified third party, and therefore, deny the same. Defendants deny the remaining allegations.

59. Answering Paragraph 59, Defendants deny the allegations.

60. Answering Paragraph 60, Defendants deny the allegations.

61. Answering Paragraph 61, Defendants deny the allegations.

62. Answering Paragraph 62, Defendants admit that Dr. Russell Shah referred Claimant #119 to a pain management specialist the same day that he examined Claimant #119. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations concerning discussions that Claimant #119 had with her counsel, and therefore, deny the same. Defendants deny the remaining allegations.

63. Answering Paragraph 63, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation concerning Claimant #119's characterization of the treatment received from Drs. Russell and Dipti Shah, and therefore, deny the same. Defendants deny the remaining allegations.

64. Answering Paragraph 64, Defendants deny the allegations.

65. Answering Paragraph 65, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore, deny the same.

66. Answering Paragraph 66, the allegations are not directed at Defendants, and therefore, no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore, deny the same.

67. Answering Paragraph 67, Defendants deny the allegations.

68. Answering Paragraph 68, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore, deny the same.

69. Answering Paragraph 69, Defendants deny the allegations.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

70. Answering Paragraph 70, Defendants deny the allegations.

71. Answering Paragraph 71, Defendants deny the allegations.

72. Answering Paragraph 72, Defendants deny the allegations.

73. Answering Paragraph 73, Defendants deny the allegations.

74. Answering Paragraph 74, Defendants deny the allegations.

**COUNT ONE**

75. Defendants reassert and incorporate by reference the above Paragraphs 1-74, inclusive, as though fully set forth herein.

76. Answering Paragraph 76, Defendants deny the allegations.

77. Answering Paragraph 77, Defendants deny the allegations.

78. Answering Paragraph 78, Defendants deny the allegations.

79. Answering Paragraph 79, Defendants deny the allegations.

80. Answering Paragraph 80, Defendants deny the allegations.

81. Answering Paragraph 81, Defendants deny the allegations.

82. Answering Paragraph 82, Defendants deny the allegations.

83. Answering Paragraph 83, Defendants admit that Dr. Dipti Shah owns Dipti PC. Defendants deny the remaining allegations.

84. Answering Paragraph 84, Defendants admit that Dr. Russell Shah owns Russell PC. Defendants deny the remaining allegations.

85. Answering Paragraph 85, Defendants admit that Dr. Dipti Shah managed employees of UUC. Defendants deny the remaining allegations.

86. Answering Paragraph 86, Defendants deny the allegations.

87. Answering Paragraph 87, Defendants deny the allegations.

88. Answering Paragraph 88, Defendants deny the allegations.

89. Answering Paragraph 89, Defendants deny the allegations.

90. Answering Paragraph 90, Defendants deny the allegations.

91. Answering Paragraph 91, Defendants deny the allegations.

92. Answering Paragraph 92, Defendants deny the allegations.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

93. Answering Paragraph 93, Defendants deny the allegations.

94. Answering Paragraph 94, Defendants deny the allegations.

95. Answering Paragraph 95, Defendants deny the allegations.

96. Answering Paragraph 96, Defendants deny the allegations.

97. Answering Paragraph 97, Defendants deny the allegations.

98. Answering Paragraph 98, Defendants deny the allegations.

## COUNT TWO

99. Defendants reassert and incorporate by reference the above Paragraphs 1-98, inclusive, as though fully set forth herein.

100. Answering Paragraph 100, Defendants deny the allegations.

101. Answering Paragraph 101, Defendants deny the allegations.

102. Answering Paragraph 102, Defendants deny the allegations.

103. Answering Paragraph 103, Defendants deny the allegations.

104. Answering Paragraph 104, Defendants deny the allegations.

## COUNT THREE

105. Defendants reassert and incorporate by reference the above Paragraphs 1-104, inclusive, as though fully set forth herein.

106. Answering Paragraph 106, Defendants deny the allegations.

107. Answering Paragraph 107, Defendants deny the allegations.

108. Answering Paragraph 108, Defendants deny the allegations.

109. Answering Paragraph 109, Defendants deny the allegations.

110. Answering Paragraph 110, Defendants deny the allegations.

111. Answering Paragraph 111, Defendants deny the allegations.

112. Answering Paragraph 112, Defendants deny the allegations.

## COUNT FOUR

113. Defendants reassert and incorporate by reference the above Paragraphs 1-112, inclusive, as though fully set forth herein.

114. Answering Paragraph 114, Defendants deny the allegations.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

115. Answering Paragraph 115, Defendants deny the allegations.

116. Answering Paragraph 116, Defendants deny the allegations.

117. Answering Paragraph 117, Defendants deny the allegations.

118. Answering Paragraph 118, Defendants deny the allegations.

119. Answering Paragraph 119, Defendants deny the allegations.

**COUNT FIVE**

120. Defendants reassert and incorporate by reference the above Paragraphs 1-119, inclusive, as though fully set forth herein.

121. Answering Paragraph 121, Defendants deny the allegations.

122. Answering Paragraph 122, Defendants deny the allegations.

123. Answering Paragraph 123, Defendants deny the allegations.

124. Answering Paragraph 124, Defendants deny the allegations.

125. Answering Paragraph 125, Defendants deny the allegations.

126. Answering Paragraph 126, Defendants deny the allegations.

127. Answering Paragraph 127, Defendants deny the allegations.

128. Answering Paragraph 128, Defendants deny the allegations.

129. Answering Paragraph 129, Defendants deny the allegations.

130. Answering Paragraph 130, Defendants deny the allegations.

**COUNT SIX**

131. Defendants reassert and incorporate by reference the above Paragraphs 1-130, inclusive, as though fully set forth herein.

132. Answering Paragraph 132, Defendants deny the allegations.

133. Answering Paragraph 133, Defendants deny the allegations.

134. Answering Paragraph 134, Defendants deny the allegations.

135. Answering Paragraph 135, Defendants deny the allegations.

136. Answering Paragraph 136, Defendants deny the allegations.

137. Answering Paragraph 137, Defendants deny the allegations.

138. Answering Paragraph 138, Defendants deny the allegations.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

139. Answering Paragraph 139, Defendants deny the allegations.

Defendants deny all remaining allegations in Plaintiffs' Amended Complaint not specifically addressed above.

Having fully answered Plaintiffs' Amended Complaint, Defendants set forth their affirmative defenses as follows:

**FIRST AFFIRMATIVE DEFENSE**

Plaintiffs' Amended Complaint fails to set forth facts sufficient to state a claim upon which relief may be granted against Defendants and further fails to entitle Plaintiffs to the relief sought, or to any relief whatsoever from Defendants.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by applicable statutes of limitation and/or statutes of repose.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the equitable doctrines of laches, waiver, abandonment, estoppel, and/or unclean hands.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by a lack of privity.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiffs' damages, if any, were proximately caused by the independent, intervening, and/or superseding acts of persons and/or entities other than Defendants, for which Defendants cannot be held responsible.

**SIXTH AFFIRMATIVE DEFENSE**

The independent, intervening and/or superseding cause(s) of damages allegedly sustained by Plaintiffs may be conduct of others which is illicit, criminal, or otherwise improper, for which Defendants cannot be held responsible.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, based on Plaintiffs' assumption of the risk.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiffs' recovery is barred, in whole or in part, by their failure to mitigate any damages and/or injuries allegedly sustained.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' own acts, omissions, and/or other unlawful conduct.

**TENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, due to their attempted restraint on trade.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' own intentional and/or negligent conduct.

**TWELFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because Defendants' alleged acts and/or omissions were protected by the litigation privilege.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because, at all times and places mentioned in the Amended Complaint, Defendants' actions were justified.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because, at all times and places mentioned in the Amended Complaint, Defendants' actions were privileged.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because, at all times and places mentioned in the Amended Complaint, Defendants acted in a manner authorized and/or required by law.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the failure to join necessary and indispensable parties.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claimed damages are too speculative and remote to form the basis for relief.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**EIGHTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' injuries, if any, were not legally or proximately caused by any acts or omissions of Defendants.

