DENNIS L. KENNEDY
Nevada Bar No. 1462
JOSEPH A. LIEBMAN
Nevada Bar No. 10125
JOSHUA P. GILMORE
Nevada Bar No. 11576
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: 702.562.8820
Facsimile: 702.562.8821
DKennedy@BaileyKennedy.com
JLiebman@BaileyKennedy.com
JGilmore@BaileyKennedy.com

*Attorneys for Defendants & Counterclaimants*
RUSSELL J. SHAH, M.D.; DIPTI R. SHAH,
M.D.; RUSSELL J. SHAH, MD, LTD.; DIPTI
R. SHAH, MD, LTD.;  and RADAR
MEDICAL GROUP, LLP dba UNIVERSITY
URGENT CARE

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> vs. <br><br> RUSSELL J. SHAH, M.D.; DIPTI R. SHAH, M.D.; RUSSELL J. SHAH, MD, LTD.; DIPTI R. SHAH, MD, LTD.;  and RADAR MEDICAL GROUP, LLP dba UNIVERSITY URGENT CARE, Does 1-100, and ROES 101-200, <br><br> Defendants. <br><br> AND RELATED CLAIMS. | Case No.  2:15-cv-01786-APG-CWH <br><br> **DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFFS (FED. R. CIV. P. 11 AND THE COURT'S INHERENT POWER)** |

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

## TABLE OF CONTENTS

**DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFFS**
**(FED. R. CIV. P. 11 AND THE COURT'S INHERENT POWER)**........................................1

**MEMORANDUM OF POINTS AND AUTHORITIES**........................................3

**I.**   **INTRODUCTION**........................................................................3

**II.**   **STATEMENT OF PERTINENT FACTS**.....................................6

    **A.**   The Insurance Companies Cannot Identify A Single
One of the Radar Parties' Alleged Co-Conspirators........................6

    **B.**   The Insurance Companies Cannot Describe How Each
of the Radar Parties Improperly Treated Each of the
Patients At Issue in this Matter ........................................8

    **C.**   The Insurance Companies Cannot Identify Any Alleged
Illegal Self-Referrals Between or Among Radar Medical
Group, Russell PC, and/or Dipti PC ........................................11

    **D.**   The Insurance Companies Abandoned their Allegations
that the Radar Parties Overcharged when Treating their Patients ...............13

    **E.**   The Insurance Companies Cannot Identify the Bills and
the Medical  Records Which They Relied upon When Settling
the Claims at Issue in this Matter........................................15

    **F.**   The Insurance Companies Cannot Identify How Settlement
Would Have Been Different for Each of the Claims at Issue
in this Matter ........................................19

    **G.**   The Insurance Companies Did Not Conduct an Adequate
Pre-Suit Investigation ........................................21

    **H.**   The Insurance Companies Knowingly Submitted False
Interrogatory Answers ........................................24

**III.**   **ARGUMENT**........................................................................26

    **A.**   Standard of Decision ........................................26

    **B.**   The Court Should Sanction The Insurance Companies ........................27

        1.   The Insurance Companies Filed the Complaint and the
Amended Complaint in Violation of Rule 11.........................27

        2.   The Insurance Companies Sued the Radar Parties in Bad
Faith or Recklessly with the Intent to Drive Them Out of Business. ........30

**IV.**   **CONCLUSION** ........................................................................32

**CERTIFICATE OF SERVICE** ........................................................34

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

i

# TABLE OF AUTHORITIES

## CASES

*A.G. v. Paradise Valley Unified School Dist. No. 69,*
   815 F.3d 1195 (9th Cir. 2016) .......................................................................................28

*Allstate Ins. Co. v. Dodson,*
   376 S.W.3d 414 (Ark. 2011)...........................................................................................31

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.,*
   289 F.3d 589 (9th Cir.2002) ...........................................................................................27

*Cambridge Electronics Corp. v. MGA Electronics, Inc.,*
   227 F.R.D. 313 (C.D. Cal. 2004).....................................................................................30

*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991).....................................................................................................26, 27

*Cooter & Gell v. Hartmarx Corp.,*
   496 U.S. 384 (1990).........................................................................................................26

*Fink v. Gomez,*
   239 F.3d 989 (9th Cir. 2001) ...........................................................................................26

*Holgate v. Baldwin,*
   425 F.3d 671 (9th Cir. 2005) ...........................................................................................26

*In re Keegan Mgmt. Co. Sec. Litig.,*
   78 F.3d 431 (9th Cir. 1996) .............................................................................................27

*MFC Twin Builders, LLC v. Fajardo,*
   No. 1:12-CV-00219-AWI-SK, 2012 WL 3862399
   (E.D. Cal. Sept. 5, 2012), *report and recommendation adopted,*
   No. 1:12-CV-00219-AWI, 2012 WL 4468751 (E.D. Cal. Sept. 27, 2012) ......................26

*Mark Ind., Ltd. v. Sea Captain's Choice, Inc.,*
   50 F.3d 730 (9th Cir. 1995) .............................................................................................26

*Phillips v. C.R. Bard, Inc.,*
   290 F.R.D. 615, (D. Nev. 2013)........................................................................................30

*Rahemtulla v. Hassam,*
   Civil Action No. 3:05-0198, 2008 WL 2247195
   (M.D. Pa. May 30, 2008) .................................................................................................28

*Ringgold-Lockhart v. Cty. of Los Angeles,*
   761 F.3d 1057 (9th Cir. 2014) .........................................................................................26

*Seare v. St. Rose Dominican Health Foundation,*
   No. 2:10-cv-02190-KJD-GWF, 2011 WL 5101972
   (D. Nev. Oct. 25, 2011)....................................................................................................27

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

ii

1

### STATUTES AND RULES

Fed. R. Civ. P. 11 ......................................................................................... *passim*

Fed. R. Civ. P. 33 ..........................................................................................28, 29

Fed. R. Civ. P. 34 ...............................................................................................29

42 USC § 1395 ....................................................................................................11

NRS 439B.425 ...................................................................................4, 11, 12, 28

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820

DENNIS L. KENNEDY
Nevada Bar No. 1462
JOSEPH A. LIEBMAN
Nevada Bar No. 10125
JOSHUA P. GILMORE
Nevada Bar No. 11576
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: 702.562.8820
Facsimile: 702.562.8821
DKennedy@BaileyKennedy.com
JLiebman@BaileyKennedy.com
JGilmore@BaileyKennedy.com

*Attorneys for Defendants & Counterclaimants*
RUSSELL J. SHAH, M.D.; DIPTI R. SHAH,
M.D.; RUSSELL J. SHAH, MD, LTD.; DIPTI
R. SHAH, MD, LTD.;  and RADAR
MEDICAL GROUP, LLP dba UNIVERSITY
URGENT CARE

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,<br><br>　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>RUSSELL J. SHAH, M.D.; DIPTI R. SHAH, M.D.; RUSSELL J. SHAH, MD, LTD.; DIPTI R. SHAH, MD, LTD.;  and RADAR MEDICAL GROUP, LLP dba UNIVERSITY URGENT CARE, Does 1-100, and ROES 101-200,<br><br>　　　　　　　　Defendants.<br><br>─────────────────────<br>AND RELATED CLAIMS. | Case No.  2:15-cv-01786-APG-CWH<br><br>**DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFFS (FED. R. CIV. P. 11 AND THE COURT'S INHERENT POWER)** |

Page **1** of **34**

Pursuant to Fed. R. Civ. P. 11 and the inherent authority of the Court, Defendants Russell J. Shah, M.D. ("Russell"), Dipti R. Shah, M.D. ("Dipti"), Radar Medical Group, LLP ("Radar Medical Group"), Russell J. Shah, MD, Ltd. ("Russell PC"), and Dipti R. Shah, MD, Ltd. ("Dipti PC") (collectively, the "Radar Parties") move for sanctions against Plaintiffs Allstate Insurance Company ("Allstate Ins. Co."), Allstate Property & Casualty Insurance Company ("Allstate Prop. & Cas. Ins. Co."), Allstate Indemnity Company ("Allstate Indem. Co."), and Allstate Fire & Casualty Insurance Company ("Allstate Fire & Cas. Ins. Co.") (collectively, the "Insurance Companies").  As set forth below, discovery in this matter has revealed that the Insurance Companies lacked *any* evidentiary support for their claims against the Radar Parties at the time of filing the Complaint and did not make a *reasonable* inquiry into their allegations prior to filing the Complaint (or the Amended Complaint).  Instead, they sued the Radar Parties in order to drive them out of business.  Sanctions are warranted – in fact, mandated – in the form of dismissal of the Insurance Companies' claims with prejudice, imposition of a $100,000 penalty to be paid by the Insurance Companies into Court,[1] and an award of attorneys' fees and costs in favor of the Radar Parties and against the Insurance Companies arising from all work performed by the Radar Parties in defending against the Insurance Companies' frivolous claims.[2]

This Motion is made and based on the papers and pleadings on file, the following Memorandum of Points and Authorities and exhibits attached thereto, and any oral argument as may be heard by the Court.

DATED this 6th day of January, 2017.

BAILEY❖KENNEDY

By: */s/ Dennis L. Kennedy*
DENNIS L. KENNEDY
JOSEPH A. LIEBMAN
JOSHUA P. GILMORE

*Attorneys for Defendants & Counterclaimants*

---

[1]     For reference sake, The Allstate Corporation presently has a market cap of approximately $27.38 billion.

[2]     Such relief would not impact the pending counterclaims filed by Radar Medical Group, Russell, and Dipti against the Insurance Companies.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

A plaintiff who files a complaint against a defendant must have evidentiary support for its claims *at the time of filing* (or specifically say that discovery is likely to reveal such evidentiary support).  A plaintiff cannot accuse a defendant of wrongdoing based solely on supposition and conjecture with the hope that it will secure evidence in discovery supporting its supposition and conjecture.  Such abusive litigation practices undermine the essential purpose of the judicial system, especially when – as here – the plaintiff accuses the defendant of fraud and acts of racketeering.

In September 2015, the Insurance Companies sued the Radar Parties for fraud and numerous acts of racketeering involving medical treatment rendered to over two hundred different patients during a seven-year time period.  The Insurance Companies included a wide array of disturbing (and troubling) allegations in their Complaint, including: (i) that Russell and Dipti had conspired with "various physicians, attorneys, and entities in Las Vegas and Henderson . . . to defraud" the Insurance Companies;[3] (ii) that Russell and Dipti had treated each of their patients "based upon a standardized pattern . . . with the express purpose of creating inflated medical bills";[4] and (iii) that Russell and Dipti had made numerous illegal self-referrals to each another in violation of state and federal law.[5]  Suffice it to say that these allegations (and others), which were widely publicized by the local media, destroyed Russell and Dipti's long-standing reputation and credibility in the community and caused substantial damage to their medical practice.

