# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, | Case No. 2:15-cv-01786-APG-CWH |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS** |
| v. | (ECF Nos. 52, 53) |
| RUSSELL J. SHAH, M.D.; DIPTI R. SHAH, M.D.; RUSSELL J. SHAH, MD, LTD.; DIPTI R. SHAH, MD, LTD.; and RADAR MEDICAL GROUP, LLP dba UNIVERSITY URGENT CARE, Does 1-100, and ROES 101-200, | |
| Defendants. | |

Plaintiff Allstate Insurance Company[1] brought this suit alleging that the defendant doctors and their office (collectively the "Doctors") are inflating their patients' medical bills so that those patients can extract more money from Allstate in personal injury lawsuits. The Doctors counterclaimed, alleging that Allstate brought this case and told the media about it as part of a "public smear" campaign against them. The Doctors allege six counterclaims: abuse of process, defamation, business disparagement, intentional interference with existing contractual relations, intentional interference with prospective economic advantage, and deceptive trade practices. Allstate moves to dismiss the counterclaims because they fail to state a claim. I grant Allstate's motion.[2]

---

[1] Plaintiffs are four related companies under the Allstate umbrella, but I treat them as one for purposes of this order.

[2] Allstate also moves to dismiss based on Nevada's anti-SLAPP laws. ECF No. 53. Because I dismiss the defendants' claim for failure to state a claim, I need not reach Allstate's alternative arguments.

The Doctors' abuse of process claim fails because, although they allege that Allstate had ulterior motives for conducting certain depositions, they have not sufficiently alleged that Allstate misused any judicial process.  And in any event, the acts that the Doctors point to are shielded by the litigation privilege.  The defamation and disparagement claims fail because Allstate's statements were either privileged or not defamatory.  The intentional interference claims fail because the Doctors have not alleged sufficient facts to support them.  And finally, the deceptive practices claim fails because it hinges on the Doctors' other claims, which I have now dismissed.

**I.      Background[3]**

The Doctors explain at length why Allstate's claims are frivolous and nothing more than an attempt to disparage their business.[4]  Allstate, they allege, brought this suit to discourage them from treating patients injured in car accidents (or treating them well)—thereby reducing the number and value of the claims Allstate has to pay out to those patients.[5]

The Doctors first address how Allstate handled three past personal injury cases.  Allstate's insureds were sued in those cases for causing car accidents, and the Doctors treated the insured's injuries.  The Doctors were deposed as fact witnesses.  They now allege that Allstate told the insureds' attorneys (who Allstate had hired) to ask inappropriate questions during the depositions about the Doctors' business and personal assets.[6]  One of the Doctors also alleges that one of the insureds' attorneys told her during a deposition that she did not need an attorney to represent her.[7]

The Doctors' allegations then turn to Allstate's actions after it filed this case.  They allege that Allstate used the media as part of a "public smear campaign" against them.[8]  They focus on a newspaper article published by the Las Vegas Review Journal newspaper that "summarizes" the

---

[3] The following allegations are taken from the Doctors' answer and counterclaim.  *See* ECF No. 48.  I assume they are true for purposes of this motion.

[4] *Id.* at 22-25.

[5] *Id.* at 24.

[6] *Id.* at 26-27.

[7] *Id.*

[8] *Id.*

1   claims in Allstate's complaint.[9]  The article includes two quotes from Allstate's representative,

2   who said that "Allstate's goal is to ultimately keep costs down for Nevada consumers and prevent

3   fraud," and that Allstate "seek[s] more than $1.7 million in damages."[10]  After the Review Journal

4   article was published, several other news outlets published similar pieces.[11]

5            Aside from the Allstate representative's two quotes, the Doctors' allegations about

6   Allstate's involvement in these articles are sparse.  They allege that Allstate "sought maximum

7   public exposure of their lawsuit through use of the media," and that some undefined person from

8   Allstate, at some undefined time, "contacted" the media.[12]  But there are no other specific facts

9   explaining how Allstate played any part in these articles being written or the journalists' decisions

10  about what to write.

11           The Doctors then allege that Allstate "republished" these articles, but their allegations on

12  this point are equally thin.  The Doctors repeatedly state that Allstate "republished" the articles

13  and "caused [them] to be reposted"—but they do not allege how.[13]  The Doctors also allege that

14  Allstate used "search engine optimization" to "increase the visibility" of websites that hosted

15  articles covering the defendants' story.[14]  But the Doctors offer no specific facts to support this

16  allegation: they just say that Allstate somehow manipulated the results of search engines to drive

17  public traffic to the articles.[15]

18

19

20

21

22
_____

23           [9] *Id.* at 30.