**NINETEENTH AFFIRMATIVE DEFENSE**

Defendants have performed and fully discharged all legal obligations owed to Plaintiffs, including meeting the requisite standard of care to which Plaintiffs may have been entitled.

**TWENTIETH AFFIRMATIVE DEFENSE**

If Plaintiffs were damaged as alleged, which is specifically denied, then the damages were caused, in whole or in part, by the acts or omissions of others, whether individual, corporate, or otherwise, whether named or unnamed in Plaintiffs' Amended Complaint, over whom Defendants had neither control nor right of control and for whose conduct Defendants are not responsible.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, under the doctrines of issue preclusion and/or claim preclusion.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

Persons and/or entities other than Defendants caused or contributed to Plaintiffs' alleged damages and, as a result, any award of damages in favor of Plaintiffs and against Defendants must be reduced by an amount equal to the percentage of fault of such third parties.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the contributory and/or comparative negligence, fault, and/or want of due care by Plaintiffs, and, therefore, Plaintiffs may not recover damages or any recoverable damages must be reduced in proportion to the amount of negligence attributable to Plaintiffs.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, due to lack of federal and state RICO standing.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because no enterprise existed upon which to allege that a pattern of racketeering activity allegedly occurred.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because no pattern of racketeering activity occurred causing injury to Plaintiffs' business or property.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because Defendants lacked the requisite scienter and/or culpability to be involved in a RICO conspiracy.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the intracorporate conspiracy doctrine.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because no private right of action exists for alleged violations of state self-referral laws.

**THIRTIETH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to exhaust administrative remedies.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because alleged illegal self-referrals by Defendants do not constitute predicate acts for state RICO purposes.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

Defendants are not liable to Plaintiffs for any alleged failure to disclose, because Defendants did not owe any duty to Plaintiffs to make such disclosures.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

Defendants are not liable to Plaintiffs for any of the alleged misrepresentations and/or omissions complained of, because any such representations and/or omissions were not required to be made to Plaintiffs by Defendants.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

Defendants are not liable to Plaintiffs for any alleged misrepresentations or omissions, because any such representations and/or omissions were not material.

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

Defendants are not liable to Plaintiffs for any alleged misrepresentations and/or omissions, because if any such misrepresentations and/or omissions were made, which Defendants specifically deny, then Defendants lacked the intent either to deceive or induce Plaintiffs to act in reliance thereupon.

**THIRTY-SIXTH AFFIRMATIVE DEFENSE**

Defendants are not liable to Plaintiffs for any alleged misrepresentations and/or omissions, because Plaintiffs did not reasonably and/or justifiably rely, in any manner whatsoever, on any such representations and/or omissions.

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

Defendants are not liable to Plaintiffs for any alleged misrepresentations and/or omissions, because Plaintiffs assumed the risk of any alleged injuries and/or damages caused thereby.

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE**

Defendants are not liable to Plaintiffs for any alleged misrepresentation(s) or omission(s) because at all material times Defendants acted in good faith and had no knowledge or reasonable grounds to believe, and were not reckless in not knowing, that any alleged statement(s) or omission(s) was false and/or misleading.

**THIRTY-NINTH AFFIRMATIVE DEFENSE**

Defendants are not liable to Plaintiffs for any alleged misrepresentations and/or omissions, because, at all times and places mentioned in the Amended Complaint, Defendants acted with reasonable care and due diligence with respect to the matters that Plaintiffs contend to be a misrepresentation and/or omission.

**FORTIETH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because they have failed to plead fraud with specificity and/or particularity pursuant to Federal Rule of Civil Procedure 9(b).

**FORTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiffs' claims are void *ab initio* by the failure to attach medical expert affidavits to the Amended Complaint in accordance with NRS 41A.071.

**FORTY-SECOND AFFIRMATIVE DEFENSE**

Defendants are immune from suit for the alleged wrongs in the Amended Complaint pursuant to the *Noerr-Pennington* doctrine.

**FORTY-THIRD AFFIRMATIVE DEFENSE**

Plaintiffs' claims for punitive damages are in violation of constitutional guarantees of due process, equal protection, and/or the prohibition on excessive fines.

**FORTY-FOURTH AFFIRMATIVE DEFENSE**

The Amended Complaint, and each claim for relief alleged therein, fails to set forth facts sufficient to entitle Plaintiffs to an award of punitive damages.

**FORTY-FIFTH AFFIRMATIVE DEFENSE**

Defendants require Plaintiffs to prove their entitlement to punitive damages by a minimum standard of clear and convincing evidence, as required by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Sections 6, 8, and 18 of the Nevada Constitution. Defendants further require Plaintiffs to prove their entitlement to punitive damages beyond a reasonable doubt, as required by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Sections 6, 8, and 18 of the Nevada Constitution.

**FORTY-SIXTH AFFIRMATIVE DEFENSE**

Defendants deny any liability for any award of punitive damages because under the current rules governing discovery and trial practices, current evidentiary rules, and current vague substantive standards, such an award would violate Defendants' rights under Article I, Sections 8, 9, and 10 of the United States Constitution, the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and Article 1, Sections 6, 8, and 18 of the Nevada Constitution.

**FORTY-SEVENTH AFFIRMATIVE DEFENSE**

Pursuant to the Federal Rules of Civil Procedure, Defendants reserve the right to assert, and give notice that they intend to rely upon, any other affirmative defenses that may become available

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

or appear during discovery proceedings or otherwise in this case, and reserve the right to amend their Answer to assert any such additional affirmative defenses.

WHEREFORE, Defendants pray for judgment on Plaintiffs' claims as follows:

1. That Plaintiffs' claims, and each of them, be dismissed with prejudice and that Plaintiffs take nothing thereby;

2. For an award of costs and attorney's fees incurred in the defense of this action, as may be permitted by law; and

3. For such other and further relief as the Court deems just and proper.

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Counterclaimants Russell J. Shah, M.D., Dipti R. Shah, M.D., and Radar Medical Group, LLP bring the following counterclaims against Counterdefendants Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, and Allstate Fire & Casualty Insurance Company, and each of them, as follows:

### JURISDICTION AND VENUE

1. The Court has original jurisdiction over this action pursuant to 28 U.S.C. Section 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States (Nevada and Illinois). The Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. Section 1367(a) because the counterclaims are related to the claims.

2. The Court has personal jurisdiction over each of the Counterdefendants because the acts complained of herein were committed by the Counterdefendants within the State of Nevada, and therefore, the Counterdefendants have had sufficient minimum contacts with this forum such that the exercise of personal jurisdiction over them will not offend the traditional notions of fair play and substantial justice.

3. Venue is proper in this District and Division pursuant to 28 U.S.C. Section 1391(b)(2) because a substantial part of the events giving rise to the counterclaims occurred here.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**THE PARTIES**

4. Russell J. Shah, M.D., is, and at all times material hereto was, a resident and citizen of the State of Nevada ("Dr. Russell Shah").

5. Dipti R. Shah, M.D., is, and at all times material hereto was, a resident and citizen of the State of Nevada ("Dr. Dipti Shah").

6. Radar Medical Group, LLP, is, and at all times material hereto was, a Nevada limited liability partnership doing business in the State of Nevada as a group practice ("Radar Medical"). Drs. Russell and Dipti Shah practice medicine through Radar Medical. Radar Medical also does business in the State of Nevada as University Urgent Care, an urgent care facility.

7. Drs. Russell and Dipti Shah and Radar Medical are collectively referred to herein as the "Radar Parties."

8. The Radar Parties are informed and believe, and thereon allege, that Allstate Insurance Company is, and at all times material hereto was, an Illinois corporation with its principal place of business in Illinois ("Allstate Ins. Co.").

9. The Radar Parties are informed and believe, and thereon allege, that Allstate Property & Casualty Insurance Company is, and at all times material hereto was, an Illinois corporation with its principal place of business in Illinois ("Allstate Prop. & Cas. Ins. Co.").

10. The Radar Parties are informed and believe, and thereon allege, that Allstate Indemnity Company is, and at all times material hereto was, an Illinois corporation with its principal place of business in Illinois ("Allstate Indem. Co.").

11. The Radar Parties are informed and believe, and thereon allege, that Allstate Fire & Casualty Insurance Company is, and at all times material hereto was, an Illinois corporation with its principal place of business in Illinois ("Allstate Fire & Cas. Ins. Co.").