When filing the Complaint (and the Amended Complaint), the Insurance Companies (through their counsel) represented to the Court that they had evidentiary support for their claims against the Radar Parties. Fed. R. Civ. P. 11(b)(3).  In fact, the Insurance Companies specifically alleged that certain "qualified medical experts" had reviewed "a sampling of the medical records and billings of various claimants" and confirmed that a fraud had been committed.[6]  This indicates

---

[3]     Compl. [ECF No. 1], ¶ 14.

[4]     *Id.*, ¶ 19.

[5]     *Id.*, ¶¶ 20-21.

[6]     Compl. [ECF No. 1], ¶ 62; Amended Compl. [ECF No. 42], ¶ 91.

that a comprehensive pre-suit investigation had been done by the Insurance Companies—entities intimately familiar with the litigation process—prior to suing the Radar Parties, given the nature and chilling effect of their allegations.

The Radar Parties quickly put the Insurance Companies to the test, asking them to describe in detail how Russell, Dipti, and other providers at Radar Medical Group had improperly treated each of the 213 patients at issue in this matter. ***Despite touting wide-spread fraud with unyielding vehemence throughout the motion to dismiss stage of this proceeding,[7] the Insurance Companies are now unable to identify a single instance of fraud or other wrongdoing***. Not a single one.

The Radar Parties also asked the Insurance Companies to identify each of the alleged co-conspirators referenced in the Complaint (and the Amended Complaint). ***In response, the Insurance Companies admitted that they are searching for (and eventually hoping to find) evidence supporting the existence of a conspiracy***.

The Radar Parties further asked the Insurance Companies to identify each alleged self-referral violation at issue in this matter. ***Despite doubling down on this allegation by reasserting it in their First Amended Complaint after being questioned – at length – by the Court about the need for its inclusion in their pleadings,[8] the Insurance Companies could not identify a single instance where either Russell or Dipti violated NRS 439B.425***.

There is more. Not only did the Radar Parties confirm that the Insurance Companies had no basis to sue them, but also, ***the Radar Parties confirmed that the Insurance Companies will proffer false testimony in this proceeding in order to advance their claims***. For example, the Radar Parties asked the Insurance Companies to identify when Russell and Dipti were deemed to be "providers of interest" within the Insurance Companies' claims system – e.g., doctors who the Insurance Companies believe over-treat and overbill their patients. Despite stating—under penalty

---

[7]     *See, e.g.*, Tr. of Proceedings, May 26, 2016, 20:3-4, 23:15-23 (arguing that the Complaint establishes "[w]idspread fraud" and that every single patient at issue in this matter "ha[d] the same type of injuries" and was "treated the exact same way regardless of age, gender, mechanism of injury, and how it occurred").

[8]     *Compare* Amended Compl. [ECF No. 41], ¶¶ 20-21, *with* Tr. of Proceedings, May 26, 2016, 32:18 – 34:7, where the Court cautioned the Insurance Companies to "take a hard look" at whether they should re-plead self-referral law violations in their Amended Complaint and reminding them that "there has to be a Rule 11 basis for that" given the "residual impact" such publicized allegations can have on a doctor.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

of perjury—that Russell and Dipti were not identified as "providers of interest" until the filing of the Complaint in September 2015, the Insurance Companies' claim files prove that Russell and Dipti were deemed to be "providers of interest" as early as November 2013. Moreover, despite stating— under penalty of perjury—that the Insurance Companies could not have discovered the alleged fraud at issue in this matter prior to 2014, the Insurance Companies' claim files prove that Russell and Dipti have been on the Insurance Companies' watch list for allegedly building up medical specials in minor soft tissue impact cases since 2009. The Insurance Companies' willingness to knowingly submit sworn statements in this matter inconsistent with their own claim files proves the lengths to which they will go to try to drive the Radar Parties out of business.[9]

The Insurance Companies filed their baseless Complaint for the lasting negative impact that it would have on Russell and Dipti, both personally and professionally. Russell and Dipti did nothing wrong; yet, they have been publicly dragged across the metaphorical coals—at substantial expense—solely because they treat persons of limited financial means injured in motor vehicle accidents on a lien basis.

The Court has the power—by rule and pursuant to its inherent authority—to sanction the Insurance Companies for knowingly filing frivolous claims against the Radar Parties that are unsupported in fact and were not properly vetted before filing. Deterrence is a must in this instance because the Insurance Companies regularly file similar lawsuits against other doctors around the country. They do so irrespective of their likelihood of success because – win or lose – the doctors will eventually be driven out of business and unable to financially defend themselves against a multi-billion dollar insurance company with unlimited financial resources.

---

[9]   The Insurance Companies have been successful in that respect thus far—e.g., Radar Medical Group has had to lay off a substantial number of its employees within the last year in large part because its providers are treating significantly fewer patients. Moreover, the existence of the lawsuit has impaired its ability to recover on its bills.

This is not the first time that the Insurance Companies have sought to drive a doctor out of business. As discussed more fully below, in 2011, a seven-figure damage award entered in favor of an Arkansas doctor and against Allstate Ins. Co. was upheld on appeal based on substantial evidence presented at trial establishing a concerted effort by Allstate Ins. Co. to drive that doctor out of business in order to decrease the amounts paid by Allstate Ins. Co. in settlement of bodily injury claims.

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1   For these reasons, as discussed below, the Court should grant this Motion in its entirety and

2   sanction the Insurance Companies by dismissing their claims with prejudice and ordering them to

3   pay a $100,000 penalty into Court in addition to all attorneys' fees and costs incurred by the Radar

4   Parties in defense of the Insurance Companies' claims.[10]

5   ## II.   STATEMENT OF PERTINENT FACTS

6   During the hearing on the Radar Parties' Motion to Stay Discovery, the Insurance

7   Companies (through their counsel) affirmatively represented to the Court that they would answer

8   interrogatories related to each of the patients at issue in this matter "with particularity," because—in

9   their own words—the Radar Parties "deserve knowledge of exactly what's happening with each one

10   of these cases." (Tr., Apr. 19, 2016, 9:9 – 12:6.)  Their counsel said, *"[W]e will provide that to*

11   *them."* (*Id.*, 12:4-6 (emphasis added).)  Notwithstanding their pledge, the Court specifically

12   directed the Insurance Companies to answer interrogatories about each of the patients at issue in

13   this matter "with particularity."[11]  (*Id.*, 12:16-24.)

14   As set forth below, the Insurance Companies did not – because they could not – provide *any*

15   particularity in discovery with regard to *any* of their allegations, thereby confirming that they have

16   no evidence of wrongdoing upon which to support *any* of their claims.

17   ### A.   The Insurance Companies Cannot Identify A Single One of the Radar Parties'
18   ### Alleged Co-Conspirators.

19   In their pleadings, the Insurance Companies alleged as follows: "Plaintiffs are informed and

20   believe that there are various physicians, attorneys, and entities in Las Vegas and Henderson that

21   have conspired with the above defendants to defraud Plaintiffs."[12]  Accordingly, on September 13,

22   2016, Radar Medical Group served the following interrogatory on each of the Insurance Companies:

23

24

---

25   [10]   If such relief is granted, the Radar Parties will separately file a memorandum identifying and describing the amount and reasonableness of their fees and costs incurred in defending against the Insurance Companies' claims.

26   [11]   During the hearing on the Radar Parties' Motion to Dismiss, the Court affirmed that discovery is intended to
27   "provide some of the detail to flesh out the complaint."  (Tr., May 26, 2016, 30:25 – 31:3.)

28   [12]   Compl. [ECF No. 1], ¶ 14; Amended Compl. [ECF No. 41], ¶ 14.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Identify and describe in detail all principal and material facts relied on in support of Paragraph 14 of the Amended Complaint for Damages and Demand for Jury Trial. Include in the response for each person alleged to have conspired with the Defendants the following:

(i)     The person's name and occupation;

(ii)    The person's state of residency;

(iii)   The person's employer;

(iv)    When you first determined or suspected that this person had conspired (or sought to conspire) with the Defendants to defraud you;

(v)     The name and capacity of your employee who first determined or suspected that this person had conspired (or sought to conspire) with the Defendants to defraud you;

(vi)    The names and capacities of all other employees who were consulted for purposes of determining whether this person had conspired (or sought to conspire) with the Defendants to defraud you;

(vii)   The circumstances under which you determined or suspected that this person had conspired (or sought to conspire) with the Defendants to defraud you;

(viii)  The factual bases upon which you relied in determining or suspecting that this person had conspired (or sought to conspire) with the Defendants to defraud you;

(ix)    Whether this person has been notified of his or her involvement in the conspiracy;

(x)     The person's role or extent of involvement in the conspiracy; and

(xi)    Communications with any third party regarding this person's involvement in the conspiracy.[13]

The Radar Parties also served requests for production of documents on the Insurance Companies, requesting all documents showing the existence of a conspiracy among lawyers and doctors in Southern Nevada formed for the purpose of defrauding the Insurance Companies.[14]

On December 15, 2016— three months later, following the Insurance Companies' receipt of several extensions—each of the Insurance Companies responded to this interrogatory as follows (emphasis added):

---

[13]   Ex. 9, 13:5 – 14:19; Ex. 10, 13:5 – 14:19; Ex. 11, 13:5 – 14:19; Ex. 12, 13:5 – 14:19.

[14]   Ex. 41, 53:7-10 (Request No. 151), 54:14-17 (Request No. 159).

Page **7** of **34**

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1    Objection. Plaintiff hereby objects to each request to the extent that it calls for
2    information protected by the attorney/client privilege or work product limitation on
     discovery. Plaintiff responds as follows: ***Plaintiff is investigating and conducting***
3    ***discovery as to the issues raised in paragraph 14***. As stated in that paragraph,
     Plaintiff reserves the right to amend their complaint to add physicians, attorneys, and
4    entities as defendants in this matter as their identities are ascertained. Plaintiff will
     supplement this response at a point in time when it determines that the first amended
5    complaint needs to be amended to add other defendants.[15]

6    The Insurance Companies responded to the above document requests in like fashion; to wit

7    (emphasis added):

8        ***Objection, overbroad and asks for attorney/client privileged information and***
9        ***attorney work product***. Allstate refers to its Privilege Log.[16]

10   This response notwithstanding, not a single entry in the Insurance Companies' privilege log

11   references a document supporting Paragraph 14 of the Amended Complaint.  Not a single one.