            [10] *Id.*

24           [11] *Id.* at 31.

            [12] *Id.* at 39-40.

25           [13] *Id.* at 38-40.

26           [14] *Id.* at 31.

27

            [15] *Id.*

28

II.   **Analysis**

    **A.  Motion to dismiss standard**

    A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."[16]  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[17]  "Factual allegations must be enough to rise above the speculative level."[18]  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."[19]

    In responding to this motion, the defendants often argue that they need do nothing more than meet the "general notice" pleading standard.[20]  But the Ninth Circuit has explained that a plaintiff must provide "sufficient allegations of underlying facts" to support their conclusory allegations: "to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action . . . [they] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[21]

    **B.  Abuse of process**

    The two elements of the abuse of process tort are: "(1) an ulterior purpose . . . other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding."[22]  Having an ulterior motive is therefore not enough; the defendant must misuse that process—or in other words, he must use a legal process in a way it

---

[16] Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[18] *Twombly*, 550 U.S. at 555.

[19] *Iqbal*, 556 U.S. at 678 (internal citation omitted).

[20] *See, e.g.*, ECF No. 61 at 34-35.

[21] *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[22] *Kovacs v. Acosta,* 787 P.2d 368, 369 (Nev. 1990).

1    was not designed for.[23]   Courts have repeatedly emphasized that using a legal process in a way it

2    is authorized to be used, even with bad intentions, is not enough to state an abuse of process

3    claim.[24]

4         The Doctors allege that Allstate had an ulterior motive for asking certain questions during

5    depositions in other cases, but they have not alleged sufficient facts about how Allstate acted in a

6    way "not proper in the regular conduct of [those] proceeding[s]."  There are no specific

7    allegations suggesting that Allstate was without a legal basis to participate in the depositions, nor

8    are there specific allegations suggesting that there was no basis to ask the questions it did.[25]

9         Even if there were sufficient allegations suggesting that Allstate had somehow abused a

10   litigation process, it cannot be liable for the questions attorneys asked in a deposition because

11   those questions are sheltered by the litigation privilege.  The litigation privilege immunizes a

12   party for any statement made in connection with a judicial proceeding, including statements made

13   in depositions.[26]   The litigation privilege bars abuse of process claims, too.[27]   The thrust of the

14   Doctors' allegations is that Allstate's attorneys asked improper questions during depositions in

15

16

   _____

17      [23] *Childs v. Selznick*, 281 P.3d 1161 (Nev. 2009) (holding that although there was

18   evidence the defendant had an ulterior motive for filing a lawsuit, there was no abuse of process
     because no procedural device was misused); *Laxalt v. McClatchy*, 622 F. Supp. 737, 752 (D. Nev.

19   1985) (holding that filing a complaint with an ulterior motive is not enough to constitute abuse of
     process).

20      [24] *Thornton v. Rhoden*, 245 Cal. App. 2d 80, 100 (1966) ("Some definite act or threat not

21   authorized by the process . . . is required; and there is no liability where the defendant has done
     nothing more than carry out the process to its authorized conclusion, even though with bad

22   intentions."); *Vierria v. California Highway Patrol*, 2011 WL 2971170, at *11 (E.D. Cal. July 20,
     2011); *Abraham v. Lancaster Community Hospital*, 217 Cal. App. 3d 796, 826 (1990);

23   Restatement (Second) Torts § 682 ("[T]here is no action for abuse of process when the process is
     used for the purpose for which it is intended, but there is an incidental motive of spite or an

24   ulterior purpose of benefit to the defendant.").

25      [25] In fact, the Doctors never actually allege that Allstate told these attorneys what to say.  I
     am left to guess about Allstate's involvement in these attorneys' decisions about how to conduct

26   their depositions.

27      [26] *See, e.g.*, *Moore v. Conliffe*, 7 Cal. 4th 634, 637–38 (1994).

28      [27] *Id.*; *see also Gallanis–Politis v. Medina*, 152 Cal. App. 4th 600, 615–17 (2007).

1   other cases; thus, the litigation privilege bars such claims.[28]  I must therefore dismiss this claim.