12. Allstate Ins. Co., Allstate Prop. & Cas. Ins. Co., Allstate Indem. Co., and Allstate Fire & Cas. Ins. Co. are collectively referred to herein as the "Allstate Companies."

13. The Radar Parties are informed and believe, and thereon allege, that each of the Allstate Companies is authorized to transact business in the State of Nevada.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**GENERAL ALLEGATIONS**

Treating Patients on a Lien Basis

14. Nevada has a severe shortage of doctors. The State is consistently ranked near the bottom in terms of doctors per capita. A recent study showed that Nevada has 224 doctors per 100,000 people, compared to the national average of 327 doctors per 100,000 people.

15. Many people injured in motor vehicle accidents are of average or below median income, have minimal health insurance coverage, and cannot afford the ever-rising costs of medical treatment, including co-pays and deductibles. These individuals have limited access to medical treatment compared to those of higher income or with better health insurance coverage. Though they may, in the future, recover money from those responsible for their injuries in order to pay for their treatment, their injuries require immediate – not deferred – care.

16. A small number of doctors in Nevada are willing to defer receipt of payment for treatment until after their patients have an opportunity to pursue claims for damages related to motor vehicle accidents in order to recover money to pay for their treatment. This is commonly known as treating patients on a lien basis.

17. Doctors who treat patients on a lien basis are exposed to substantially greater risk of non-payment than those doctors who receive payment at the time of or promptly after rendering treatment.

18. Those few doctors in Nevada who treat patients on a lien basis provide an invaluable service to the community by ensuring equal access to medical treatment for all Nevada residents regardless of financial means. Drs. Russell and Dipti Shah are two of those doctors, a husband and wife team at Radar Medical who have expanded their practices to include the care and treatment of patients injured in motor vehicle accidents who are unable to pay for treatment absent pursuing claims for damages.

19. Dr. Russell Shah is a clinical neurologist who specializes in neurophysiology and has extensive training in and experience with electroencephalograms, electromyography, and nerve conduction studies. He received his medical degree from the American University of the Caribbean School of Medicine in the British West Indies. He completed his residency in clinical neurology and

subspecialty fellowship in clinical neurophysiology (focusing on electrical wave patterns of the central and peripheral nervous systems in patients with brain and spine dysfunction such as those with traumatic brain injury, traumatic spinal nerve and root injury, and epilepsy) at Rush Presbyterian St. Luke's Medical Center in Chicago, Illinois. He has since undergone advanced specialized training in neurocritical care and stroke, Transcranial Doppler, and cerebrovascular reserve at the University of California, Los Angeles. Before moving to Las Vegas, Nevada to offset the severe shortage of clinical neurologists in the community, he worked as a clinical neurologist at Neurology and Rehabilitation Medical Group in Inglewood, California, a practice affiliated with the University of California, Los Angeles that focused on neurorehabilitation for brain and spine injury patients, and at Beach Medical Associates, Inc. in Long Beach, California. During that time, he also served as the Director of Neurology at Pacific Hospital Long Beach. He is licensed to practice medicine in California and Nevada. He holds privileges at Centennial Hills Hospital and University Medical Center. He is a member of the American Academy of Neurology, the American Epilepsy Society, and the American Association of Neuroelectrodiagnostic Medicine.

20. Dr. Dipti Shah is a doctor of internal medicine, certified by the American Board of Internal Medicine, and a nephrologist. She received her medical degree from the University of Missouri – Kansas City School of Medicine. She completed her residency in internal medicine and specialty fellowship in nephrology and hypertension (focusing on diseases of the kidney and dialysis) at Rush Presbyterian St. Luke's Medical Center in Chicago, Illinois. She spent several years working as an attending physician at Rush Presbyterian St. Luke's Medical Center, including in the Emergency Room. She then practiced in a hospital-based private practice at eight different hospitals, including Providence St. John's Health Center in Santa Monica, California, and Centinela Freeman Regional Medical Center in Inglewood, California, as an internist and nephrologist before moving to Las Vegas, Nevada to work alongside her husband at Radar Medical. She is licensed to practice medicine in California and Nevada. She holds privileges at the St. Rose Dominican Hospitals (Rosa de Lima Campus, San Martin Campus, and Siena Campus) and University Medical Center. Among other associations, she is a member of the American Academy of Nephrology, the American Society of Internal Medicine, and the American College of Physicians.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

The Claims Process

21. All Nevada drivers are required to carry minimum automobile liability insurance for bodily injury to help pay for medical treatment needed by those injured in motor vehicle accidents.

22. The Allstate Companies offer automobile liability insurance coverage to Nevada drivers.

23. A person who is injured in a motor vehicle accident may assert a claim for damages against the driver involved in the accident. When that happens, the driver tenders the claim to his or her insurer (e.g., the Allstate Companies) for coverage under his or her insurance policy. An adjustor then processes the claim to determine, *inter alia*, whether the driver was all or partially responsible for the accident and, if so, whether and how much to pay in exchange for resolving the injured party's claim.

24. When investigating a claim for damages resulting from a motor vehicle accident, an insurance adjustor will determine, *inter alia*, the extent of the claimant's injuries and whether he or she needed and will continue to need medical treatment. If more medical treatment is needed, more money will have to be paid by the insurer, up to its insured's policy limits. Generally speaking, the insurer seeks to pay as little as possible to resolve the claim.

The Allstate Companies Target Doctors in Order to Increase Profitability

25. The Allstate Companies—dubbed the Worst Insurance Company in America by the American Association for Justice—are widely known for aggressively targeting doctors who treat patients injured in motor vehicle accidents on a lien basis. They do so by, among other acts, suing those doctors for alleged RICO violations. Because the Allstate Companies have virtually unlimited financial resources, they can endure prolonged, expensive litigation against doctors. The Allstate Companies know that subjecting doctors to years of litigation and the negative reputational and financial consequences resulting therefrom will eventually drive them out of business, to the benefit of the Allstate Companies. Once those doctors are out of the market, persons of limited financial means who are injured in motor vehicle accidents will have lesser access to medical treatment, meaning more profits for the Allstate Companies.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

26. The Allstate Companies implemented the above litigation tactics into their "profits over policyholders" business model in the late 1990s after overhauling their claims handling processes at the direction of McKinsey & Company ("McKinsey"), a global consulting firm. McKinsey's objective for the Allstate Companies was simple: "Improving Allstate's casualty economics will have a negative impact on some medical providers, plaintiff attorneys, and claimants . . . Allstate gains, others must lose." The Allstate Companies heeded that directive and welcomed expensive, time-consuming litigation against doctors as a means of driving them out of business.

27. The Allstate Companies prefer that persons injured in motor vehicle accidents have little to no access to medical treatment, because if they are unable to obtain medical treatment, or are otherwise unable to obtain all of the treatment needed in order to make a full recovery, the Allstate Companies will pay less to resolve their claims. The Allstate Companies know that they can increase profitability by reducing the number of available doctors in Nevada who treat persons of lesser financial means injured in motor vehicle accidents on a lien basis. Fewer doctors = less expenses = more profits for the Allstate Companies.

28. The Allstate Companies' unyielding resolve to drive doctors who treat patients on a lien basis out of business is even greater for clinical neurologists such as Dr. Russell Shah. Clinical neurologists diagnose and treat patients with traumatic brain injuries, such as concussions, contusions, and diffuse axonal injuries, as well as post-concussion syndrome caused by trauma sustained in motor vehicle accidents. Depending on the circumstances, treatment by clinical neurologists can be expensive given the testing and studies that need to be done in order to properly diagnose their patients. The Allstate Companies prefer patients to avoid receiving treatment by clinical neurologists even if those patients have positive clinical findings for traumatic brain injuries, post-concussion syndrome, or spinal nerve root problems, and therefore, the Allstate Companies specifically attack clinical neurologists who treat patients on a lien basis.

<u>The Allstate Companies Investigate the Radar Parties Prior to Filing this Lawsuit</u>

*The Damron Matter*

29. On April 17, 2013, Dustin Damron ("Mr. Damron") filed a negligence action against Roger Cross ("Mr. Cross") in the Eighth Judicial District Court, Clark County, Nevada, Case No. A-

13-680333-C, related to a motor vehicle accident that occurred on or about October 10, 2012 (the "Damron Matter").