12       **B.     The Insurance Companies Cannot Describe How Each of the Radar Parties**
         **Improperly Treated Each of the Patients At Issue in this Matter.**
13

14       The Insurance Companies alleged—*ad nauseum*—that Russell and Dipti improperly treated

15   each of the 213 patients at issue in this matter; to wit:

16   -    That the treatment received by these patients "was based upon a standardized pattern"
17        developed by Russell and Dipti "with the express purpose of creating inflated medical bills
          that would be used to leverage artificially enhanced settlement values . . . rather than
18        providing patient-centered treatment with the goal of actually healing injuries";[17]

19   -    That Russell and Dipti "falsely reported symptoms, complaints, and injuries for each of the
          claimants" at issue in this matter, made findings that were "either exaggerated or not
20        supported at all by the facts of the accident," "made pre-programmed, unsubstantiated
          findings and diagnoses," and "prescribed treatment plans which were more consistent with
21        generating large medical bills . . . than patient-centered and evidence-based treatment of the
          patients' actual clinical conditions";[18]

22

23

24   _____
     [15]    Ex. 29, 16:9-16; Ex. 30, 16:9-16; Ex. 31, 16:9-16; Ex. 32, 16:9-16.
25   [16]    Ex. 42, 84:17-19, 88:3-4.
26   [17]    Compl. [ECF No. 1], ¶ 19; Amended Compl. [ECF No. 41], ¶ 19.
27   [18]    Compl. [ECF No. 1], ¶ 23; Amended Compl. [ECF No. 41], ¶ 25; *see also* Compl. [ECF No. 1], ¶ 26 (re-
     alleging that patients were treated based on a "pre-programmed protocol, rather than [in] response to [his or her] clinical
28   need"); Amended Compl. [ECF No. 41], ¶¶ 28, 42 (same).

BAILEY✤KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

- That Russell and Dipti treated their patients "according to a 'recipe' of medically unnecessary care" that was "not significantly altered regardless of the documented clinical complaints of the patient";[19]

- That practitioners at Radar Medical Group, Russell PC, and Dipti PC "did not vary treatment according to each claimant's needs or actual physical condition";[20]

- That Russell and Dipti billed their patients "for services never provided" and subjected their patients to "unnecessary medical procedures," including unnecessary diagnostic imaging;[21]

- That Russell and Dipti made referrals for their patients "without evidence of documented clinical questions necessitating the need for such procedures" and solely to increase the value of cases "by inflating the medical specials";[22]

- That reports generated by Radar Medical Group and Dipti PC "were filed with substantially similar descriptions and virtually identical statements, regardless of the actual circumstances of the accident, or the[] gender, age, and physical condition of the claimant designed to misrepresent the need for ongoing treatment";[23]

- That patients were prescribed medication "with little or no clinical utility and with no concern for individual treatment of the patients' symptoms" by individuals who were not "licensed or trained . . . to bottle and distribute prescription medication under the law";[24] and

- That Russell diagnosed patients with "improbable findings of 'numbness' and 'tingling' in order to perform unnecessary and unjustified EMGs, subjected his patients to unnecessary SSEP studies, EEGs, and TCD tests, and caused improperly trained or unsupervised technicians to perform NCV studies;[25]

Based on these allegations, on September 13, 2016, Russell served the following interrogatory on each of the Insurance Companies:

> For each claim identified in the Master Claimant List that you handled, identify and describe in detail how Dr. Russell Shah fraudulently treated the patient. Include in the response:

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

---

[19]     Compl. [ECF No. 1], ¶¶ 33-34; Amended Compl. [ECF No. 41], ¶ 23.

[20]     Compl. [ECF No. 1], ¶¶ 33-34; Amended Compl. [ECF No. 41], ¶ 23.

[21]     Compl. [ECF No. 1], ¶¶ 25-27; Amended Compl. [ECF No. 41], ¶ 27; *see also* Amended Compl. [ECF No. 41], ¶ 34 (alleging that Russell performed unnecessary EMG/NCV studies), ¶ 35 (alleging that patients were referred for X-rays "without adequate justification"), ¶ 58 (alleging that Russell "billed for treatment that was not rendered").

[22]     Compl. [ECF No. 1], ¶ 26; Amended Compl. [ECF No. 41], ¶ 28; *see also* Amended Compl. [ECF No. 41], ¶ 32 (alleging that self-referrals were made "to build up the medical specials for profit"), ¶ 62 (same).

[23]     Compl. [ECF No. 1], ¶ 29; Amended Compl. [ECF No. 41], ¶ 36.

[24]     Compl. [ECF No. 1], ¶ 31; Amended Compl. [ECF No. 41], ¶ 42; *see also* Amended Compl. [ECF No. 41], ¶ 43 (alleging that Dipti "continue[d] to hand out hundreds of pills of prescription medication" solely to increase profits), ¶ 45 (alleging that Dipti prescribed medication "without making a determination as to the need for those prescriptions").

[25]     Compl. [ECF No. 1], ¶ 32; Amended Compl. [ECF No. 41], ¶¶ 46, 49-53-56, 61.

(i)     Each date of service during which Dr. Russell Shah allegedly engaged in wrongdoing;

(ii)    What about Dr. Russell Shah's treatment, including recommended course of action, on one or more particular dates of service was improper (e.g., whether he performed an unnecessary medical procedure such as a TCD exam, SSEP test, EMG, EEG, or NCV studies);

(iii)   The factual bases upon which you contend that Dr. Russell Shah's treatment, including recommended course of action, on one or more particular dates of service was improper;

(iv)    Which specific diagnoses, findings, and/or impressions of the patient by Dr. Russell Shah on one or more particular dates of service were grossly exaggerated, improbable, and/or not supported by the patient's condition;

(v)     The factual bases upon which you contend that one or more diagnoses, findings, and/or impressions of the patient by Dr. Russell Shah on one or more particular dates of service were grossly exaggerated, improbable, and/or not supported by the patient's condition;

(vi)    Whether you contend that a referral made by Dr. Russell Shah during one or more particular dates of service, whether for diagnostic imaging such as X-rays or MRIs or consultation with another provider, was unnecessary and/or improper;

(vii)   The factual bases upon which you contend that a referral made by Dr. Russell Shah during one or more particular dates of service, whether for diagnostic imaging such as X-rays or MRIs or consultation with another provider, was unnecessary and/or improper;

(viii)  Whether you contend that a prescription given by Dr. Russell Shah during one or more particular dates of service was unnecessary and/or improper; and

(ix)    The factual bases upon which you contend that the patient did not need the medication prescribed by Dr. Russell Shah during one or more particular dates of service.[26]

Dipti served a substantially similar interrogatory on each of the Insurance Companies (modified based on her area of practice), as did Radar Medical Group (seeking to discover how each of its nurse practitioners fraudulently treated one or more of the patients at issue in this matter).[27]   The Radar Parties also served a series of requests for production of documents on the Insurance Companies, requesting all documents supporting their treatment-related allegations.[28]

[26]     Ex. 1, 6:10 – 7:12; Ex. 2, 6:10 – 7:12; Ex. 3, 6:10 – 7:12; Ex. 4, 6:10 – 7:12.

[27]     Ex. 5, 6:10 – 7:12; Ex. 6, 6:10 – 7:12; Ex. 7, 6:10 – 7:12; Ex. 8, 6:10 – 7:12; Ex. 9, 6:12 – 7:14; Ex. 10, 6:12 – 7:14; Ex. 11, 6:12 – 7:14; Ex. 12, 6:12 – 7:14.

[28]     Ex. 41, 53:11 – 55:24 (Request Nos. 152 – 168).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1    On December 15, 2016, each of the Insurance Companies responded to the above

2    interrogatory as follows (emphasis added):

3        Objection. ***This interrogatory calls for an expert medical and legal conclusion,
         neither of which this answering Plaintiff is qualified to render***. Furthermore, it is

4        premature in that it would require Plaintiffs to provide expert medical opinions in
         advance of the expert designation date required by the Federal Rules of Civil

5        Procedure. Plaintiff will supplement this response upon receipt of the expert reports
         that will form the basis for the answer to this interrogatory.[29]

6

7    Not a single fact or document was provided for any of the 213 patients.

8        Moreover, the Insurance Companies responded to each of the above-referenced requests for

9    production of documents by directing the Radar Parties to review "the individual underlying

10   claimants' medical records" and/or by indicating that "[d]iscovery is continuing and Allstate

11   reserves the right to supplement this response, including, but not limited to, expert opinions."[30]

12   **C.     The Insurance Companies Cannot Identify Any Alleged Illegal Self-Referrals
            Between or Among Radar Medical Group, Russell PC, and/or Dipti PC.**

13

14       The Insurance Companies alleged in their Complaint that Russell and Dipti had illegally

15   referred patients to one another "in violation of 42 USC § 1395nn and NRS § 439B.425."[31]  In their

16   Amended Complaint, the Insurance Companies alleged that Russell and Dipti had violated state law

17   through numerous illegal self-referrals.[32]

18       With those allegations in mind, on September 13, 2016, Radar Medical Group served the

19   following interrogatory on each of the Insurance Companies:

20       For each claim identified in the Master Claimant List that you handled, identify
         and describe in detail each referral from Radar Medical Group to Dipti PC that you

21       contend was illegal.  Include in the response for each allegedly illegal referral:

22       (i)     The date of the referral;

23       (ii)    The referring provider and the entity through which he or she made the
                 referral;

24

25   [29]    Ex. 21, 3:26 – 4:3; Ex. 22, 3:24 – 4:1; Ex. 23, 3:24 – 4:1; Ex. 24, 3:26 – 4:3; Ex. 25, 3:23-28; Ex. 26, 3:22-27;
         Ex. 27, 3:22-27; Ex. 28, 3:23-28; Ex. 29, 4:1-6; Ex. 30, 4:1-6; Ex. 31, 4:1-6; Ex. 32, 4:1-6.

26   [30]    Ex. 42, 84:20 – 91:20.

27   [31]    Compl. [ECF No. 1], ¶¶ 20-21, 48-49, 92.