2   Because the litigation privilege shields Allstate from this claim, amendment of the counterclaim

3   would be futile.  Thus, dismissal is with prejudice.

4               **C.  Defamation and business disparagement**

5           The elements of defamation include "(1) a false and defamatory statement; (2) an

6   unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4)

7   actual or presumed damages."[29]  Business disparagement is a similar claim, requiring the plaintiff

8   to prove that the defendant's alleged false statements interfered with the plaintiff's business.[30]

9           The Doctors' allegations about defamation and business disparagement revolve around a

10  newspaper article that discussed Allstate's complaint.  The Doctors contend that because this

11  article republishes the lies Allstate tells in its complaint, the article is defamatory.  The Doctors

12  then argue that Allstate is liable for the article because it tipped off the newspaper in the first

13  place, it made two quotes to a reporter, and it republished the article by using search engine

14  optimization.  None of these theories states a plausible defamation or business disparagement

15  claim.

16          First, the Doctors offer no authority suggesting that informing a newspaper that a case has

17  been filed is defamatory.  After all, that would be a true statement.  And even if telling a

18  newspaper that a complaint exists could make the tipster liable, the complaint does not

19  sufficiently allege that Allstate contacted the newspaper in the first place.  The Doctors allege that

20  Allstate caused the article to be written, and that the insurance company contacted the media.[31]

21  But these are conclusory allegations I need not credit.

22

23  ───────────────

24      [28] The Doctors also suggest that contacting the media or filing this lawsuit could be an
    abuse of process.  But contacting the media does not involve using a judicial process and the mere
25  filing of a complaint cannot be an abuse of process. *See Laxalt*, 622 F. Supp. at 752.

26      [29] *Clark Cty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009).

        [30] *Id.* at 504.

27      [31] There are no specific allegations explaining how anything in these articles can be
    attributed to Allstate, other than the fact that Allstate filed its complaint.
28

1    Second, the Doctors' theory that Allstate is liable for republishing the article is equally

2    unavailing.  The Doctors vaguely allege that Allstate "republished" the article, but without

3    supporting facts and details that is too conclusory to survive a motion to dismiss.  The defendants

4    also allege that Allstate used search engine optimization to increase the number of people who

5    read the article and that this qualifies as republishing for purposes of defamation.[32]  Even if it

6    were true that Allstate used search engine optimization to increase traffic to the article somehow,

7    that would not constitute republishing.  Someone must actually repeat the false statement before

8    he will be considered a republisher, and the Doctors do not plausibly allege that Allstate ever

9    repeated anything.[33]

10    Third, the two statements Allstate's representative allegedly made to the press do not

11    constitute defamation or disparagement.  Both statements—that Allstate sought 1.7 million

12    dollars in damages in this case and that Allstate brought this case with the goal of preventing

13    frauds—are not defamatory because they reflect the allegations in the complaint and are thus

14    true.[34]  These statements are likely also protected opinion.[35]

---

16    [32] The Doctors also contend that because they have not explained what their "search engine optimization" allegations mean, I should assume that they meant to allege other facts that
17    would qualify as republishing. *See* ECF No. 61 at 31.  But that is not how pleading works; it is incumbent on the party making the claim to allege specific facts giving the other party fair notice
18    of what plausible claims it faces.

19    [33] *See, e.g.*, *U.S. ex rel. Klein v. Omeros Corp.*, 897 F. Supp. 2d 1058, 1073–74 (W.D. Wash. 2012) ("A mere reference does not directly publish the defamatory material.").  The
20    Doctors rely on *Yeager v. Bowlin*, 693 F.3d 1076, 1083 (9th Cir. 2012), for the proposition that anytime a defendant increases new traffic to an article on a website he has republished that article.
21    If anything, this case cuts the other way.  The Ninth Circuit held that making changes to a website that hosted a defamatory article, without changing the defamatory article itself, did not constitute
22    republishing.  The Doctors do not cite any authority suggesting that increasing the search-ranking of an article can be republishing for purposes of defamation.  Indeed, courts have widely held that
23    even linking or referring to a defamatory article is not enough. *See, e.g.*, *U.S. ex rel. Klein*, 897 F. Supp. 2d at 1073.
24

25    [34] *See Encompass Ins. Co. of MA v. Giampa*, 522 F. Supp. 2d 300, 312 (D. Mass. 2007) (holding that an insurer issuing a press release stating that it sought "1.8 million" in damages
26    could not be defaming because it accurately reflected the damages sought in the insurer's complaint).
27