30. The Radar Parties are informed and believe, and thereon allege, that Mr. Cross was insured at the time of the accident by one of the Allstate Companies and tendered defense of the Damron Matter to one of the Allstate Companies.

31. The Allstate Companies retained Nickolas A. Amon, Esq. ("Mr. Amon") of Gannon & Associates ("G&A Law"), a captive law firm, to represent Mr. Cross in the Damron Matter.

32. The Radar Parties are informed and believe, and thereon allege, that rather than focus their defense on the reasonableness of the medical treatment received by Mr. Damron and the resulting costs thereof, the Allstate Companies used the Damron Matter as an opportunity to obtain confidential and proprietary information concerning members of Radar Medical.

33. Shortly after Mr. Amon filed an Answer to the Complaint, Eron Z. Cannon, Esq. ("Mr. Cannon") and Jared P. Green, Esq. ("Mr. Green") of the law firm of McCormick, Barstow, Sheppard, Wayne & Carruth LLP ("McCormick Barstow")—the same counsel representing the Allstate Companies in this lawsuit who allegedly began investigating Drs. Russell and Dipti Shah in 2014—appeared in the Damron Matter to "assist" Mr. Amon in the defense of Mr. Cross. In truth and in fact, the Allstate Companies sought to have Messrs. Cannon and Green improperly utilize the discovery process in the Damron Matter in order to obtain information to use in filing this lawsuit.

34. In the Damron Matter, Mr. Cannon took the deposition of Dr. Dipti Shah. During the deposition, Mr. Cannon asked Dr. Dipti Shah about her business interests, personal assets, including real estate that she and her husband, Dr. Russell Shah, own in Nevada, and other private information—none of which was relevant to any claim or defense at issue in the Damron Matter. Mr. Cannon also improperly asked Dr. Dipti Shah about real estate owned by her brother-in-law.

35. Not intending to actually defend Mr. Cross in the Damron Matter, Messrs. Cannon and Green ceased working on the matter after Dr. Dipti Shah's deposition, as evident by the omission of their names in the signature block for Mr. Cross on the Stipulation and Order for Dismissal with Prejudice filed July 10, 2014.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

*The Castaneda Matter*

36. On August 2, 2013, Jorge Castaneda-Linares ("Mr. Castaneda-Linares"), together with Carlos Manuel Ramos ("Mr. Ramos") and Yovani Valdes ("Ms. Valdes") (collectively, the "Castaneda Plaintiffs"), filed a negligence action against Ryan Straight ("Mr. Straight") and Kainoa Waldrip ("Ms. Waldrip") (together, the "Castaneda Defendants") in the Eighth Judicial District Court, Clark County, Nevada, Case No. A-13-686392-C, related to a motor vehicle accident that occurred on or about March 16, 2012 (the "Castaneda Matter").

37. The Radar Parties are informed and believe, and thereon allege, that one or both of the Castaneda Defendants was insured at the time of the accident by one of the Allstate Companies and tendered defense of the Castaneda Matter to one of the Allstate Companies.

38. The Allstate Companies retained Mr. Amon of G&A Law to represent the Castaneda Defendants in the Castaneda Matter.

39. The Radar Parties are informed and believe, and thereon allege, that the Allstate Companies did not contest liability in the Castaneda Matter. Nevertheless, rather than focus their defense on the reasonableness of the medical treatment received by the Castaneda Plaintiffs and the resulting costs thereof, the Allstate Companies used the Castaneda Matter as an opportunity to obtain additional confidential and proprietary information concerning Radar Medical.

40. Approximately five months after Mr. Amon filed an Answer to the Complaint, Messrs. Cannon and Green of McCormick Barstow—again, the same counsel representing the Allstate Companies in this lawsuit who allegedly began investigating Drs. Russell and Dipti Shah in 2014—appeared in the Castaneda Matter to "assist" Mr. Amon in the defense of the Castaneda Defendants. In truth and in fact, the Allstate Companies sought to have Messrs. Cannon and Green improperly utilize the discovery process in the Castaneda Matter in order to obtain information to use in filing this lawsuit.

41. In the Castaneda Matter, Messrs. Cannon and Green took three depositions of Dr. Dipti Shah as well as the deposition of a former licensed nurse practitioner of Radar Medical. Present at one of Dr. Dipti Shah's depositions was John Griffith ("Mr. Griffith"), a member of the Allstate Companies' Special Investigations Unit ("SIU") who actively assisted Messrs. Cannon and

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Green in filing this lawsuit. These depositions were used – improperly – to discover, *inter alia*, Radar Medical's confidential policies and practices for treating patients injured in motor vehicle accidents on a lien basis and the relationship between Dr. Dipti Shah and other medical providers in Nevada—none of which was relevant to the claims and defenses in the Castaneda Matter. That information was then used by the Allstate Companies to prepare the Complaint filed in this lawsuit.

42. Prior to the start of her first deposition, Dr. Dipti Shah asked Mr. Cannon – in the presence of the Castaneda Plaintiffs' counsel – if she needed to retain an attorney to defend her based on the type and kind of irrelevant questions that Mr. Cannon asked her at her deposition in the Damron Matter. Despite knowing that her interests were in direct conflict with those of his clients (the Allstate Companies) given that he and Mr. Green, together with Mr. Griffith and other members of SIU, were actively investigating Drs. Russell and Dipti Shah for alleged fraud, Mr. Cannon advised Dr. Dipti Shah that it was not necessary for her to retain counsel, thereby violating the professional obligations that he owed to her as an unrepresented person under Nevada Rule of Professional Conduct 4.3. Lulled into a false sense of security, Dr. Dipti Shah agreed to proceed with the deposition without the presence of counsel. Mr. Cannon then asked Dr. Dipti Shah a series of irrelevant questions as noted above that were unrelated to the claims and defenses at issue in the Castaneda Matter—proof that she did, in fact, need counsel to defend her at the deposition.

43. The Radar Parties are informed and believe, and thereon allege, that Mr. Cannon intended to dissuade Dr. Dipti Shah from retaining counsel to defend her at her depositions in the Castaneda Matter in order to improperly seek confidential and proprietary information from her related to Radar Medical to use in preparing the Complaint filed in this lawsuit.

44. Not intending to actually defend the Castaneda Defendants in the Castaneda Matter, Messrs. Cannon and Green promptly withdrew after taking the above depositions of members of Radar Medical.

*The Cordon Matter*

45. On March 6, 2014, Nolvia Sosa Cordon ("Ms. Cordon") filed a negligence action against Gerald McCorkle ("Mr. McCorkle") in the Eighth Judicial District Court, Clark County,

Nevada, Case No. A-14-697248-C, related to a motor vehicle accident that occurred on or about December 12, 2012 (the "Cordon Matter").

46. The Radar Parties are informed and believe, and thereon allege, that Mr. McCorkle was insured at the time of the accident by one of the Allstate Companies and tendered defense of the Cordon Matter to one of the Allstate Companies.

47. The Allstate Companies retained Paul Kirst, Esq. ("Mr. Kirst") of G&A Law to represent Mr. McCorkle in the Cordon Matter.

48. In the Cordon Matter, the Allstate Companies did not contest liability. Nevertheless, rather than focus the defense on the reasonableness of the medical treatment received by Ms. Cordon and the resulting costs thereof, the Allstate Companies used the Cordon Matter as another opportunity to obtain additional confidential and proprietary information concerning Radar Medical.

49. Approximately two months after Mr. Kirst filed an Answer to the Complaint, Messrs. Cannon and Green of McCormick Barstow—again, the same counsel representing the Allstate Companies in this lawsuit who allegedly began investigating Drs. Russell and Dipti Shah in 2014—appeared in the Cordon Matter to "assist" Mr. Kirst in the defense of Mr. McCorkle. In truth and in fact, the Allstate Companies sought to have Messrs. Cannon and Green improperly utilize the discovery process in the Cordon Matter in order to obtain additional information to use in filing this lawsuit.