28   [32]    Amended Compl. [ECF No. 41], ¶¶ 20-21, 77-78, 121.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

(iii)   The provider to whom the patient was referred and the entity through which he or she evaluated the patient as a result of the referral;

(iv)   The factual bases upon which you contend that the referral was illegal; and

(v)    Whether you contend that the referral should have been to a healthcare provider not associated or affiliated with any of the Defendants.[33]

Radar Medical Group also served an interrogatory on each of the Insurance Companies seeking information about illegal self-referrals that it is alleged to have made to Russell PC.[34]  Russell PC and Dipti PC then served substantially similar interrogatories on each of the Insurance Companies.[35]

On December 15, 2016, each of the Insurance Companies responded to these interrogatories as follows (emphasis added):

> ***Plaintiff responds that the response to this Interrogatory and sub-parts i through iii, may be determined from Plaintiff's business records, as well as Defendant's business records and the burden of deriving or ascertaining the answer will be substantially the same for the requesting and responding party***. Based on Plaintiff's contentions any referral by Doctors Dipti Shah and/or Doctor Russell Shah and/or Radar Medical Group to Dipti R. Shah, M.D. Ltd., amounted to illegal self-referral in violation of NRS § 439B.425. Therefore, it is Plaintiff's position that any referral as noted above as evidence by the medical records or bills from any of the Defendants is deemed an illegal self-referral. ***The referrals are detailed in the medical records and bills and thus the burden of deriving or ascertaining the answer will be substantially the same for the requesting and responding party***. Pursuant to FRCP 33(d), Plaintiff specifies the following records: all the medical bills and records produced by Plaintiff in regards to the 213 claims, along with the entirety of the claim files produced. Those documents have been or are being produced as part of these discovery responses by Plaintiff.

> ***In addition, sub-part v, calls for an expert medical and legal conclusion***. Furthermore, it is premature in that it would require Plaintiffs to provide expert opinions in advance of the expert designation date required by the Federal Rules of Civil Procedure. If necessary, Plaintiff will supplement this response upon receipt of the expert reports.

/ / /

/ / /

/ / /

/ / /

---

[33]   Ex. 9, 14:24 – 15:6; Ex. 10, 14:24 – 15:6; Ex. 11, 14:24 – 15:6; Ex. 12, 14:24 – 15:6.

[34]   Ex. 9, 15:7-17; Ex. 10, 15:7-17; Ex. 11, 15:7-17; Ex. 12, 15:7-17.

[35]   Ex. 13, 9:11 – 10:5; Ex. 14, 9:11 – 10:5; Ex. 15, 9:11 – 10:5; Ex. 16, 9:11 – 10:5; Ex. 17, 9:11 – 10:5; Ex. 18, 9:11 – 10:5; Ex. 19, 9:11 – 10:5; Ex. 20, 9:11 – 10:5.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1

2
Notwithstanding the above, in regards to sub-part iv, as to the factual basis upon which Plaintiff contends the referrals were illegal, this is detailed in relevant part in paragraphs 9-13, 20-22 of the first amended complaint.[36] These factual allegations are premised on Plaintiff's contentions based on its investigation and discovery to date.[37]

3

4

5
The Insurance Companies did not identify a single instance when Russell referred a patient to Dipti (or vice versa) in violation of state or federal law.

6

7
**D.   The Insurance Companies Abandoned their Allegations that the Radar Parties Overcharged when Treating their Patients.**

8

9

10

11

12
In their pleadings, the Insurance Companies alleged that Dipti routinely double-billed or over-billed for treating her patients using improper CPT codes and that her prices were "highly overpriced for the community."[38]  They further alleged that Russell used improper CPT codes and that his neurological tests were "expensive."[39]  With those allegations in mind, on September 13, 2016, Russell served the following interrogatory on each of the Insurance Companies:

13

14
Describe in detail why you contend that Dr. Russell Shah charges more for treating his patients than other Southern Nevada clinical neurologists who treat patients on a lien basis.  Include in the response:

15

16
(i)      Each particular evaluation provided and diagnostic test, study, and procedure performed by Dr. Russell Shah, between 2007 and 2014, that you contend is above market in Southern Nevada in terms of cost;

17

18

19
(ii)     The CPT code associated with each particular evaluation provided and diagnostic test, study, and procedure performed by Dr. Russell Shah, between 2007 and 2014, that you contend is above market in Southern Nevada in terms of cost;

20

21

22
(iii)    The names and capacities of all persons, including, if applicable, Southern Nevada clinical neurologists who treat patients on a lien basis, with whom you have spoken or consulted, between 2007 and 2014, regarding the cost of each particular evaluation provided and diagnostic test, study, and procedure performed by Dr. Russell Shah that you contend is above market in Southern Nevada in terms of cost, and when such communication took place;

23

24
[36]      Paragraphs 9-13 and 20-22 of the First Amended Complaint are devoid of detail; none references a single self-referral of any patient in violation of state or federal law.

25

26
[37]      Ex. 29, 17:6-26, 18:12 – 19:4; Ex. 30, 17:6-26, 18:12 – 19:4; Ex. 31, 17:6-26, 18:12 – 19:4; Ex. 32, 17:6-26, 18:12 – 19:4; Ex. 33, 9:7-28, 10:12 – 11:4; Ex. 34, 9:7-28, 10:12 – 11:4; Ex. 35, 9:7-28, 10:12 – 11:4; Ex. 36, 9:7-28, 10:12 – 11:4; Ex. 37, 9:7-28, 10:12 – 11:4; Ex. 38, 9:7-28, 10:12 – 11:4; Ex. 39, 9:7-28, 10:12 – 11:4; Ex. 40, 9:7-28, 10:12 – 11:4.

27
[38]      *See, e.g.*, Compl. [ECF No. 1], ¶¶ 30-31; Amended Compl. [ECF No. 1], ¶¶ 30, 38, 40-42, 44, 56-57.

28
[39]      *See, e.g.*, Amended Compl. [ECF No. 41], ¶¶ 47-48, 61.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

(iv)   The details of any market study that you conducted or caused to be conducted, between 2007 and 2014, to ascertain the usual and customary charges in Southern Nevada by clinical neurologists who treat patients on a lien basis for the same or similar evaluations provided and diagnostic tests, studies, and procedures performed by Dr. Russell Shah;

(v)   Any internal analyses undertaken or performed, between 2007 and 2014, to identify usual and customary charges in Southern Nevada by clinical neurologists who treat patients on a lien basis for the same or similar evaluations provided and diagnostic tests, studies, and procedures performed by Dr. Russell Shah;

(vi)   The names of any medical billing databases, including, without limitation, Ingenix, that you consulted, between 2007 and 2014, to determine the usual and customary charges in Southern Nevada by clinical neurologists who treat patients on a lien basis for the same or similar evaluations provided and diagnostic tests, studies, and procedures performed by Dr. Russell Shah;

(vii)   All written materials that you considered in analyzing the reasonableness of the amounts charged by Dr. Russell Shah for evaluations and diagnostic tests, studies, and procedures, including, without limitation, reports by doctors of medicine;

(viii)   Actual amounts charged for evaluations and diagnostic tests, studies, and procedures by other Southern Nevada clinical neurologists who treat patients on a lien basis, including, without limitation, Leo Germin, M.D., Morton Hyson, M.D., Richard Lee, M.D., Michael Horan, M.D., Shankar Dixit, M.D., Gobinder S. Chopra, M.D., and Enrico Fazzini, M.D.;

(ix)   When you first determined or suspected that Dr. Russell Shah purportedly overcharges for evaluations and diagnostic tests, studies, and procedures; and

(x)   What steps you took, if any, to account for the fact that Dr. Russell Shah purportedly overcharges for evaluations and diagnostic tests, studies, and procedures, without limitation, whether you reduced the amounts that you would allow for his evaluations and diagnostic tests, studies, and procedures when settling one or more of the claims on the Master Claimant List.[40]

Dipti served a substantially similar interrogatory on each of the Insurance Companies.[41]

On December 15, 2016, each of the Insurance Companies responded to the above interrogatory as follows:

Plaintiff responds that it is not contending that "Dr. Russell Shah charges more for treating her [sic] patients than other Southern Nevada clinical neurologists who treat patients on a lien basis who treat patients on a lien basis [sic]."[42]

---

[40]   Ex. 1, 7:13 – 9:2; Ex. 2, 7:13 – 9:2; Ex. 3, 7:13 – 9:2; Ex. 4, 7:13 – 9:2.

[41]   Ex. 5, 7:13 – 9:23; Ex. 6, 7:13 – 9:23; Ex. 7, 7:13 – 9:23; Ex. 8, 7:13 – 9:23.

[42]   Ex. 21, 5:21-24; Ex. 22, 5:19-22; Ex. 23, 5:19-22; Ex. 24, 5:21-24.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1    The same answer was given in response to the interrogatory served by Dipti.[43]

2    In sum, when asked to support the above-referenced allegations made in the Complaint and

3    the Amended Complaint, the Insurance Companies denied making those allegations.

4    **E.   The Insurance Companies Cannot Identify the Bills and the Medical Records
            Which They Relied Upon When Settling the Claims at Issue in this Matter.**

5

6    In their pleadings, the Insurance Companies alleged that they "reasonably relied upon the

7    reports and bills" received from the Radar Parties when settling each of the claims at issue in this

8    matter "to their detriment."[44]  Thus, on September 13, 2016, Radar Medical Group served the

9    following interrogatories on each of the Insurance Companies:

10       For each claim identified in the Master Claimant List that you handled, identify
         and describe in detail how you relied on one or more bills from Radar Medical Group.
11       Include in the response:

12   (i)      Each specific bill (e.g., account statement or health insurance claim form) that
              you relied on;
13

14   (ii)     The information within each bill that you relied on;

15   (iii)    The names and capacities of each individual who reviewed each bill, which
              includes, without limitation, your employees, your attorneys, treating
              physicians, and any other person that you may have specially retained to assist
16            in reviewing the bills;

17   (iv)     The medical training and experience, if any, of each individual who reviewed
              each bill;
18

19   (v)      What was done with the information within each bill that you relied on in
              terms of processing the claim;

20   (vi)     Whether each individual reviewing each bill down-coded one or more CPT
              codes when inputting the bill into DecisionPoint (e.g., reducing a 99204 to a
21            99203) and, if so, the reasons for down-coding one or more CPT codes;

22   (vii)    Whether each individual reviewing each bill excluded one or more CPT codes
              when inputting the bill into DecisionPoint (e.g., excluding an S9088 or a
23            99080) and, if so, the reasons for excluding one or more CPT codes;

24   (viii)   Whether each individual reviewing each bill reviewed the Federal Tax I.D.
              Number in order to ascertain which entity had prepared the bill;
25

26   _____

     [43]     Ex. 25, 6:12-14; Ex. 26, 6:12-14; Ex. 27, 6:12-14; Ex. 28, 6:12-14.

27   [44]     *See, e.g.,* Compl. [ECF No. 1], ¶¶ 35, 41-42, 62, 66, 80-81, 94; Amended Compl. [ECF No. 41], ¶¶ 26, 64, 69-
     71, 91, 95, 109-10, 123.