28    [35] Courts have consistently protected every person's First Amendment right to communicate their opinion without fear of being sued for defamation. *Lieberman v. Fieger*, 338

Finally, these allegations cannot state a defamation or disparagement claim because the fair reporting privilege applies.  That privilege immunizes not just the media but "any person who makes a republication of a judicial proceeding from material that is available to the general public"—such as complaints filed in court.[36]

When telling others about what is happening in a judicial proceeding, a party is not held to the "standard of accuracy that would be adopted if it were . . . a professional law reporter."[37] Instead, the speaker is protected if she "conveys the 'gist' of the action, as measured by how those in the community where the matter was published would reasonably understand it."[38]  For example, Facebook's general counsel told the public that "[we] said from the beginning that [the other party's] claim was a fraud and that we would seek to hold those responsible accountable." A California appellate court held that statement was covered by the fair reporting privilege even though it did not precisely reflect what was in Facebook's complaint.[39]  The court explained that

---

F.3d 1076, 1079 (9th Cir. 2003).  Where the question is close, courts should "err on the side of non-actionability," "[g]iven the importance of the First Amendment principles at stake." *Adelson v. Harris*, 973 F. Supp. 2d 467, 487 (S.D.N.Y. 2013).  Allstate's statements about how much damages it believed it could prove and its own goals in bringing this suit are unactionable opinion. *See id.* (holding that statement that an investor was "tainted" was opinion); *Wynn v. Smith*, 16 P.3d 424, 431 (Nev. 2001); *Argentieri v. Zuckerberg*, 2016 WL 4151528 (Cal. Super. 2016) (holding that statement that another party committed fraud was opinion); *Jacques v. Bank of Am. Corp.*, 2014 WL 7272769, at *9 (E.D. Cal. Dec. 18, 2014) (holding that vague allegation that defendant stated plaintiff had "engaged in internal security fraud" was "too vague" to be anything but opinion).

[36] *Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 984 P.2d 164, 166 (Nev. 1999).  To be clear: defendants rely largely on cases about the litigation privilege, which applies only to communications made within the judicial process (not communications, say, to the media).  But the fair reporting privilege shields anyone who discusses a judicial proceeding as long as that discussion is a fair and accurate description of the proceeding—or here, a fair and accurate description of what is in a complaint. *Id.* (holding that the fair reporting privilege "extends to any person who makes a republication of a judicial proceeding from material that is available to the general public . . . [such as a] complaint").

[37] *Argentieri v. Zuckerberg*, 214 Cal. Rptr. 3d 358, 374 (Cal. App. 2017).

[38] *Id.*

[39] *Id.*

1  the statement was not "so great a distortion as to render it unfair or untrue."[40]  The fair reporting

2  privilege is inapplicable only when a party distorts what was in the complaint or discusses things

3  not in the complaint at all.[41]

4      Even if Allstate told the media about this case, described what was in the complaint to the

5  media, or republished existing articles that fairly report on this case, the fair reporting privilege

6  would protect it.  The only statements Allstate is alleged to have made fairly reflect what is in

7  Allstate's complaint, including the amount of damages it seeks and the fraud claim it brought.

8  And there are no allegations suggesting that the news articles do not accurately depict what is in

9  Allstate's complaint.  I must therefore dismiss the Doctors' claims for defamation and business

10 disparagement.  Because the fair reporting privilege shields Allstate from these claims,

11 amendment would be futile.  Thus, dismissal is with prejudice.

### D.  Intentional interference with existing contractual relations and prospective economic advantage

14      The elements of these claims are: "(1) a valid and existing contract [or a prospective one];

15 (2) the defendant's knowledge of the [prospective or existing] contract; (3) intentional acts

16 intended or designed to disrupt [those] relationship[s]; (4) actual disruption of the contract [or

17 relationship]; and (5) resulting damage."[42]

18      The Doctors allege that they had existing and prospective contracts with patients to treat

19 their injuries on a lien basis.  But the Doctors offer no specific facts showing that Allstate knew

20 about the Doctors' lien contracts.  Although the Doctors allege that Allstate was aware of the

21 contractual relationship because the patients' bills were submitted to Allstate, there is no plausible

22 allegation that those bills would show a lien-based contract existed between the patients and the

[40] *Id.*; *Lubin v. Kunin*, 17 P.3d 422, 427 (Nev. 2001) ("*Sahara Gaming* allows a party to report preliminary judicial proceedings from a fair and neutral stance, [but] a party may not don itself with the judge's mantle, crack the gavel, and publish a verdict through its 'fair report.'").