50. In the Cordon Matter, Mr. Cannon took the deposition of Dr. Russell Shah. His deposition was used – improperly – to discover, *inter alia*, Radar Medical's confidential policies and practices for treating patients injured in motor vehicle accidents on a lien basis and the relationship between Dr. Russell Shah and other medical providers in Nevada—none of which was relevant to the claims and defenses in the Cordon Matter. That information was then used by the Allstate Companies to prepare the Complaint filed in this lawsuit.

51. After taking Dr. Russell Shah's deposition, Messrs. Cannon and Green sought to depose the office manager and the human resources manager for Radar Medical. Radar Medical (through counsel) objected to these depositions on the grounds that the Allstate Companies sought to take them for an improper purpose. Unable to justify taking these depositions, Messrs. Cannon and

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Green instead sought to depose the N.R.C.P. 30(b)(6) designated representative of Radar Medical concerning, *inter alia*, proprietary and financial information for Radar Medical dating back to 2007 (even though Ms. Cordon was treated at Radar Medical in 2012 and 2013). Radar Medical (through counsel) sent a series of letters objecting to the subpoena. Knowing that the subpoena was grossly overbroad and solely intended to invade the confidential business and financial affairs of Radar, the Allstate Companies withdrew it and did not pursue the deposition.

52. Not intending to actually defend Mr. McCorkle in the Cordon Matter, Messrs. Cannon and Green promptly withdrew after taking Dr. Russell Shah's deposition and unsuccessfully attempting to take the deposition of the N.R.C.P. 30(b)(6) designated representative of Radar Medical.

Following the Filing of this Lawsuit, the Allstate Companies Commence a Public Smear Campaign against the Radar Parties

53. The Radar Parties are informed and believe, and thereon allege, that on or around the filing of this lawsuit, one or more of the Allstate Companies notified the media of their lawsuit against the Radar Parties for alleged RICO violations.

54. The Radar Parties are informed and believe, and thereon allege, that the Allstate Companies sought maximum public exposure of their lawsuit through use of the media in order to cause patients and referral sources to cease working with the Radar Parties.

55. On September 21, 2015—two business days after the Allstate Companies filed their Complaint for Damages against the Radar Parties—an article was published online by the Las Vegas Review-Journal entitled *Two Vegas Doctors Face Civil Racketeering Lawsuit* (the "RJ Article"). The RJ Article summarizes some of the many false and defamatory statements made by the Allstate Companies in their Complaint against the Radar Parties. It also contains the following statement by Chelci Hudson ("Ms. Hudson"), an authorized representative of the Allstate Companies: "Allstate's goal is ultimately to keep costs down for Nevada consumers and to prevent fraud." Ms. Hudson further stated that the Allstate Companies "seek more than $1.7 million in damages."

56. That same day (September 21, 2015), a camera crew for 8 News Now (KLAS-TV) made an unannounced appearance at the business address for Radar Medical, seeking comment from



BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Drs. Russell and Dipti Shah about this lawsuit. An article was then published online by 8 News Now entitled *Doctors Accused in Alleged Fraud Scheme* (the "Channel 8 News Article"), summarizing some of the many false and defamatory statements made by the Allstate Companies in their Complaint against the Radar Parties. Ms. Hudson was again referenced as saying that the Allstate Companies' fraud loss is $1.7 million.

57. On September 28, 2015, an article was published online by The Legal Examiner entitled *Nevada Doctors Accused in Fraud Scheme* (the "LE Article"). The LE Article summarizes some of the many false and defamatory statements made by the Allstate Companies in their Complaint against the Radar Parties. Once again, Ms. Hudson was referenced as saying that the Allstate Companies had suffered an estimated $1.7 million in damages and were purportedly seeking to "prevent fraud."

58. The Radar Parties are informed and believe, and thereon allege, that around the time of the filing of their Complaint, the Allstate Companies devised a scheme to continuously republish and repost online the RJ Article and the Channel 8 News Article in order to tarnish the reputations of Drs. Russell and Dipti Shah and destroy the goodwill of Radar Medical.

59. The Radar Parties are informed and believe, and thereon allege, that using search engine optimization (SEO), the process by which a person can increase the visibility of a particular website on the internet and maximize the number of visitors to that website by causing the website to appear high on the list of results returned by a search engine, the Allstate Companies intentionally manipulated search engine results through websites such as Google.com in order to cause the RJ Article and the Channel 8 News Article to be consistently ranked at or near the top of search results pages for persons searching for information about Drs. Russell and Dipti Shah.

60. By increasing the rankings and visibility of the RJ Article and the Channel 8 News Article through popular search engines, the Allstate Companies have been able to republish and repost online to potential and existing patients and referral sources (as well as the general public) the false statements of fact made about the Radar Parties in the Allstate Companies' Complaint.

61. Separate and apart from the public smear campaign, the Allstate Companies have refused to consider or process bills submitted by Radar Medical for patients who filed claims for

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

damages with the Allstate Companies, or have intentionally delayed resolving legitimate claims for patients who were treated by members of Radar Medical, as a means to cause personal injury attorneys to refrain from referring patients to Radar Medical.

62. The Allstate Companies have also unjustifiably refused to consider or process bills submitted by medical providers to whom patients were referred by members of Radar Medical.

63. Finally, the Allstate Companies have used various intimidation tactics to cause referral sources to cease recommending that patients receive treatment from members of Radar Medical.

The Allstate Companies Inflict Massive Damage on the Radar Parties

64. The Allstate Companies' objectives in filing this lawsuit were overwhelmingly accomplished; for example, and without limitation:

a. Numerous referral sources ceased sending patients to members of Radar Medical for treatment;

b. Numerous referral sources redirected existing patients to other providers for ongoing treatment;

c. Radar Medical had to lay off numerous employees and lost other employees;

d. A local bank froze a line of credit held by Drs. Russell and Dipti Shah;

e. A national bank with whom Drs. Russell and Dipti Shah had done business for years ceased doing business with them;

f. A health insurer terminated its contract with Dr. Russell Shah;

g. A health insurer refused to consider adding Radar Medical providers to its panel;

h. Drs. Russell and Dipti Shah experienced substantial reductions in the number of patients that they treat;

i. Plans to expand Dr. Russell Shah's neurology practice had to be scrapped;

j. Medical providers refused to do business with Drs. Russell and Dipti Shah;

k. Numerous investment opportunities were lost; and

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

l. Long-standing relationships within the Indian community were irreparably tarnished due to the stigma associated with being accused of criminal acts of racketeering.

The Allstate Companies Knowingly Filed this Lawsuit for an Improper Purpose

65. The pretext underlying the Allstate Companies' lawsuit against the Radar Parties (i.e., driving Drs. Russell and Dipti Shah out of business) is proven by the fact that the Allstate Companies' allegations are unsupported by their own claim files. For example, and without limitation, the Allstate Companies' claim files prove the following:

a. When processing the claims of the patients purportedly at issue in this matter, the Allstate Companies "allowed" amounts significantly less than the amounts actually billed by Radar Medical, regularly discounting its bills by approximately 50% and at times discounting its bills by as much as 88%;

b. Unlike lesser discounts made, if any, to the bills submitted by other medical providers for the patients purportedly at issue in this matter, the Allstate Companies discounted Radar Medical's bills the most (or second most) for over 87% of the claims, thereby proving that the Allstate Companies have been aggressively targeting Drs. Russell and Dipti Shah—without justification or excuse—since 2008;

c. Setting aside the Allstate Companies' improper attempt to utilize the benefit of 20/20 hindsight to second guess well-reasoned medical decisions made by members of Radar Medical in treating the patients purportedly at issue in this matter, the type and kind of treatment rendered varies on a patient-by-patient basis, with each receiving individualized care. For example, and without limitation:

i. Less than 25% of the patients purportedly at issue in this matter were seen by both Dr. Russell Shah and Dr. Dipti Shah;

ii. Less than 40% of the patients purportedly at issue in this matter were referred by members of Radar Medical for X-rays;

iii. Less than 60% of the patients purportedly at issue in this matter were referred by members of Radar Medical for magnetic resonance imaging (MRIs) at no less than 9 different outside diagnostic/imaging facilities. Of the scans requested,