28

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

(ix)     Whether each individual reviewing each bill ascertained the specialty of the provider whose services were included within each bill;

(x)      Whether manual adjustments were made to the initial "allowed" amounts generated by DecisionPoint for each bill when processing the claim;

(xi)     Whether each individual who reviewed each bill contacted (or attempted to contact) one or more of the Defendants to discuss one or more of the bills and, if so, the substance of the conversation;

(xii)    Whether each individual who reviewed each bill contacted (or attempted to contact) the patient's attorney to discuss one or more of the bills received from one or more of the Defendants and, if so, the substance of the conversation;

(xiii)   Whether each individual who reviewed each bill contacted (or attempted to contact) another employee of the Allstate Parties or attorney to discuss one or more of the bills received from one or more of the Defendants and, if so, the substance of the conversation; and

(xiv)    The amount of the settlement payment that you contend consists of the amount that you allowed, if any, for each bill from each Defendant.[45]

\*        \*        \*        \*

For each claim identified in the Master Claimant List that you handled, identify and describe how you relied on one or more of the medical records from Radar Medical Group.  Include in the response:

(i)      Each specific medical record (e.g., patient intake forms, reports, discharge instructions, test results) that you relied on;

(ii)     The information within each medical record that you relied on;

(iii)    The names and capacities of each individual who reviewed each medical record, which includes, without limitation, your employees, your attorneys, treating physicians, and any other person that you may have specially retained to assist in reviewing the medical records;

(iv)     The medical training and experience, if any, of each individual who reviewed each medical record;

(v)      What was done with the information within each medical record in terms of processing the claim (e.g., whether certain information was inputted into Colossus);

(vi)     Whether certain information within each medical record was red-flagged or otherwise tagged for further review;

---

[45]   Ex. 9, 7:15 – 8:24; Ex. 10, 7:15 – 8:24; Ex. 11, 7:15 – 8:24; Ex. 12, 7:15 – 8:24.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

(vii)   Whether certain diagnoses, findings, and/or impressions within each medical record were compared to diagnoses, findings, and/or impressions contained within medical records from other providers;

(viii)  Whether each individual who reviewed each report associated with a follow up visit reviewed the section entitled "Subjective" for purposes of assessing the patient's chief complaint during that particular visit;

(ix)    Whether each individual who reviewed each medical record questioned and/or disagreed with any of the diagnoses, findings, and/or impressions within a particular report and, if so, the reasons for such uncertainty and/or disagreement;

(x)     Whether each individual who reviewed each medical record questioned and/or disagreed with the plan recommended by the provider in his or her report during one or more particular visits and, if so, the reasons for such uncertainty and/or disagreement;

(xi)    Whether each individual who reviewed each medical record contacted (or attempted to contact) one or more of the Defendants to discuss one or more of the medical records and, if so, the substance of the conversation;

(xii)   Whether each individual who reviewed each medical record contacted (or attempted to contact) another healthcare provider to discuss one or more of the medical records received from one or more of the Defendants and, if so, the substance of the conversation;

(xiii)  Whether each individual who reviewed each medical record contacted (or attempted to contact) the patient's attorney to discuss one or more of the medical records received from one or more of the Defendants and, if so, the substance of the conversation;

(xiv)   Whether each individual who reviewed each medical record contacted (or attempted to contact) the patient's attorney to discuss the one or more of the medical records received from one or more of the Defendants and, if so, the substance of the conversation; and

(xv)    Whether you requested an independent medical examination of the patient following your review of the medical records received from any of the Defendants.[46]

Russell PC and Dipti PC each served identical interrogatories on each of the Insurance Companies.[47]

On December 15, 2016, each of the Insurance Companies responded to each of these interrogatories, in pertinent part, as follows (emphasis added):

---

[46]   Ex. 9, 8:25 – 10:17; Ex. 10, 8:25 – 10:17; Ex. 11, 8:25 – 10:17; Ex. 12, 8:25 – 10:17.

[47]   Ex. 13, 6:10 – 9:10; Ex. 14, 6:10 – 9:10; Ex. 15, 6:10 – 9:10; Ex. 16, 6:10 – 9:10; Ex. 17, 6:10 – 9:10; Ex. 18, 6:10 – 9:10; Ex. 19, 6:10 – 9:10; Ex. 20, 6:10 – 9:10.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

As part of its process of evaluating the claims at issue in this litigation, Plaintiff relied on all medical bills submitted by Defendant in support of the claims at issue in this litigation. Thus, ***the response to this Interrogatory and its sub-parts may be determined from Plaintiff's business records, and the burden of deriving or ascertaining the answer will be substantially the same for the requesting and responding party***.

Further, ***the claims file for each claim will provide the remaining answers*** posed by the various sub-parts regarding any contacts with the patient's attorney, any contacts with the Defendants themselves, any contacts that an individual Plaintiff's employee may have had with another employee about the medical bills. Those can be found in the correspondence section of the claim file and in the claim notes maintained by the claims adjuster. Any contacts with Plaintiff in regard to the attorneys representing either Plaintiff's insureds, or Plaintiff as it pertains to first party claims is protected by the Attorney-Client privilege. The information found within the claims files will also provide all information regarding the amount of the settlement payment that Plaintiff contends consists of the amount that Plaintiff allowed for the medical bills. ***Pursuant to FRCP 33(d), Plaintiff specifies the following records: all the medical bills produced by Plaintiff in regards to the 213 claims, along with the entirety of the claim files produced***. Those documents are being produced as part of these discovery responses by Plaintiff.[48]

\*       \*       \*       \*

As part of its process of evaluating the claims at issue in this litigation, Plaintiff relied on all medical records submitted by Defendant in support of the claims at issue in this litigation. ***Thus, the response to this Interrogatory and its sub-parts may be determined from Plaintiff's business records, and the burden of deriving or ascertaining the answer will be substantially the same for the requesting and responding party***.

Further, ***the claims file for each claim will provide the remaining answers*** posed by the various sub-parts regarding any contacts with the patient's attorney, any contacts with the Defendants themselves, any contacts with any healthcare provider, any contact with a patient's attorney, and whether there was a request for an independent medical examination. Further those records will detail whether certain information within each medical record was red-flagged or tagged for further review, as well as other issues raised in the subsections. Those can be found in the correspondence section of the claim file and in the claim notes maintained by the claims adjuster, along with other documents and reports found within the claims file. Based on the above, ***Plaintiff responds that the response to this Interrogatory and its sub-parts may be determined from Plaintiff's business records, and the burden of deriving or ascertaining the answer will be substantially the same for the requesting and responding party. Pursuant to FRCP 33(d), Plaintiff specifies the following records: all the medical bills produced by Plaintiff in regards to the 213 claims, along with the entirety of the claim files produced***. Those documents have been or are being produced as part of these discovery responses by Plaintiff.[49]

---

[48]     Ex. 29, 5:17 – 6:6; Ex. 30, 5:17 – 6:6; Ex. 31, 5:17 – 6:6; Ex. 32, 5:17 – 6:6; Ex. 33, 4:5-22; Ex. 34, 4:5-22; Ex. 35, 4:5-22; Ex. 36, 4:5-22; Ex. 37, 4:5-22; Ex. 38, 4:5-22; Ex. 39, 4:5-22; Ex. 40, 4:5-22.

[49]     Ex. 29, 8:23 – 9:14; Ex. 30, 8:23 – 9:14; Ex. 31, 8:23 – 9:14; Ex. 32, 8:23 – 9:14; Ex. 33, 7:7-26; Ex. 34, 7:7-26; Ex. 35, 7:7-26; Ex. 36, 7:7-26; Ex. 37, 7:7-26; Ex. 38, 7:7-26; Ex. 39, 7:7-26; Ex. 40, 7:7-26.

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

The Insurance Companies also described their use of computer software programs known as Colossus and DecisionPoint in order to determine whether—from the Insurance Companies' perspective—each claimant's treatment was reasonable and necessary and by how much to discount each claimant's medical bills for purposes of ascertaining the amount to pay in settlement of the claim.[50]

In sum, not a single fact was provided, nor was a single document identified, for any of the 213 patients at issue in this matter.

### F.   The Insurance Companies Cannot Identify How Settlement Would Have Been Different for Each of the Claims at Issue in this Matter.

In their pleadings, the Insurance Companies alleged that they paid more to settle the claims at issue in this matter—i.e., "artificially enhanced settlements"—than they would have otherwise paid.[51]  In fact, the Insurance Companies alleged that they could have saved "hundreds of thousands of dollars, but for the Radar Parties' alleged fraudulent scheme.[52]  Thus, on September 13, 2016, Radar Medical Group served the following interrogatory on each of the Insurance Companies:

> For each claim identified in the Master Claimant List that you handled, identify and describe in detail how you would have paid less to settle the claim had you known of the alleged fraud committed by one or more of the Defendants.  Include in the response for each claim:
>
> (i)      The applicable policy limits;
>
> (ii)     Each of the claimant's settlement demands (oral and written);
>
> (iii)    The amounts billed by each healthcare provider, including any of the Defendants, who treated the claimant;
>
> (iv)    The value recommendations proposed by Colossus;
>
> (v)     The amounts allowed by DecisionPoint for treatment rendered to the claimant by each of his or her healthcare providers;

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

---

[50]      Ex. 29, 6:7 – 7:3, 9:15 – 10:12; Ex. 30, 6:7 – 7:3, 9:15 – 10:12; Ex. 31, 6:7 – 7:3, 9:15 – 10:12; Ex. 32, 6:7 – 7:3, 9:15 – 10:12; Ex. 33, 4:23 – 5:18, 7:27 – 8:23; Ex. 34, 4:23 – 5:18, 7:27 – 8:23; Ex. 35, 4:23 – 5:18, 7:27 – 8:23; Ex. 36, 4:23 – 5:18, 7:27 – 8:23; Ex. 37, 4:23 – 5:18, 7:27 – 8:23; Ex. 38, 4:23 – 5:18, 7:27 – 8:23; Ex. 39, 4:23 – 5:18, 7:27 – 8:233; Ex. 40, 4:23 – 5:18, 7:27 – 8:23.

[51]      *See, e.g.*, Compl. [ECF No. 1], ¶¶ 36, 43, 67, 78, 81; Amended Compl. [ECF No. 41], ¶¶ 65, 72, 96, 107, 110.