[41] *See Adelson*, 973 F. Supp. 2d at 486 (holding that under Nevada law a statement that an investor "approved of prostitution" was privileged because it accurately reflected what was in a declaration filed in that investor's court case).

[42] *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

1   Doctors.[43]  And the Doctors cannot plausibly claim that Allstate intentionally interfered with

2   contracts it did not know of.  Similarly, there are no allegations suggesting that Allstate knew

3   about the Doctors' future lien contracts, and so there is no plausible claim that Allstate interfered

4   with those either.[44]  Finally, the Doctors do not plausibly (i.e., with specificity) allege how

5   Allstate wrongly interfered with any of those contracts.[45]  I must therefore dismiss these claims.

6   But because it is possible that the Doctors could cure these defects if additional facts exist, I will

7   grant them leave to amend.

8          **E.  Deceptive trade practices**

9          The defendants allege that Allstate committed three species of deceptive trade practices:

10  violations of Nevada Revised Statutes sections 598.0915(5), 598.0915(8), and 598.092(8).

11         The first two violations are premised on Allstate having committed defamation or

12  business disparagement.[46]  Because I have dismissed those tort claims, these alleged violations

13  are unsupported.  The Doctors' final deceptive practices violation, under section 598.092(8), is

14  _____

15         [43] *See* ECF No. 48 at 42, ¶112 (alleging that the Doctors had contracts with patients that
16  included lien provisions), *id.* at ¶113 (alleging that Allstate knew that patients were being treated
     on a lien basis because they filed claims with Allstate); *id.* at ¶¶121-23 (similar allegations with
     respect to the prospective economic advantage claim).

17         [44] *Starr*, 652 F.3d at 1216.  The Doctors contend that they need not provide any more
18  specific allegations to support these claims because Rule 9's heightened pleading standard does
     not apply.  But Rule 8 prohibits the Doctors from relying on conclusory allegations that do not
19  provide Allstate with fair notice of the facts underlying their claims.

20         [45] I have already rejected the theory that Allstate is liable for the Review Journal article, so
21  that cannot be the basis of this claim.  To the extent that the Doctors also summarily allege that
     Allstate interfere by not "considering" patient claims or paying them out timely, the Doctors have
22  not provided any specific facts making that claim plausible.  For example, the Doctors provide no
     specific allegations allowing me to infer that Allstate did not consider their claims, that Allstate
23  delayed paying the Doctors' patients' claims for a significant period, or that these delays were
     "untimely."  Making all inferences in the Doctors' favor, I am left with the bare factual allegation
24  that Allstate did not consider claims and delayed making some payments; that lone allegation
     does not tip this claim from possible to plausible.

25         The Doctors also cite to *Roman v. Chase*, 2010 WL 5387631 (D. Nev. Dec. 21, 2010), but
26  that case supports Allstate.  There, the plaintiff's claim for intentional interference survived a
     motion to dismiss because he offered specific underlying facts about which contracts were
27  interfered with and how that interference was carried out. *Id.* at *3.

28         [46] ECF No. 61 at 36-38.

based on the allegation that Allstate is responsible for the statements written in the Review Journal article.  I have already dismissed the Doctors' claim that Allstate is liable for this article, so this allegation is unsupported as well.[47]  Accordingly, I must dismiss the Doctors' claim for deceptive trade practices.

## III.  **CONCLUSION**

IT IS THEREFORE ORDERED that the plaintiffs/counterdefendants' motion to dismiss **(ECF No. 52) is GRANTED**.  The counterclaims for abuse of process, defamation, business disparagement, and deceptive trade practices are dismissed with prejudice.  Within 21 days of entry of this order, the defendants may file an amended counterclaim asserting their intentional interference claims if they have sufficient factual allegations to cure the defects pointed out above.

IT IS FURTHER ORDERED that the plaintiffs/counterdefendants' motion to dismiss **(ECF No. 53) is DENIED as moot**.

DATED this 31st day of March, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[47] Because I dismiss the defendants' complaint, I need not reach Allstate's alternative arguments under Nevada's anti-SLAPP law. ECF No. 53.