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

approximately 25% were ordered within the first four weeks of the date of loss, approximately 39% were ordered between four and eight weeks after the date of loss, and approximately 36% were ordered eight weeks or more after the date of loss. The scans were of various body parts, and positive findings were indicated on approximately 84% of the scans;

iv. Of the patients purportedly at issue in this matter who were prescribed medication by a member of Radar Medical, approximately 57% of them filled some or all of their prescriptions at outside pharmacies, not at Radar Medical;

v. Dr. Russell Shah performed a Transcranial Doppler (TCD) exam on less than 4% of the patients purportedly at issue in this matter (and as to those patients who had a TCD exam, 75% had initially been referred to Dr. Russell Shah for treatment by an outside medical provider, not by a member of Radar Medical);

vi. Dr. Russell Shah performed a Somatosensory Evoked Potential (SSEP) test on less than 6% of the patients purportedly at issue in this matter (and as to those patients who had an SSEP test, approximately 33% had initially been referred to Dr. Russell Shah for treatment by an outside medical provider, not by a member of Radar Medical);

vii. Dr. Russell Shah performed an electroencephalogram (EEC) test on less than 11% of the of the patients purportedly at issue in this matter (and as to those patients who had an EEG, approximately 70% had initially been referred to Dr. Russell Shah for treatment by an outside medical provider, not by a member of Radar Medical);

viii. Dr. Russell Shah performed an electromyography (EMG) procedure on less than 55% of the patients purportedly at issue in this matter (and as to those patients who had an EMG, nearly 70% had initially been referred to Dr. Russell Shah for treatment by an outside medical provider, not by a member of Radar Medical);

d. For the patients purportedly at issue in this matter, members of Radar Medical referred to and/or received referrals from more than 60 different outside medical providers,

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

with members of Radar Medical referring to one of approximately 28 different outside medical providers and receiving referrals (whether for treatment by Dr. Russell Shah or by Dr. Dipti Shah) from one of approximately 45 different outside medical providers; and

e. Patients purportedly at issue in this matter were represented by more than 60 different law firms.

66. The Radar Parties are informed and believe, and thereon allege, that the Allstate Companies improperly utilized flawed medical bill review software known as DecisionPoint® Medical Expert™ ("DecisionPoint"), which is owned and licensed by Mitchell Auto Casualty Solutions ("Mitchell"), together with an injury evaluation software program known as "Colossus," which is owned and licensed by Computer Sciences Corporation ("CSC"), in order to evaluate the efficacy of medical treatment received by the patients purportedly at issue in this matter by members of Radar Medical and the resulting costs thereof. Mitchell is not a health care provider and does not, directly or indirectly, practice medicine or offer medical services in Nevada or elsewhere.

67. The Radar Parties are informed and believe, and thereon allege, that the Allstate Companies intentionally manipulated and misinterpreted data, including diagnosis and CPT codes, contained in CMS1500 Health Insurance Claim Forms submitted by Radar Medical for the patients purportedly at issue in this matter when entering information about Radar Medical's bills into DecisionPoint. The Allstate Companies did so in order to cause DecisionPoint to generate false and misleading "Expert Reports" purporting to indicate that members of Radar Medical over treated (and, thus, overbilled) the patients purportedly at issue in this matter.

68. The Radar Parties are informed and believe, and thereon allege, that the deceptive "Expert Reports" generated by DecisionPoint were used by the Allstate Companies within Colossus in order to arbitrarily lower the overall settlement value of the claims of the patients purportedly at issue in this matter, resulting in substantial savings for the Allstate Companies.

69. The Radar Parties are informed and believe, and thereon allege, that when processing some, if not all, of the bills submitted by Radar Medical, the Allstate Companies relied on a flawed and inaccurate claims database known as Ingenix to understate usual, customary, and reasonable

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

charges for the medical services performed by members of Radar Medical, and in so doing, further undervalued the claims of the patients purportedly at issue in this matter.

FIRST CAUSE OF ACTION

**(Abuse of Process – the Radar Parties Against the Allstate Companies)**

70. The Radar Parties reallege and incorporate by reference the allegations contained in the above Paragraphs 1-69, inclusive, as though fully set forth herein.

71. The Allstate Companies had an ulterior purpose for defending the Damron Matter other than resolving a legal dispute with Mr. Damron concerning the extent of his injuries; to wit, causing their current counsel representing them in this lawsuit (Messrs. Cannon and Green) to wrongfully pry into the personal and financial affairs of Drs. Russell and Dipti Shah.

72. In the Damron Matter, the Allstate Companies committed one or more willful acts not proper in the regular course of the proceeding; to wit, abusing the Court's subpoena power and the discovery process to take an unnecessary deposition of Dr. Dipti Shah in order to obtain private information about her, her husband, and her family members (not simply discover facts concerning the extent of medical treatment provided to Mr. Damron and the resulting costs thereof)—information that was then improperly used by the Allstate Companies in preparing and filing this lawsuit against the Radar Parties.

73. The Allstate Companies had an ulterior purpose for defending the Castaneda Matter other than resolving a legal dispute with the Castaneda Plaintiffs concerning the extent of their injuries; to wit, causing their current counsel representing them in this lawsuit (Messrs. Cannon and Green) to wrongfully pry into the confidential business and financial affairs of Radar Medical.

74. In the Castaneda Matter, the Allstate Companies committed one or more willful acts not proper in the regular course of the proceeding; to wit, abusing the Court's subpoena power and the discovery process to take unnecessary depositions of members of Radar Medical, including Dr. Dipti Shah, in order to obtain confidential information about Radar Medical (not simply discover facts concerning the extent of medical treatment provided to the Castaneda Plaintiffs and the resulting costs thereof)—information that was then improperly used by the Allstate Companies in preparing and filing this lawsuit against the Radar Parties. The Allstate Companies went so far as to

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

have their attorney knowingly compromise his professional obligations owed to unrepresented parties in the Castaneda Matter in furtherance of their ulterior purpose.

75. The Allstate Companies had an ulterior purpose for defending the Cordon Matter other than resolving a legal dispute with Ms. Cordon concerning the extent of her injuries; to wit, causing their current counsel representing them in this lawsuit (Messrs. Cannon and Green) to wrongfully pry into the confidential business and financial affairs of Radar Medical.

76. In the Cordon Matter, the Allstate Companies committed one or more willful acts not proper in the regular course of the proceeding; to wit, abusing the Court's subpoena power and the discovery process to take the deposition of Dr. Russell Shah and to attempt to take the deposition of Radar Medical employees and the N.R.C.P. 30(b)(6) designated representative of Radar Medical concerning information dating back to 2007 in order to obtain confidential information about Radar Medical (not simply discover facts concerning the extent of medical treatment provided to Ms. Cordon and the resulting costs thereof)—information that was then improperly used by the Allstate Companies in preparing and filing this lawsuit against the Radar Parties.

77. The Allstate Companies had an ulterior purpose for filing this lawsuit against the Radar Parties other than resolving a legal dispute with them over the propriety and costs of medical treatment provided by members of Radar Medical to their patients; to wit, driving Drs. Russell and Dipti Shah out of business (Dr. Russell Shah in particular) in order to reduce the number of available doctors in Nevada who are willing to treat persons injured in motor vehicle accidents on a lien basis.

78. Following the filing of this lawsuit, the Allstate Companies committed one or more willful acts not proper in the regular course of the proceeding; to wit, the Allstate Companies are believed to have (i) notified the media, including the Las Vegas Review-Journal and 8 News Now, of this lawsuit in order to commence a public smear campaign (and in so doing, knowingly made false statements of fact concerning fraud allegedly committed by the Radar Parties and purported damages suffered by the Allstate Companies as a result), and (ii) caused to be republished and reposted online the RJ Article and the Channel 8 News Article using SEO in order to mass publish false statements of fact about the Radar Parties to potential and existing patients of Drs. Russell and Dipti Shah, referral sources, and the general public.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

79. As a direct and proximate result of these wrongful acts, the Radar Parties have suffered, and will continue to suffer, damages in an amount in excess of $75,000, according to proof.

80. The Allstate Companies' acts were characterized by fraud, oppression or malice, express or implied, which justifies an award of punitive damages in order to deter the Allstate Companies and others similarly situated from engaging in like conduct in the future.