[52]      Compl. [ECF No. 1], ¶ 113; Amended Compl. [ECF No. 41], ¶ 136.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

(vi)    How you would have handled the claim, including, without limitation, whether you would have refused to consider the amounts billed by one or more of the Defendants, whether you would have refused to consider the amounts billed by one or more healthcare providers to whom the claimant may have been referred for treatment by one or more of the Defendants, whether you would have assigned the claim to SIU, what additional action you would have taken, if any, prior to resolving the claim (e.g., requesting an independent medical examination of the claimant), whether you would have refused to resolve the claim pre-litigation, and/or how you would have negotiated with the claimant or his or her attorney in seeking to resolve the claim;

(vii)    What amount you would have offered to settle the claim, addressing each factor that you consider when resolving a claim and identifying which bills, including those of any of the Defendants and those of other healthcare providers to whom the claimant may have been referred for treatment by one or more of the Defendants, that you would have refused to include in any settlement offer;

(viii)    The amount that the claimant would have accepted to settle the claim and how that amount differs, if at all, from the amount that you actually paid to settle the claim;

(ix)    The factual bases upon which you contend that the claimant would have accepted a lesser settlement offer; and

(x)    The costs and expenses that you would have incurred had the claimant not accepted your lower settlement offer.[53]

On December 15, 2016, each of the Insurance Companies responded to this interrogatory, in pertinent part, as follows (emphasis added):

Plaintiff responds that ***the response to this Interrogatory and sub-parts i through v, may be determined from Plaintiff's business records and the burden of deriving or ascertaining the answer will be substantially the same for the requesting and responding party***. Pursuant to FRCP 33(d), Plaintiff specifies the following records: all the medical bills and records produced by Plaintiff in regards to the 213 claims, along with the entirety of the claim files produced. Those documents have been or are being produced as part of these discovery responses by Plaintiff.

    . . . .

In regards to sub-part vi, as part of any settlement proposal, Plaintiff would not have considered any of the Defendants billings arising out of any fraudulent or illegal treatment.

---

[53]    Ex. 9, 12:2 – 13:4; Ex. 10, 12:2 – 13:4; Ex. 11, 12:2 – 13:4; Ex. 12, 12:2 – 13:4.

In addition, ***this interrogatory calls for an expert medical and legal opinion***. Furthermore, it is premature in that it would require Plaintiffs to provide expert medical and legal opinions in advance of the expert designation date required by the Federal Rules of Civil Procedure. Plaintiff will supplement this response upon receipt of the expert reports that will form the basis for the answer to this interrogatory.[54]

Once again, not a single fact was provided, nor was a single document identified, for any of the 213 patients at issue in this matter.

**G.     The Insurance Companies Did Not Conduct an Adequate Pre-Suit Investigation.**

In their pleadings, the Insurance Companies alleged that they "confirmed" that the Radar Parties had committed fraud by having certain "qualified medical experts" review "a sampling of the medical records and billings of various claimants."[55]  Accordingly, on September 13, 2016, Dipti served the following interrogatory on each of the Insurance Companies:

Identify and describe in detail the "sampling of the medical records and billings of various claimants" purportedly reviewed by "qualified medical experts" that you retained prior to initiating this action against the Defendants.  (*See* Amended Compl. For Damages & Demand for Jury Trial [Dkt. # 41], ¶ 91.)  Include in the response:

(i)      Each claim that you had reviewed;

(ii)     Each particular document within each claim that was reviewed;

(iii)    The names and capacities of each "qualified medical expert" who reviewed each claim (or parts thereof);

(iv)    The terms and conditions of each "qualified medical expert's" review of a claim (or parts thereof), including, without limitation, time limitations, compensation, and instructions given for purposes of review;

(v)     The medical training and experience of each "qualified medical expert" who reviewed each claim (or parts thereof);

(vi)    Whether each "qualified medical expert" examined and/or spoke with one or more patients during his or her review process and, if so, the substance of each examination and/or conversation;

(vii)   Whether each "qualified medical expert" spoke with any other provider during his or her review process and, if so, the substance of each conversation;

(viii)  Whether each "qualified medical expert" spoke with any of the attorneys (or employees of those attorneys) for the patients during his or her review process and, if so, the substance of each conversation;

---

[54]     Ex. 29, 13:26 – 14:4; 14:14-20; Ex. 30, 13:26 – 14:4; 14:14-20; Ex. 31, 13:26 – 14:4; 14:14-20; Ex. 32, 13:26 – 14:4; 14:14-20.

[55]     Compl. [ECF No. 1], ¶ 62; Amended Compl. [ECF No. 41], ¶ 91.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

(ix)   The names and capacities of all other persons who participated or were otherwise involved in the review process and the substance of their participation and/or involvement;

(x)   The findings of each "qualified medical expert" in terms of his or her review of one or more of the claims; and

(xi)   All documents relied on by each "qualified medical expert" in terms of reaching his or her conclusions regarding his or her review of each claim (or parts thereof).[56]

The Radar Parties also served requests for production of documents on the Insurance Companies, requesting copies of all written reports prepared by, and communications with, licensed medical practitioners criticizing the treatment rendered by one or more of the Radar Parties to one or more of the patients at issue in this matter.[57]

On December 15, 2016, the Insurance Companies responded to the above interrogatory, in pertinent part, as follows (emphasis added):

*Objection. Plaintiff objects to each request in that it calls for information protected by the attorney/client privilege or work product limitation on discovery.* All work performed by medical expert consultants prior to filing the complaint herein was done in conjunction with Plaintiff and at the direction of Plaintiff's counsel. As such any discussions regarding the various claims, the conclusions of those medical expert consultants, and any other pre-trial work by the medical expert consultants was done in anticipation of litigation and is therefore protected by the attorney-client and attorney work product doctrine.

*Furthermore, what was reviewed by the medical expert consultants prior to the filing of the complaint as part of their work with Plaintiff and Plaintiff's attorney, what was discussed about the particular claims being reviewed, between the medical expert consultants, Plaintiff and Plaintiff's attorneys in preparation for the filing of any complaint is not relevant to this litigation and is therefore, not calculated to lead to the discovery of admissible evidence.* What is at issue now is the position that Plaintiff is taking in the complaint as to the 213 claims that are the subject of this litigation.[58]

After initially claiming that the above document requests called for the disclosure of attorney-client privileged information (albeit without any explanation or a supporting privilege log), the Insurance Companies referred to various written reports obtained or procured while settling one

---

[56]   Ex. 5, 9:24 – 10:24; Ex. 6, 9:24 – 10:24; Ex. 7, 9:24 – 10:24; Ex. 8, 9:24 – 10:24.

[57]   Ex. 41, 11:6-19 (Request Nos. 5-6).

[58]   Ex. 25, 7:16 – 8:1; Ex. 26, 7:16 – 8:1; Ex. 27, 7:16 – 8:1; Ex. 28, 7:16 – 8:1.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

or more of the claims at issue in this matter.[59]  Of the approximately 23 written reports produced in discovery by the Insurance Companies related to 18 different patients,[60] only five disagreed with some or all of Russell's treatment rendered to four different patients and only four disagreed with some or all of Dipti's treatment rendered to four different patients.[61]  By contrast, eight reports agreed with all of the treatment rendered by Russell to seven different patients and five reports agreed with all of the treatment rendered by Dipti to three different patients.[62]  *None of the reports indicated that either Russell or Dipti treated a patient with the purpose of defrauding the Insurance Companies*.  Notwithstanding, with those few reports in hand that disagree, in whole or in part, with the treatment rendered by Russell and/or Dipti to 8 out of 213 patients—a 3.8% sampling of the claim files—and without regard to the reports that agree with all of the treatment rendered by Russell and Dipti to 10 out of 213 patients—a 4.7% sampling of the claim files—the Insurance Companies alleged that Russell and Dipti improperly treated 213 patients.[63]

The Insurance Companies (through their counsel) have since indicated that their experts may opine that the treatment rendered by Russell or Dipti to one or more of the 213 patients was "reasonable and necessary."[64]  ***Thus, the Insurance Companies have admitted in writing that they did not review each of the claim files at issue in this matter prior to filing the Complaint and anticipate that Russell and Dipti did not commit fraud when treating all 213 patients***.

Moreover, in discovery, the Insurance Companies served requests for admission on Radar Medical Group, asking it to admit that Edwin Favis ("Mr. Favis"), an advanced practice registered nurse, was not licensed as a dispensing technician prior to 2015.[65]  These requests, which follow an

---

[59]     Ex. 42, 5:19 – 7:27.

[60]     *See generally* Exs. 43-65.

[61]     (*See* Exs. 45-46, 49, 53-56, 62-63.)  None of the physicians who disagreed with some or all of Russell's treatment is a neurologist and none of the physicians who disagreed with some or all of Dipti's treatment is an internist, calling into question the credibility of their reports.

[62]     *See* Exs. 43-44, 47, 49-50, 57-59, 61.

[63]     Amended Compl. [ECF No. 41], ¶ 91.

[64]     Ex. 66.

[65]     Ex. 67, 4:8-18.

BAILEY✥KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1  allegation appearing in the Amended Complaint indicating that "[t]he person holding the

2  prescription license was Dr. Dipti Shah,"[66] prove that the Insurance Companies did not adequately

3  research their claims prior to filing their Complaint.  Had they done so, they would have learned that

4  Mr. Favis has been licensed as a dispensing practitioner by the Nevada State Board of Pharmacy

5  since 2010 (thus negating any need for him to be separately licensed as a dispensing technician).[67]

6      **H.      The Insurance Companies Knowingly Submitted False Interrogatory Answers.**

7          On September 13, 2016, Russell and Dipti asked the Insurance Companies to identify when

8  they were put "on hold or otherwise identified . . . as a provider of interest."[68]  Radar Medical Group

9  separately asked the Insurance Companies to verify—under oath—that the Insurance Companies

10  "could not have discovered, through the use of reasonable diligence," the alleged fraud at issue in

11  this matter prior to 2014.[69]

12          On December 15, 2016, the Insurance Companies responded to Russell and Dipti's

13  interrogatories by swearing—under oath—that each was deemed to be a provider of interest on

14  September 17, 2015, "the date the complaint was filed."[70]  *That statement is false*.  For example, the

15  claim history report for Claim No. 0269103743 reveals that Russell and Dipti were considered to be

16  providers of interest by no later than November 4, 2013, nearly two years prior to the filing of the

17  Complaint.[71]

18          The Insurance Companies also swore—under oath—that they could not have discovered the

19  alleged fraud at issue in this matter prior to 2014.[72]  *That statement is likewise false*.  For example,

20

21  66      Amended Compl. [ECF No. 41], ¶ 42.

22  67      Ex. 68.

23  68      Ex. 1, 9:22 – 11:2; Ex. 2, 9:22 – 11:2; Ex. 3, 9:22 – 11:2; Ex. 4, 9:22 – 11:2; Ex. 5, 15:23 – 17:2; Ex. 6, 15:23 – 17:2; Ex. 7, 15:23 – 17:2; Ex. 8, 15:23 – 17:2.