81. The Radar Parties were forced to retain the services of legal counsel to prosecute this counter-claim, and therefore, they are entitled to their reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**

**(Defamation *Per Se* – Drs. Russell and Dipti Shah Against the Allstate Companies)**

82. The Radar Parties reallege and incorporate by reference the allegations contained in the above Paragraphs 1-81, inclusive, as though fully set forth herein.

83. Ms. Hudson, on behalf of the Allstate Companies, made false statements of fact to the media, including to one or more members of the Las Vegas Review-Journal, concerning Drs. Russell and Dipti Shah, including that the Allstate Companies suffered more than $1.7 million in damages at the hands of Drs. Russell and Dipti Shah and that the Allstate Companies' goal in filing this lawsuit is to "prevent fraud"— without privilege to do so.

84. The above statements by Ms. Hudson are defamatory because they harm the reputations of Drs. Russell and Dipti Shah, lower their status in the community, and deter third persons (e.g., their patients and referral sources) from associating or dealing with them.

85. The above statements by Ms. Hudson impugn Dr. Russell Shah's and Dr. Dipti Shah's fitness for the practice of medicine, because they (falsely) accuse them of fraud causing damages in excess of $1.7 million.

86. The Radar Parties are informed and believe, and thereon allege, that persons who learned of the above statements made by Ms. Hudson to the media reasonably understood them to mean that Drs. Russell and Dipti Shah had engaged in fraud and wrongfully obtained money belonging to the Allstate Companies.

87. The RJ Article and the Channel 8 News Article contain false statements of fact concerning Drs. Russell and Dipti Shah. For example, and without limitation:

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

a. The Channel 8 News Article falsely states that Drs. Russell and Dipti Shah "took part in a fraudulent scheme involving the treatment of more than 200 patients injured in car accidents";

b. The Channel 8 News Article falsely states that Drs. Russell and Dipti Shah ordered "unnecessary medical procedures" for their patients;

c. The RJ Article falsely states that Drs. Russell and Dipti Shah treat their patients "based upon a standardized practice . . . with the express purpose of creating inflated medical bills that would be used to leverage artificially enhanced settlement values . . . rather than providing patient-centered treatment with the goal of actually healing injuries";

d. The RJ Article falsely states that Drs. Russell and Dipti Shah did not treat their patients based on "actual physical condition," but rather, "based upon a recipe that was inconsistent with the patient's probable clinical needs";

e. The RJ Article falsely states that Drs. Russell and Dipti Shah provided "grossly exaggerated diagnoses of [their] patients" and caused their patients to be subjected to unnecessary medical tests and procedures; and

f. The RJ Article and the Channel 8 News Article falsely state that Drs. Russell and Dipti Shah caused the Allstate Companies to suffer a $1.7 million loss.

88. The above statements in the RJ Article and the Channel 8 News Article are defamatory because they harm the reputations of Drs. Russell and Dipti Shah, lower their status in the community, and deter third persons (e.g., their patients and referral sources) from associating or dealing with them.

89. The above statements in the RJ Article and the Channel 8 News Article impugn Dr. Russell Shah's and Dr. Dipti Shah's fitness for the practice of medicine, because they accuse them of dishonesty and mistreating patients.

90. The Radar Parties are informed and believe, and thereon allege, that readers of the RJ Article and the Channel 8 News Article reasonably understood the above statements to mean that Drs. Russell and Dipti Shah had engaged in fraud and acts of racketeering.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

91. The Radar Parties are informed and believe, and thereon allege, that the Allstate Companies caused to be republished and reposted online the RJ Article and the Channel 8 News Article to third persons, including potential and existing patients of Drs. Russell and Dipti Shah, referral sources, and the general public—without privilege to do so.

92. The Allstate Companies intentionally, recklessly, and/or negligently sought to injure Drs. Russell and Dipti Shah in their profession or business by contacting the media, including the Las Vegas Review-Journal and 8 News Now, about this lawsuit.

93. The Allstate Companies intentionally, recklessly, and/or negligently sought to injure Drs. Russell and Dipti Shah in their profession or business by having Ms. Hudson make false statements of fact about Drs. Russell and Dipti Shah to the media intending to have those statements republished to the general public.

94. The Allstate Companies intentionally, recklessly, and/or negligently sought to injure Drs. Russell and Dipti Shah in their profession or business through repeatedly republishing and causing to be reposted online the RJ Article and the Channel 8 News Article.

95. As a direct and proximate result of these wrongful acts, Drs. Russell and Dipti Shah have suffered, and will continue to suffer, presumed damages in an amount in excess of $75,000.

96. The Allstate Companies' acts were characterized by fraud, oppression or malice, express or implied, which justifies an award of punitive damages in order to deter the Allstate Companies and others similarly situated from engaging in like conduct in the future.

97. Drs. Russell and Dipti Shah were forced to retain the services of legal counsel to prosecute this counter-claim, and therefore, they are entitled to their reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**

**(Business Disparagement – Radar Medical Against the Allstate Companies)**

98. The Radar Parties reallege and incorporate by reference the allegations contained in the above Paragraphs 1-97, inclusive, as though fully set forth herein.

99. Ms. Hudson, on behalf of the Allstate Companies, made false statements of fact to the media, including to one or more members of the Las Vegas Review-Journal, concerning Radar



BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Medical, including that the Allstate Companies have suffered more than $1.7 million in damages due to wrongdoing by Radar Medical and that the Allstate Companies' goal in filing this lawsuit against Radar Medical is to "prevent fraud"—without privilege to do so.

100. The above statements by Ms. Hudson were intended to disparage the services provided by members of Radar Medical and interfere with the ongoing business of Radar Medical.

101. The Radar Parties are informed and believe, and thereon allege, that persons who learned of the above statements made by Ms. Hudson to the media reasonably understood them to mean that Radar Medical provides fraudulent medical services to the community.

102. The RJ Article contains false statements of fact about Radar Medical. For example, and without limitation:

a. The RJ Article falsely states that between 2007 and 2014, Radar Medical prepared or presented "plaintiffs medical reports and billing records that falsely reported symptoms, complaints and injuries for each of the 215 claimants identified in the case"; and

b. The RJ Article falsely states that the alleged pattern of standardized treatment by members of Radar Medical "is found throughout the records of the various claimants."

103. The above statements in the RJ Article were intended to disparage the services provided by members of Radar Medical and interfere with the ongoing business of Radar Medical.

104. The Radar Parties are informed and believe, and thereon allege, that readers of the RJ Article reacted to the above statements by refusing to do business with Radar Medical.

105. The Radar Parties are informed and believe, and thereon allege, that the Allstate Companies caused to be republished and reposted online the RJ Article to third persons, including potential and existing patients of Drs. Russell and Dipti Shah, referral sources, and the general public—without privilege to do so.

106. The Allstate Companies acted with actual malice in seeking to disparage Radar Medical as set forth above.

107. As a direct and proximate result of these wrongful acts, Radar Medical has suffered, and will continue to suffer, special damages, including loss of patients and referral sources, in an amount in excess of $75,000, according to proof.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

108. The Allstate Companies' acts were characterized by fraud, oppression or malice, express or implied, which justifies an award of punitive damages in order to deter the Allstate Companies and others similarly situated from engaging in like conduct in the future.

109. Radar Medical was forced to retain the services of legal counsel to prosecute this counter-claim, and therefore, it is entitled to its reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Intentional Interference with Existing Contractual Relations – Radar Medical Against the Allstate Companies)**

110. The Radar Parties reallege and incorporate by reference the allegations contained in the above Paragraphs 1-109, inclusive, as though fully set forth herein.

111. At the time of the filing of this lawsuit, members of Radar Medical were actively treating patients injured in motor vehicle accidents.

112. Patients of Radar Medical had written agreements with Radar Medical assigning to it portions of future settlements or judgments obtained on account of claims for damages filed against insureds of the Allstate Companies (and other insurers).

113. The Allstate Companies had knowledge of the ongoing treatment being provided on a lien basis by members of Radar Medical to patients injured in motor vehicle accidents who had filed claims for damages against insureds of the Allstate Companies (and other insurers).