24  69      Ex. 9, 14:20-23; Ex. 10, 14:20-23; Ex. 11, 14:20-23; Ex. 12, 14:20-23.

25  70      Ex. 21, 7:20-25; Ex. 22, 7:18-23; Ex. 23, 7:18-23; Ex. 24, 7:20-25; Ex. 25, 25:14-19; Ex. 26, 25:14-19; Ex. 27, 25:14-19; Ex. 28, 25:14-19.

26  71      Ex. 69, at Allstate – Cordon v. McCorkle 000199, 202; *see also* Ex. 70, at Allstate – Tarroyo 000006
27  (indicating that on May 1, 2014, a referral to the Special Investigations Unit was made "involving provider of SIU
   interest/ Complex Case re Russell Shah, Dipti Shah, University Urgent Care").

28  72      Ex. 29, 16:21-22; Ex. 30, 16:21-22; Ex. 31, 16:21-22; Ex. 32, 16:21-22.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

the claim history report for at least *fourteen* different claims at issue in this matter reveals that, since 2009, the Insurance Companies have routinely noted (although it is untrue) that Russell and Dipti overbill and/or overcharge for treating their patients.[73]  In two reports, Russell was referenced as being a "mill-type" personal injury provider known for regularly treating patients injured in motor vehicle accidents on a lien basis.[74]  In two other reports, Russell was accused of artificially building up the medical specials.[75]  Moreover, as noted in the claim history report for Claim No. 0238159917, as of February 13, 2013, the Insurance Companies were accustomed to Russell "on many mva claims" involving potentially excessive medical treatment.[76]  Finally, the claim history report for Claim No. 0238767461 proves that—as of November 6, 2013—the Insurance Companies believed that Dipti had engaged in wrongdoing.[77]

The significance of these affirmative misrepresentations is patent—i.e., the Insurance Companies seek to avoid the Radar Parties' statute of limitation defense by feigning complete ignorance of the alleged fraud at issue in this matter prior to 2014.  In truth and in fact, the Insurance Companies have been questioning (albeit without justification) the treatment rendered by one or more of the Radar Parties (and the amounts charged for such treatment) to their patients since 2009.[78]

/ / /

/ / /

/ / /

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

---

[73]      Ex. 71, at Allstate – Thuy 000013-14; Ex. 72, at Allstate – Tsehay 000011-12; Ex. 73, at Allstate – Vecchione 000084-85; Ex. 74, at Allstate – Alcaraz 000011-12, 15, 17, 19; Ex. 75, at Allstate – Valesky 000008-9; Ex. 76, at Allstate – JDominguez 000004;  Ex. 77, at Allstate – Reitler 000003; Ex. 78, at Allstate – JGonzalez 000011-12; Ex. 79, at Allstate – Nelson 000488; Ex. 80, at Allstate – Ray 000005-6; Ex. 81, at Allstate – Dupaya 000011-12; Ex. 82, at Allstate – Fries 000009-10, 12-14; Ex. 83, at Allstate – Cunanan 000086-88; Ex. 84, at Allstate – Mariano 000114-15.

[74]      Ex. 72, at Allstate – Tsehay 000009; Ex. 76, at Allstate – JDominguez 000004.

[75]      Ex. 69, at Allstate – Cordon v. McCorkle 000197; Ex. 73, at Allstate – Vecchione 000084-85.

[76]      Ex. 85, at Allstate – Telles 000004-5.

[77]      Ex. 86, at Allstate – Castaneda-Linares v. Straight 001071, 82-83 (indicating that the Special Investigations Unit would like to involve McCormick Barstow "in defense" of the claim, in part because Dipti had treated the patient).

[78]      Ex. 83, at Allstate – Cunanan 000086-88 (indicating that the Insurance Companies routinely take issue with bills received from Radar Medical Group).

### III.    ARGUMENT

**A.    Standard of Decision.**

"By presenting to the court a pleading . . . an attorney . . . certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the pleading "is not being presented for any improper purpose" and that "the factual contentions [in the pleading] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(1), (3).  Rule 11 is intended to address "frivolous or abusive filings."  *Ringgold-Lockhart v. Cty. of Los Angeles*, 761 F.3d 1057, 1065 (9th Cir. 2014); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990) (noting that Rule 11 is "aimed at curbing abuses of the judicial system").  When addressed to a complaint, the analysis is two-fold: (i) whether it is legally or factually baseless from an objective standpoint; and (ii) if the attorney conducted "a reasonable and competent inquiry before signing and filing it."  *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005).  No finding of bad faith is required when assessing whether a party or its counsel violated Rule 11 when filing a complaint.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991).  Stated differently, "[c]ounsel's subjective belief in the propriety of the pleading is irrelevant in determining if Rule 11 has been violated."  *MFC Twin Builders, LLC v. Fajardo*, No. 1:12-CV-00219-AWI-SK, 2012 WL 3862399, at *10 (E.D. Cal. Sept. 5, 2012), *report and recommendation adopted*, No. 1:12-CV-00219-AWI, 2012 WL 4468751 (E.D. Cal. Sept. 27, 2012).

Rule 11 aside, the Court has the inherent power to sanction a party or its counsel for bad faith conduct "or conduct tantamount to bad faith."  *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001).  Bad faith "does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar assessment of attorneys' fees."  *Mark Ind., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir. 1995).  In other words, the Court may sanction a party or its counsel for "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose."  *Fink*, 239 F.3d at 994.

If the Court finds that a party violated Rule 11 or "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," it may dismiss the action in its entirety and assess attorneys' fees "covering the entire litigation." *Chambers*, 501 U.S. at 43 n.8, 45-46; *see also Seare v. St. Rose Dominical Health Foundation*, No. 2:10-cv-02190-KJD-GWF, 2011 WL 5101972, at *2 (D. Nev. Oct. 25, 2011) ("[T]he Court finds that Plaintiff's conduct in this action warrants dismissal of his complaint and an award of attorney's fees."). The Court may also order the party "to pay a penalty into court." Fed. R. Civ. P. 11(c)(1).

**B.    The Court Should Sanction the Insurance Companies.**

"The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power[.]" *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). As set forth below, sanctions are warranted against the Insurance Companies under either Rule 11 or the Court's inherent power based on their assertion of myriad unsupported and knowingly false allegations in their Complaint and Amended Complaint.

*1.    The Insurance Companies Filed the Complaint and the Amended Complaint in Violation of Rule 11.*

The Insurance Companies' pleadings in this matter violated Rule 11, for the following reasons.

**First**, the Insurance Companies' claims lack the required evidentiary support. When asked in discovery to provide facts—as opposed to legal argument generated by counsel solely to avoid dismissal of their claims[79]—demonstrating how each of the Radar Parties had committed fraud when treating each of the patients at issue in this matter, the Insurance Companies could not provide *anything*. None could show how any of the Radar Parties committed fraud in any respect. None could describe the alleged "recipe" or "standardized pattern of treatment" supposedly employed by Russell and Dipti when treating their patients. Instead, each of the Insurance Companies indicated that it anticipated that one or more experts will—in the future—opine that the Radar Parties

---

[79]    "[A]rguments and statements of counsel are not evidence[.]" *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n. 4 (9th Cir.2002) (internal quotation marks and citation omitted).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

committed fraud and violated NRS 439B.425.  Setting aside the fact that it is beyond the purview of an expert witness to opine that a defendant committed fraud and/or broke the law,[80] in order to satisfy Rule 11, the facts constituting the fraud and NRS 439B.425 violations had to exist *and be known by* the Insurance Companies at the time that the Complaint was filed.

The Insurance Companies had a lot to say—in their *unverified* pleadings—about how Russell and Dipti had improperly treated in excess of 200 patients between 2008 and 2014 with the purpose of causing the Insurance Companies to pay more in settlement of claims than they would have otherwise paid.  Yet, when it came time to identify—under oath—the particulars supporting their fraud claims and how it was that each patient was treated without regard to his or her individual symptoms and conditions, the Insurance Companies had nothing to say.

Similarly, despite claiming that the Radar Parties had conspired with a group of lawyers and doctors in Southern Nevada to defraud the Insurance Companies, the Insurance Companies had no evidence to even suggest that such a conspiracy exists.  Their silence reveals that this allegation in particular was intended to strike fear in the hearts of other lawyers and doctors who interact with the Radar Parties or the Insurance Companies given the highly-publicized nature of this matter.

Moreover, when asked what specific documents were reviewed and relied on – to the Insurance Companies' detriment – in settling each of the claims at issue in this matter *and* how the outcome of each claim would have been different (e.g., proof, rather than mere speculation, that the Insurance Companies would have actually paid less to settle each claim), the Insurance Companies could do nothing more than point to the Radar Parties' own records and suggest that future expert testimony will somehow explain how they would have acted differently.[81]  That does not satisfy the Rule 11 burden: What facts do you have to support your claim?  Answer here: None.

---

[80]     *See, e.g.*, *A.G. v. Paradise Valley Unified School Dist. No. 69*, 815 F.3d 1195, 1207 (9th Cir. 2016) (noting that an expert witness may not provide a legal opinion at trial); *see also Rahemtulla v. Hassam*, Civil Action No. 3:05-0198, 2008 WL 2247195, at *3 n.4 (M.D. Pa. May 30, 2008) ("[I]t is axiomatic that no expert witness may provide a legal opinion or conclusion that the defendants' actions constituted fraud.").

[81]     The fact that the Insurance Companies relied on Fed. R. Civ. P. 33(d) in responding to these interrogatories further reveals that they have not actually reviewed each claim file at issue in this matter in order to determine what each claims adjustor and each evaluation consultant reviewed and relied on when settling each claim.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

***Second***, discovery has revealed that the Insurance Companies did not properly investigate their claims against the Radar Parties before suing them. For example, they did not research Mr. Favis' licensure to dispense prescription medication prior to alleging that Dipti was the only person at Radar Medical Group who was licensed to dispense prescription medication to patients. Similarly, they did not ascertain whether Russell and Dipti have conspired with other doctors and lawyers in Southern Nevada in order to defraud the Insurance Companies. Finally, they did not analyze whether Russell and Dipti charge more for treating patients than other neurologists and internists, respectively, who treat patients injured in motor vehicle accidents on a lien basis.

Moreover, the Insurance Companies did not review the treatment rendered by Russell and Dipti to each of the patients at issue in this matter. Instead, they relied on reports criticizing some or all of the treatment that was rendered by Russell and/or Dipti to 8 out of 213 patients in order to accuse them of widespread fraud and innumerable acts of racketeering. A mere 3.8% sample size cannot – under any set of circumstances – qualify as a reasonable and competent pre-suit investigation, particularly given the gravity of the allegations made in this matter and when considered in light of competing reports, which represent a larger sample size (i.e., 4.7%), that praise the treatment rendered by Russell and Dipti to their patients.