114. The Allstate Companies engaged in one or more intentional acts, including a public smear campaign and steadfast refusal to consider or timely pay out on legitimate claims (whether by rejecting bills from Radar Medical or rejecting bills from other providers to whom referrals were made by members of Radar Medical), intended or designed to disrupt the existing contractual relations between Radar Medical and its patients.

115. Actual disruption of the existing contractual relations occurred as a result of the above wrongful acts committed by the Allstate Companies (e.g., patients refused to continue treating with members of Radar Medical and personal injury attorneys were denied payment for bills submitted by Radar Medical or for bills from providers to whom referrals were made by members of Radar Medical).

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

116. As a direct and proximate result of these wrongful acts, Radar Medical has suffered, and will continue to suffer, damages in an amount in excess of $75,000, according to proof.

117. The Allstate Companies' acts were characterized by fraud, oppression or malice, express or implied, which justifies an award of punitive damages in order to deter the Allstate Companies and others similarly situated from engaging in like conduct in the future.

118. Radar Medical was forced to retain the services of legal counsel to prosecute this counter-claim, and therefore, it is entitled to their reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Intentional Interference with Prospective Economic Advantage – Radar Medical Against the Allstate Companies)**

119. The Radar Parties reallege and incorporate by reference the allegations contained in the above Paragraphs 1-118, inclusive, as though fully set forth herein.

120. At the time of the filing of this lawsuit, Radar Medical had prospective contractual relationships with patients who had been injured in motor vehicle accidents.

121. The Allstate Companies had knowledge of the fact that Radar Medical regularly received referrals for and treated patients injured in motor vehicle accidents on a lien basis.

122. The Allstate Companies intended to harm Radar Medical by engaging in one or more wrongful acts, including a public smear campaign and steadfast refusal to consider or timely pay out on legitimate claims (whether by rejecting bills from Radar Medical or rejecting bills from other providers to whom referrals were made by members of Radar Medical), designed to prevent patients from seeking treatment from members of Radar Medical.

123. The Allstate Companies acted without privilege or justification in causing patients to avoid receiving treatment from members of Radar Medical.

124. As a direct and proximate result of these wrongful acts, Radar Medical has suffered, and will continue to suffer, damages in an amount in excess of $75,000, according to proof.

125. The Allstate Companies' acts were characterized by fraud, oppression or malice, express or implied, which justifies an award of punitive damages in order to deter the Allstate Companies and others similarly situated from engaging in like conduct in the future.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

126. Radar Medical was forced to retain the services of legal counsel to prosecute this counter-claim, and therefore, it is entitled to their reasonable attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**

**(Deceptive Trade Practices – the Radar Parties against the Allstate Companies)**

127. The Radar Parties reallege and incorporate by reference the allegations contained in the above Paragraphs 1-126, inclusive, as though fully set forth herein.

128. Through Ms. Hudson, the Allstate Companies engaged in a deceptive trade practice in the course of their business in violation of NRS 598.0915(5) by knowingly making false representations to the media, including to one or more members of the Las Vegas Review-Journal, as to the characteristics of the services provided by Radar Medical.

129. The Allstate Companies engaged in a deceptive trade practice in the course of their business in violation of NRS 598.0915(8) through disparaging the medical treatment provided by Drs. Russell and Dipti Shah and the type and kind of services provided by Radar Medical by having Ms. Hudson make false or misleading representations of fact to the media, including to one or more members of the Las Vegas Review-Journal.

130. The Allstate Companies engaged in a deceptive trade practice in the course of their business in violation of NRS 598.0915(8) through disparaging the medical treatment provided by Drs. Russell and Dipti Shah and the type and kind of services provided by Radar Medical by making false representations of fact through repeated republication and reposting online of the RJ Article and the Channel 8 News Article to third persons.

131. The Allstate Companies engaged in a deceptive trade practice in the course of their business in violation of NRS 598.092(8) by knowingly misrepresenting the legal rights of Radar Medical in transactions between Radar Medical and its patients (to wit, the right to receive payment for reasonable and necessary medical treatment provided to patients injured in motor vehicle accidents).

132. The Allstate Companies owed a statutory duty to the Radar Parties to refrain from committing deceptive trade practices in the course of their business.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

133. The Allstate Companies are part of The Allstate Corporation, which is the largest publicly held personal lines property and casualty insurer in the United States, and therefore, their commission of the above deceptive trade practices poses a serious threat to the general public, including persons injured in motor vehicle accidents who bring claims for damages against insureds of the Allstate Companies and doctors who treat such patients on a lien basis.

134. Pursuant to NRS 41.600(1), the Radar Parties are entitled to pursue this claim for relief against the Allstate Parties as victims of "consumer fraud," which, under NRS 41.600(2)(e), includes "[a] deceptive trade practice as defined in NRS 598.0915 to NRS 598.0925, inclusive."

135. As a direct and proximate result of the above deceptive trade practices committed by the Allstate Companies, the Radar Parties have suffered, and will continue to suffer, damages in an amount in excess of $75,000, according to proof.

136. Pursuant to NRS 598.0999(3), the Radar Parties are entitled to recover all profits derived by the Allstate Companies from their knowing and willful engagement in the above deceptive trade practices as well as treble the amount of all damages suffered by reason of the above deceptive trade practices.

137. The Allstate Companies' acts were characterized by fraud, oppression or malice, express or implied, which justifies an award of punitive damages in order to deter the Allstate Companies and others similarly situated from engaging in like conduct in the future.

138. The Radar Parties were forced to retain the services of legal counsel to prosecute this counter-claim, and therefore, they are entitled to their reasonable attorneys' fees and costs pursuant to NRS 41.600(3)(c).

WHEREFORE, the Radar Parties pray for relief as follows:

1. Judgment in their favor against the Allstate Companies – jointly and severally – on each and every cause of action set forth above for an amount in excess of $75,000, according to proof;

2. For an award of special, exemplary, and punitive damages against the Allstate Companies – jointly and severally – as permitted by law in an amount to be proven at trial;

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

3. For an order compelling the Allstate Companies to disgorge all profits derived from their knowing and willful engagement in deceptive trade practices and awarding treble damages against the Allstate Companies – jointly and severally – on all damages suffered by the Radar Parties by reason of the Allstate Companies' commission of deceptive trade practices;

4. For an award of pre- and post-judgment interest at the highest rate allowed by law;

5. For an award of reasonable attorneys' fees and costs as may be permitted by law, including NRS 41.600(3)(c); and

6. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Counterclaimants demand a trial by jury of all triable issues in the above-captioned action.

DATED this 22nd day of July, 2016.

BAILEY❖KENNEDY

By: */s/ Joshua P. Gilmore*
DENNIS L. KENNEDY
JOSEPH A. LIEBMAN
JOSHUA P. GILMORE

*Attorneys for Defendants & Counterclaimants*
RUSSELL J. SHAH, M.D.; DIPTI R. SHAH, M.D.; RUSSELL J. SHAH, MD, LTD.; DIPTI R. SHAH, MD, LTD.; and RADAR MEDICAL GROUP, LLP dba UNIVERSITY URGENT CARE

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**CERTIFICATE OF SERVICE**

I certify that I am an employee of BAILEY❖KENNEDY and that on the 22nd day of July, 2016, service of the foregoing **ANSWER; COUNTERCLAIMS; AND DEMAND FOR JURY TRIAL** was made by mandatory electronic service through the United States District Court's electronic filing system and/or by depositing a true and correct copy in the U.S. Mail, first class postage prepaid, and addressed to the following at their last known address:

| | |
|---|---|
| JARED P. GREEN, ESQ.<br>**MCCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP**<br>8337 West Sunset Road, Suite 350<br>Las Vegas, NV 89113 | Email:<br>jared.green@mccormickbarstow.com<br><br>*Attorneys for Plaintiffs* |
| ERON Z. CANNON, ESQ.<br>**FAIN ANDERSON VANDERHOEF ROSENDAHL O'HALLORAN SPILLANE PLLC**<br>701 Fifth Avenue, Ste. 4750<br>Seattle, WA 98104 | Email:<br>Eron@fvros.com<br><br>*Attorneys for Plaintiffs* |

*<u>/s/ Susan Russo</u>*
Employee of BAILEY❖KENNEDY

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820