Incredibly, the Insurance Companies have since acknowledged in writing that they reasonably anticipate that certain patients were treated appropriately by Russell and/or Dipti and not for purposes of inflating medical bills or driving up settlement values. This proves that the Insurance Companies wanted to allege that Russell and Dipti improperly treated over 200 patients, irrespective of the truth of that allegation, solely for publicity sake, and did so without regard to what actually occurred when each of those patients visited Radar Medical Group. The Court must not condone such irresponsible conduct.

***The Insurance Companies' discovery responses prove that they sued the Radar Parties without any basis to do so***.[82] Because their claims lack evidentiary support and were knowingly

---

[82] The fact that the Insurance Companies regurgitated their frivolous allegations in responding to the Radar Parties' requests for production of documents, but not in responding to the Radar Parties' interrogatories, speaks volumes. (*See, e.g.*, Ex. 42, 11:17 – 12:3.) Unlike answers to interrogatories, a party is not required to verify responses to requests for production of documents. *Compare* Fed. R. Civ. P. 33(b)(3) *with* Fed. R. Civ. P. 34(b)(2)(B).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

filed based on a deficient review -- if any – of the claim files at issue in this matter, the Court should find that the Insurance Companies violated Rule 11 and sanction them by dismissing their claims with prejudice and ordering them to pay a $100,000 penalty into Court in addition to all of the attorneys' fees and costs incurred by the Radar Parties in defending against the Insurance Companies' claims.

> 2.   *The Insurance Companies Sued the Radar Parties in Bad Faith or Recklessly with the Intent to Drive Them Out of Business.*

The Insurance Companies filed their claims against the Radar Parties in bad faith or, at a minimum, recklessly, for the purpose of driving the Radar Parties out of business.  When forced to do so, the Insurance Companies could not explain how any of the Radar Parties committed fraud when treating any of the 213 patients at issue in this matter, let alone describe how the Insurance Companies were duped into paying more in settlement of the claims that they would have otherwise paid.  And, they have improperly asserted the attorney-client privilege when questioned about their own allegations[83] or improperly directed the Radar Parties to review mountains of documents in order to ascertain the particulars of the fraud that they are alleged to have committed.[84]

The Insurance Companies filed the Complaint for an improper purpose: To drive Russell and Dipti out of business.  Since 1995, the Insurance Companies have adhered to the following philosophy: "Improving Allstate's casualty economics will have a negative economic impact on some medical providers, plaintiff attorneys, and claimants . . . *Allstate gains, others must lose*."[85]

---

[83]    By placing "at issue" whether the Radar Parties had conspired with other lawyers and doctors in Southern Nevada in order to defraud the Insurance Companies, the Insurance Companies waived any privilege or protection associated with documents supporting that allegation. *See, e.g.*, *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 639-40 (D. Nev. 2013) (discussing the "at issue" waiver doctrine and noting that a party cannot assert a claim or defense "and then withhold from production the very documents that support [that claim or defense]").

[84]    *See, e.g.*, *Donell v. Fidelity Nat. Title Agency of Nev., Inc.*, No. 2:07-cv-00001-KJD-PAL, 2012 WL 1118944, at *10 (D. Nev. Apr. 2, 2012) (rejecting the plaintiff's attempt to direct the defendant to review business records in response to the defendant's interrogatory seeking evidence supporting the plaintiff's allegations, which "essentially consists of a response to read the documents and figure it out for yourself"); *see also Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 321-22 (C.D. Cal. 2004) (noting that some of the plaintiff's answers to defendant's interrogatories seeking evidence supporting the plaintiff's "theories of liability underlying its claims for relief" were "suspect on their face" because the plaintiff failed to do anything more than direct the defendant to review plaintiff's business records and "[i]t is unlikely that such theories and evidence could be found in plaintiff's business records") (emphasis removed).

[85]    Ex. 87, at pg. 3 (emphasis added).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

It is that philosophy that is at the bottom of the conduct here.  And it is that conduct which, in 2011, caused the Arkansas Supreme Court to affirm a $6 million compensatory damage award, and to reinstate a $15 million punitive damage award, entered in favor of a doctor and against Allstate Ins. Co.  *See generally Allstate Ins. Co. v. Dodson*, 376 S.W.3d 414 (Ark. 2011).

In *Dodson*, the Arkansas Supreme Court described the testimony of an insurance industry expert who had opined at trial, *inter alia*, that Allstate Ins. Co. had identified "a successful medical practice that was providing assistance to persons with soft-tissue injuries and intervene[ed] to curb that practice in order to reduce claims."  *Id.* at 426-28.  The Arkansas Supreme Court noted that the expert's testimony helped prove that Allstate Ins. Co. had engaged in a "protracted campaign to limit and even shut down [that] physician's business."  *Id.* at 428.  In addition, the Arkansas Supreme Court noted that other lay witness testimony presented at trial indicated that Allstate Ins. Co.'s claims handling practices sought to make it "unattractive to deal with certain doctors" as a way "not to pay injured people."  *Id.* at 430.  "*More than a reasonable effort to control claim costs, Allstate appears to have sought to severely limit a medical practice that was costing it money*."  *Id.* at 433 (emphasis added).

Just as in *Dodson*, Allstate Ins. Co. and its subsidiaries and affiliates (the Insurance Companies) have targeted Russell and Dipti as a means of reducing the amounts paid in settlement of bodily injury claims in Southern Nevada.  This is proven by the Insurance Companies' own claim files.  For example, one week after filing the Complaint, the Insurance Companies used this lawsuit as a means of forcing three claimants to accept lower settlements of their claims.[86]  In other words, having improperly accused Dipti of fraud and acts of racketeering, the Insurance Companies immediately sought to use its own allegations as a negotiating tactic in order to save money.[87]  And, they were successful in doing so.[88]

---

[86]     Ex. 86, at Allstate – Castaneda-Linares v Straight 001113.

[87]     *See id.*, at Allstate – Castaneda-Linares v Straight 001114 (indicating that a member of the Special Investigations Unit will make the claimants' counsel "see the light").

[88]     *See id.*, at Allstate – Castaneda-Linares v Straight 001107, 1115 (indicating that the claimants accepted less in settlement than the amounts that they demanded prior to the filing of this lawsuit against the Radar Parties).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1    Without Russell and Dipti, persons injured in motor vehicle accidents will have lesser

2    access to quality medical care.  The Insurance Companies are willing to do whatever is necessary to

3    accomplish that objective.  As described above, rather than acknowledge that they have scrutinized

4    the treatment rendered by Russell and Dipti to their patients since 2009, the Insurance Companies

5    falsely swore—under oath—that it was not until 2014 that they uncovered previously unknown

6    "facts" indicating that a fraud had been committed and that it was not until 2015 that they began

7    referring to Russell and Dipti within their internal claims' system as "providers of interest."

8    Moreover, they willfully turned a blind eye to the fact that they possess more written reports that

9    praise—rather than question—the treatment rendered by Russell and Dipti to their patients.

10    Because the Insurance Companies filed their claims in bad faith, or at a minimum,

11    recklessly, with the intent to drive Russell and Dipti out of business, the Court should exercise its

12    inherent power to sanction the Insurance Companies by dismissing their claims with prejudice and

13    ordering them to pay all attorneys' fees and costs incurred by the Radar Parties in defending against

14    the Insurance Companies' claims.

15                              **IV.    CONCLUSION**

16    The Insurance Companies asserted fraud and racketeering claims against the Radar Parties

17    because of their *in terrorem* effects—i.e., criminal overtones, treble damages, and attorneys' fees.

18    The Insurance Companies—who are accustomed to and intimately familiar with all forms of

19    litigation—filed the Complaint despite knowing that they were asserting frivolous claims against

20    the Radar Parties, none of which was grounded in fact or subjected to a reasonable and competent

21    pre-suit investigation.  Sanctions are called for:  Dismissal of the claims with prejudice and

22    payment of a $100,000 penalty into Court in addition to all of the attorneys' fees and costs incurred

23    by the Radar Parties in defending against the Insurance Companies' claims.

24    The Radar Parties seek severe sanctions against the Insurance Companies based on the

25    Insurance Companies' intentional filing of frivolous claims because anything less will fail to

26    sufficiently deter them from further abusing the legal process (in Nevada and elsewhere).  The

27    judicial system is not intended as a means for insurance companies to financially punish and destroy

28    persons who adversely impact their bottom lines.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1    For these reasons, the Court should grant this Motion in its entirety and sanction the

2 Insurance Companies, whether pursuant to Rule 11 or its inherent power.

3    DATED this 6th day of January, 2017.

4                                          BAILEY❖KENNEDY

5                                          By: /s/ Dennis L. Kennedy
                                               DENNIS L. KENNEDY
6                                              JOSEPH A. LIEBMAN
                                               JOSHUA P. GILMORE
7
8                                          Attorneys for Defendants &
                                           Counterclaimants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

1

## CERTIFICATE OF SERVICE

2      I certify that I am an employee of BAILEY✦KENNEDY and that on the 6th day of January,

3  2017, service of the foregoing **DEFENDANTS' MOTION FOR SANCTIONS AGAINST**

4  **PLAINTIFFS AND THEIR COUNSEL** was made by emailing and/or mailing a true and correct

5  copy to the following:

6

7      JARED P. GREEN, ESQ.                    Email:
       **MCCORMICK, BARSTOW,**               jared.green@mccormickbarstow.com
8      **SHEPPARD, WAYTE &**                 Kristin.thomas@mccormickbarstow.com
       **CARRUTH LLP**                        Debbie.sizemore@mccormickbarstow.com
9      8337 West Sunset Road, Suite 350       Jennifer.deboer@mccormickbarstow.com
       Las Vegas, NV  89113                   Michael.merritt@mccormickbarstow.com
10
                                              *Attorneys for Plaintiffs/*
11                                            *Counterdefendants*

12

13     ERON Z. CANNON, ESQ.                   Email:
       **FAIN ANDERSON**                      Eron@favros.com
14     **VANDERHOEF ROSENDAHL**               donna@favros.com
       **O'HALLORAN SPILLANE PLLC**
15     701 Fifth Avenue, Ste. 4750            *Attorneys for Plaintiffs/*
       Seattle, WA  98104                     *Counterdefendants*

16

17

18

19                                            */s/ Susan Russo*
                                              Employee of BAILEY✦KENNEDY
20

21

22

23

24

25

26

27

28