1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

Allstate Insurance Company, et al.,

          Plaintiffs,

    v.

Russel J. Shah, M.D., et al.,

          Defendants.

And related counterclaims.

Case No. 2:15-cv-01786-APG-DJA

**Order**

    This is a conspiracy action arising out of Allstate Insurance Company's[1] allegations that Defendants Dr. Russel J. Shah, M.D. and Dr. Dipti R. Shah, M.D.[2] inflated their billings on personal injury claims to increase their patients' attorneys' settlements. Allstate sues the Radar Parties for damages, alleging violations of the Nevada and Federal Racketeer Influenced and Corrupt Organizations (RICO) Act, fraud, conspiracy to defraud, and constructive trust and unjust enrichment. (ECF No. 41). The Radar Parties counterclaim for damages alleging intentional interference with contractual relations and intentional interference with prospective economic advantage. (ECF No. 145).

    The Radar Parties now move to compel Allstate to respond to outstanding discovery requests. (ECF No. 430). They also move to seal portions of and exhibits to their reply in support of that motion. (ECF No. 438). Because the Court finds that the Radar Parties have

---

[1] Plaintiffs include Allstate Insurance Company; Allstate Property and Casualty Insurance Company; Allstate Indemnity Company; and Allstate Fire & Casualty Insurance Company. Collectively, the Court refers to Plaintiffs as "Allstate."

[2] Defendants include Dr. Dipti Shah, M.D. and her husband Dr. Russell J. Shah, M.D.; along with their companies Dipti R. Shah, MD, Ltd.; Russel J. Shah, MD, Ltd.; and Radar Medical Group, LLP d/b/a University Urgent Care. Collectively the Court refers to Plaintiffs as the "Radar Parties."

1  carried their burden of showing that the discovery sought is relevant and proportional, but Allstate

2  has not carried its burden to show that the discovery is objectionable, the Court grants the motion

3  to compel.  Because the Court finds that sealing the exhibits to and portions of the Radar Parties'

4  reply is warranted, it grants the motion to seal.

5  **I.       Legal Standard.**

6          If a party resists discovery, Rule 37 authorizes the requesting party to file a motion to

7  compel.  Fed. R. Civ. P. 37(a)(1).  The motion must include a threshold showing of relevancy.

8  *See, e.g.*, *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 438-39 (9th Cir.

9  1992); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (9th Cir. 1992); *Guzman v. Lincoln Tech.*

10  *Inst., Inc.*, No. 2:13-cv-2251-RFB-VCF, 2015 WL 1729711, at *1 (D. Nev. Apr. 15, 2015).[3]  This

11  is a relatively low threshold.  *Tsatas v. Airborne Wireless Network, Inc.*, No. 2:20-cv-02045-

12  RFB-BNW, 2022 WL 74003, at *2 (D. Nev. Jan. 7, 2022) (internal citations and quotations

13  omitted).  However, although relevance is defined very broadly, it is not without boundaries;

14  discovery must also be proportional.  *See Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir.

15  1998) (citation omitted); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2014) ("[d]istrict

16  courts need not condone the use of discovery to engage in 'fishing expeditions'") (citation

17  omitted); Fed. R. Civ. P. 26(b)(1) (providing that, to be discoverable, information must be

18  proportional to the needs of the case).

19          The party opposing discovery has the burden of showing that the discovery is, among

20  other things, irrelevant, overly broad, or unduly burdensome.  *See Fosbre v. Las Vegas Sands*

21  *Corp.*, No. 2:10-cv-00765-APG-GWF, 2016 WL 54202, at *4 (D. Nev. Jan. 5, 2016) (citing

22  *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-54 (S.D. Ind. 2000)).  To meet this

23  burden, the objecting party must specifically detail the reasons why each request is objectionable.

24  *See Fosbre*, 2016 WL 54202, at *4.  Federal Rule of Civil Procedure 26(b)(2)(C) further limits

25  _____

26  [3] "Many courts simply rely on the non-moving party demonstrating that the discovery sought is
    not relevant and do not address this threshold showing by the moving party.  The requirement of a

27  threshold showing makes sense given the language of Rule 26 (allowing parties to obtain
    information regarding matters relevant to a claim or defense)."  *Tsatas*, 2022 WL 74003, at *2

28  n.2.

discovery and allows the Court to restrict discovery where it is "outside the scope of Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(3). In deciding whether to restrict discovery under Federal Rule of Civil Procedure 26(b)(2)(C), the Court "should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Caballero v. Bodega Latina Corp.*, No. 2:17-cv-00236-JAD-VCF, 2017 WL 3174931, at *3 (D. Nev. July 25, 2017) (internal citations and quotations omitted). District courts have broad discretion when determining relevance for discovery purposes. *Tsatas*, 2022 WL 74003, at *2.

## II.    Discussion.

### A.    *The Court grants the Radar Parties' motion to compel.*

The Radar Parties move to compel the Allstate parties to respond to one request for production and two interrogatories. (ECF No. 430).

> **Request for Production (RFP) 3:**
> Produce documents, including, but not limited to, Explanations of Benefits[] reflecting internal audits of billing by the Radar Parties for patients with dates of loss starting January 26, 2017, through the present.[4]

> **Response to RFP 3:**
> Plaintiff objects on the grounds that the request is vague, ambiguous and overbroad. Plaintiff further objects to this request on the grounds that it calls for private and confidential information under HIPAA. Defendants request[] that in response to this request for production Allstate expand on a previously produced spreadsheet produced in and around 2017. Plaintiffs object[] on the grounds that

---

[4] RFP 3 included the following footnote:

***This request is similar to Request No. 262 to [sic] the Radar Parties' First Set of Requests for Production of Documents to the Allstate Parties, to which the Allstate Parties agreed to produce responsive documents.*** Specifically, with its Seventeenth Supplement to Initial Disclosures, the Allstate Parties produced the "Mitchell CPT data spreadsheet," bates numbered ALLSTATE10-161, containing information for patients with dates of loss ranging from January 2, 2007, to January 25, 2017. Through this request, the Radar Parties request that the Allstate Parties supplement the Mitchell CPT data spreadsheet with information for patients with dates of loss starting January 26, 2017, through the present.

the information is not relevant to any claim or defense of Defendants and is not proportional to the needs of this case. Even if there were some marginal relevance, and there is none, given the minimal importance of the discovery in resolving the issues in this case, the burden or expense of the proposed discovery outweighs its likely benefit. In addition, Allstate is obligated to produce those documents in its possession and is not obligated to create a document in response to a request for production of documents. Further, Allstate had previously produced, via agreement with Defendants, the claim notes from all claims post-filing of the lawsuit herein for a total of 119 claims. Information relevant to this request can be found in those claim notes.

(ECF No. 430 at 5).

The Radar Parties argue that the requested documents would show whether Allstate treated the Radar Parties' bills differently after filing the instant lawsuit. (ECF No. 430 at 4). They assert that these documents are relevant to defending against Allstate's claim that it was duped into accepting the Radar Parties' allegedly fraudulent bills when valuing its insureds' claims. (*Id.*). The Radar Parties explain that, if Allstate considered certain of the Radar Parties' bills even after filing the lawsuit, that evidence could defeat Allstate's claims that, had it known of the alleged fraud, it would have ignored the Radar Parties' bills. (*Id.*). On the other hand, if Allstate ignored the Radar Parties' bills, that evidence would demonstrate that Allstate always had the power to do so, even before filing the suit. (*Id.*). The Radar Parties add that the evidence they seek through this RFP is relevant to their counterclaims that Allstate has arbitrarily refused to consider the Radar Parties' bills to drive them out of business. (*Id.*). The Radar Parties point out that Allstate already produced a spreadsheet responsive to the nearly identical RFP 262 and would thus only need to update it to include January 26, 2017 to the present.[5] (*Id.* at 11). The Radar Parties assert that this should be an easy task because of Allstate's software and, even if not, Allstate makes serious allegations, seeks a substantial sum of damages, and has ample

---

[5] The Radar Parties add that the spreadsheet Allstate made in response to RFP 262 captures most of the information in the Explanations of Benefits they requested and thus, was effective in lieu of the Explanations of Benefits. (ECF No. 430 at 11). While the Radar Parties ask Allstate to update this spreadsheet in response to RFP 3, they add that, "if the Allstate Parties prefer, they may simply produce Explanations of Benefits." (*Id.* at 11 n.8).

1    resources, negating proportionality concerns.  (*Id.*).  And regarding Allstate's objection that it has

2    already produced claims files dated after the lawsuit, the Radar Parties argue that the claims files

3    do not provide the same sort of internal analysis that the spreadsheet does.  (*Id.*).

4            Allstate responds that the Radar Parties already have post-lawsuit data ranging from 2014

5    to January 25, 2017 that Allstate produced in the spreadsheet responsive to RFP 262. [6]  (ECF No.

6    433 at 5).  But the Radar Parties have failed to use that data in depositions or as the basis for the

7    arguments it now makes.  (*Id.*).  Allstate asserts that the spreadsheet shows only numbers and

8    codes, meaning that, for the Radar Parties to derive meaning from the spreadsheet, the case would

9    become infused with analyses about why certain bills were allowed or not.  (*Id.* at 5).  Allstate

10   asserts that this level of analysis, this late in discovery, is too broad.  (*Id.*).  Moreover, creating the

11   spreadsheet is an in-depth process, requiring Allstate to analyze and verify data.  (*Id.*).  Regarding

12   its objection that it already produced responsive information in the form of claims files, Allstate

13   argues that those files show its internal analysis regarding the claim and thus, should address the

14   Radar Parties' concerns.  (*Id.* at 8).

15           The Radar Parties argue in reply that they did question deponents about the data in the

16   spreadsheets, just not the spreadsheets themselves, mooting Allstate's argument.  (ECF No. 439 at

17   6-8).  Allstate's argument that the spreadsheets show only numbers and codes fails, the Radar

18   Parties assert, because the numbers and codes are important to their analysis about how Allstate

19   interpreted the data.  (*Id.* at 8-9).  They add that this information is particularly relevant to their

20   damages calculation.  (*Id.*).  Regarding Allstate's argument that compiling the spreadsheet would

21   be too difficult, the Radar Parties assert that Allstate failed to support this argument with an

22   explanation and thus, the argument should fail.  (*Id.*).  The Radar Parties conclude that the claim

23   notes do not provide the line-by-line analysis they need, and that Allstate is not able to dictate

24   what the Radar Parties can use to present their case.  (*Id.*).

25

26   _____

27   [6] The spreadsheet Allstate already produced ranged from January 2, 2007 through January 25,
     2017.  (ECF No. 433 at 5).  Allstate filed its complaint on September 17, 2015, which complaint
28   only addressed claims through 2014.  (*Id.*).

The Court grants the Radar Parties' motion to compel a response to this RFP.  As a preliminary matter, the Court is not equipped to decide whether the claim notes are responsive to this request.  The parties offer opposing interpretations of the information these notes provide and, without the notes to reference or a nuanced understanding of what those notes contain, the Court cannot resolve the issue.  Nonetheless, the Radar Parties have met their obligation to show that the information they seek is relevant.  They assert that data about how Allstate handled their bills post-lawsuit will support their defense and their counterclaims.  Their arguments are sufficient to meet the low threshold for relevancy and the Court is not persuaded by Allstate's arguments that the information is irrelevant because the Radar Parties did not use it in depositions.  While proportionality is a closer question, the Court finds that the evidence is proportional because the Radar Parties assert it is vital to their damages and the RFP relates only to the Radar Parties' patients.  On the other hand, Allstate has not met its burden of showing that the evidence is overly burdensome.  The data the Radar Parties seek spans a long time—from 2017 to the present—and the Court recognizes that it may not be simple to compile.  But other than stating that the data is difficult to compile, Allstate has not explained why producing the data would be disproportional.  Moreover, discovery has closed, mooting Allstate's concerns that their response will result in expanding discovery right before the deadline.  And to the extent Allstate is concerned that producing the data would complicate trial with detailed analyses, that question is not before the Court at this stage.  The Court thus grants the Radar Parties' motion to compel Allstate to respond to this request.

> **Interrogatory (ROG) 14:**
> For each of your insureds for whom you made payments to the claimants at issue in this case to settle their claims,[7] identify the amounts charged in annual premiums for their auto insurance policy, beginning one year preceding the date of loss associated with the

---

[7] The Radar Parties explain in a footnote that the "[c]laimants at issue in this case include the Allstate Parties' own insureds to whom payments were made in response to first-party UM/UIM claims."  (ECF No. 430 at 6 n.4).

1

2

3

claim to the present.  For example, with respect to [T.T.][8] (Claim No. 116339052), identify the amount charged in annual premiums for the auto insurance policy held by [F.Z.] for the years 2007 through the present.

4

5

6

7

8

9

10

11

12

**Response to ROG 14:**
Plaintiffs object to this request on the grounds that it is vague, ambiguous and overbroad.  Plaintiffs also object on the grounds that the information requested is not relevant to any claim or defense of Defendant RADAR MEDICAL GROUP, LLP dba UNIVERSITY URGENT CARE and is not proportional to the needs of this case. Even if there were some marginal relevance, and there is none, given the minimal importance of the discovery in resolving the issues in this case, the burden or expense of the proposed discovery outweighs its likely benefit.  Plaintiffs object that this request is unduly burdensome.  Plaintiffs also object to this request in light of the confidential and proprietary nature of the information requested. Therefore, Plaintiffs will not provide a response.

(ECF No. 430 at 14).

13

14

15

16

17

18

19

20

21

22

23

24

    The Radar Parties argue that Allstate made a statement to the press related to this lawsuit that its "goal is to ultimately keep costs down for Nevada consumers and to prevent fraud."  (ECF No. 430 at 12).  The Radar Parties assert that the implication of this statement is that the "Radar Parties' purported fraud caused the Allstate Parties to charge more in insurance premiums in Nevada." (*Id.*).  Based on this implication, the Radar Parties explain that they are entitled to learn about whether Allstate raised its insureds' premiums. (*Id.* at 4).  The Radar Parties explain that, if Allstate recouped money it paid out to its insureds on the Radar Parties' allegedly fraudulent bills, then it would prove that Allstate is not the direct victim of alleged racketeering and that Allstate's damages are too attenuated to form the basis of its RICO claims. (*Id.*).  They conclude that whether Allstate raised its insured's premiums after the accidents is relevant to show whether Allstate mitigated its losses by shifting the cost of the allegedly fraudulently billed payments to its insureds. (*Id.* at 13).

25

26

27

28

---

[8] The Radar Parties added, and the Court retains, initials in lieu of patients' names to protect their privacy interests.

Allstate responds that the Radar Parties have taken its statement out of context. (ECF No. 433 at 16). Instead of insinuating that the Radar Parties' fraud caused insurance premiums to go up, Allstate asserts that the statement is "about people educating themselves about the different types of fraud." (*Id.*). Allstate argues that, beyond the Radar Parties' speculation about the meaning of Allstate's statement, insurance premiums are irrelevant to the litigation and, because it asks for a fifteen-year history for each insured related to the litigation, not proportional. (*Id.* at 17). Moreover, Allstate asserts that producing this information would violate the privacy rights of its insureds. (*Id.*). Regarding the Radar Parties' arguments that premium amounts will show that Allstate was not the direct victim of alleged racketeering, Allstate explains that premium amounts are based on too many factors to list, and that any attribution of raised premiums to the Radar Parties' fraud would be speculative. (*Id.* at 17-18). Regarding the Radar Parties arguments that Allstate's damages are too attenuated, Allstate points out that its damages are directly attributable to the Radar Parties because it paid discrete amounts on fraudulent bills. (*Id.*). Regarding the argument about mitigating damages, Allstate argues that mitigation does not apply in RICO claims. (*Id.* at 18). Allstate concludes that the information sought is disproportional because the parties are nearing the end of discovery and the Radar Parties have not sought the documents since Allstate sued in 2015. (*Id.* at 19).

The Radar Parties reply that Allstate's argument about its insured's privacy rights is without merit because Allstate has already produced information about its insureds. (ECF No. 440 at 9). The Radar Parties assert that Allstate originally opened themselves to this form of discovery after insinuating that the Radar Parties caused insurance premiums to go up, and now reverse course when the Radar Parties attempt to put it to the test. (*Id.* at 10). Regarding Allstate's argument that its damages are easy to prove, the Radar Parties assert that whether Allstate believes it can prove its damages is irrelevant for the motion to compel. (*Id.* at 10-11). Instead, the Radar Parties argue that they are entitled to use discovery to show that those damages are speculative. (*Id.*). They argue that Allstate's disbelief that the Radar Parties can use premiums to show that Allstate is not a direct victim of alleged racketeering is irrelevant to the motion to compel. (*Id.*). They add that mitigation is an appropriate defense to RICO claims and,

1    even if it were not, it is an appropriate defense to fraud claims.  (*Id.*).  The Radar Parties address

2    Allstate's argument that the premium analysis is based on too many factors to narrow down by

3    stating that the complexity behind the premium amounts is relevant to showing that Allstate's

4    damages are speculative.  (*Id.* at 12).  The Radar Parties conclude that Allstate has provided no

5    authority that discovery sought near the end of the discovery period is improper.  (*Id.*).

6            The Court grants the Radar Parties' motion to compel a response to this ROG.  The Radar

7    Parties have met their burden of demonstrating that the information they seek is relevant.  This is

8    not a heavy burden and their arguments that the information is relevant to showing that Allstate is

9    not a direct victim and may have mitigated its damages meet that burden.  Whether the Radar

10   Parties took Allstate's statement out of context does not factor into the relevance and

11   proportionality analysis.  And as part of that analysis, the Court finds that the Radar Parties have

12   sufficiently shown that the information is relevant to their theories that Allstate's damages are too

13   attenuated and that Allstate mitigated its damages.  Whether those theories will ultimately prove

14   successful is not part of that analysis.  And Allstate's concerns that the analysis of their premium

15   charges will be too complex can ultimately be decided at trial.  Moreover, discovery is now

16   closed, mitigating Allstate's concerns that the Radar Parties will undergo more discovery into

17   these premiums after receiving the information.  Finally, the parties have a protective order in

18   place designed to protect the privacy rights of the insureds whose information has already been

19   produced through this litigation.  The Court sees no reason why the protective order would not do

20   the same for the insureds here.  The Court grants the Radar Parties' motion to compel Allstate to

21   respond to this request.

22           **ROG 15:**
         Identify and describe in detail each instance in which you have
23       refused to pay, or reduced the amount that you would pay, for any
         treatment rendered, medication prescribed, service provided, and/or
24       referral recommended by any of the Radar Parties from November
         14, 2016, to the present.  Include in your response for each claim in
25       which you denied payment (or reduced the amount for which
         payment would be internally allowed) as described in this request
26       the following:
         (a)    The claim number;
27       (b)    The patient's initials, date of birth, and date of loss;
28

(c)   The name of the patient's attorney, if applicable;
(d)   The name and capacity of your agent or employee who denied or otherwise refused payment;
(e)   Each CPT code used by Dr. Russell Shah, Dr. Dipti Shah, and/or a Nurse Practitioner for which you denied or otherwise refused payment; and
(f)   The reason code cited or otherwise relied on for non-payment, such as X998.[9]

**Response to ROG 15:**

Plaintiff objects on the grounds that the request is vague, ambiguous and overbroad.  Plaintiff further objects to this request on the grounds that it calls for private and confidential information under HIPAA.  Defendant RADAR MEDICAL GROUP, LLP dba UNIVERSITY URGENT CARE requests that in response to this interrogatory Allstate expand on a previously produced spreadsheet produced in and around 2017.  Plaintiffs object[] on the grounds that the information requested is not relevant to any claim or defense of Defendant RADAR MEDICAL GROUP, LLP dba UNIVERSITY URGENT CARE and is not proportional to the needs of this case. Even if there were some marginal relevance, and there is none, given the minimal importance of the discovery in resolving the issues in this case, the burden or expense of the proposed discovery outweighs its likely benefit.  Plaintiffs object that this request is unduly burdensome.  Further, Allstate had previously produced, via agreement with Defendant RADAR MEDICAL GROUP, LLP dba UNIVERSITY URGENT CARE, the claim notes from all claims post-filing of the lawsuit herein for a total of 119 claims. Information relevant to this interrogatory can be found in those claim notes.

(ECF No. 430 at 6-7).

The Radar Parties argue that the information they seek in ROG 15 is relevant for the same reason the information they seek in RFP 3 is: it would show whether and to what extent Allstate

---

[9] ROG 15 included the following footnote:

***This interrogatory is identical to Interrogatory No. 8 to Dr. Dipti Shah's Second Set of Interrogatories to the Allstate Parties, to which the Allstate Parties agreed to produce responsive information.***  Specifically, with its Thirteenth Supplement to Initial Disclosures, the Allstate Parties produced an untitled spreadsheet, bates numbered ALLSTATE1-9, containing information for patients with dates of loss ranging from September 22, 2015, to November 13, 2016.  Through this interrogatory, Radar Medical requests that Allstate supplement that spreadsheet with information involving patients with dates of loss beginning November 14, 2016, through the present.

1    treated the Radar Parties' bills differently after the lawsuit.  (ECF No. 430 at 14).  Moreover, they

2    assert that Allstate already responded to the nearly identical ROG 8 with a nine-page spreadsheet

3    without objection.  (*Id.*).  The Radar Parties argue that Allstate was thus already under an

4    obligation to supplement with updated information.  (*Id.*).  Regarding Allstate's reference to

5    claim notes as responsive documents, the Radar Parties explain that the claim notes do not

6    contain the internal audit notes that the Radar Parties need.  (*Id.*).

7          Allstate responds that the information the Radar Parties seek is not relevant because the

8    Radar Parties did not question any of the Allstate deposition witnesses about the information that

9    Allstate already produced in response to ROG 8.  (ECF No. 433 at 14).  Additionally, the nine-

10   page spreadsheet with which Allstate responded to ROG 8 covered claims from 2015 to 2016

11   because ROG 8 asked for information up to the present and Allstate produced the information in

12   2016.  (*Id.* at 15).  Allstate points out that the Radar Parties pointed to no authority that Allstate

13   was under a continuing obligation to continuously update its response.  (*Id.*).  Moreover, Allstate

14   asserts that the claim notes to which it cited in its objection are responsive because they contain

15   Allstate's reasoning for each claim.  (*Id.*).  Allstate concludes that its ample resources do not

16   make the requests proportional, particularly because the Radar Parties have requested this

17   information so late in discovery.  (*Id.* at 14-15)

18         The Radar Parties reply that the information is not rendered irrelevant simply because the

19   Radar Parties relied on the documents underlying the spreadsheet—and not the spreadsheet

20   itself—in depositions.  (ECF No. 439 at 6).  The Radar Parties argue that the claim notes do not

21   reveal on a "line-by-line basis, the results of internal audits for medical bills," meaning that they

22   are not a substitute for updated spreadsheets.  (*Id.* at 9).  The Radar Parties conclude that Allstate

23   is not able to dictate what evidence they can use to present their case.  (*Id.*).

24         The Court grants the Radar Parties' motion to compel a response to this ROG.  While the

25   Court disagrees that Allstate was under a continuous obligation to update their response to ROG

26   8, it finds the newly asserted ROG 15 to be relevant and proportional to the case.  For the same

27   reasons the Radar Parties met their threshold burden of showing that the information they sought

28   in RFP 3 is relevant, they have met their burden for ROG 15.  And the Court has already found

1   that Allstate's arguments about the Radar Parties not using these documents in depositions to be

2   unpersuasive.  The proportionality reasoning the Court applied to RFP 3 applies here too.  While

3   late in discovery, that discovery has closed will mitigate Allstate's concerns that producing

4   additional information will balloon discovery further.  The Court thus grants the Radar Parties'

5   motion to compel Allstate to respond to this request.

6         **B.**    ***The Court grants the Radar Parties' motion to seal.***

7         The Court grants the Radar Parties' motion to seal.  A party seeking to file a confidential

8   document under seal must file a motion to seal and must comply with the Ninth Circuit's

9   directives in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) and

10  *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).  A party

11  seeking to seal judicial records bears the burden of meeting the "compelling reasons" standard, as

12  articulated in *Kamakana*.  *See Kamakana*, 447 F.3d at 1183.  Under that standard, "a court may

13  seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its

14  ruling, without relying on hypothesis or conjecture.'"  *Ctr. for Auto Safety*, 809 F.3d at 1097.

15  (quoting *Kamakana*, 447 F.3d at 1179).  "The court recognizes that the need to protect medical

16  privacy has qualified as a 'compelling reason' for sealing records in connection with a dispositive

17  motion."  *Williams v. Nevada Dep't of Corrections*, No. 2:13-cv-941-JAD-VCF, 2014 WL

18  3734287, at *1 (D. Nev. July 29, 2014).  The failure of a party to oppose a motion constitutes

19  their consent to the granting of the motion.  LR 7-2(d).

20        The Radar Parties assert that they are seeking to seal twelve exhibits to their reply because

21  those exhibits discuss the private medical information of non-parties and Allstate's financial or

22  business information which the parties have designated as confidential under their protective

23  order.  (ECF No. 438 at 2-4).  They also move to redact portions of their publicly filed reply

24  because they address third-parties' medical records.  (*Id.* at 4).  Allstate did not respond to the

25  motion.  Although the instant motion is not dispositive, the Court nonetheless finds that the Radar

26  Parties have demonstrated compelling reasons to protect the exhibits to and redacted portions of

27  their reply because they bear on non-parties' private medical data.  The Court thus grants the

28

1  Radar Parties' motion to seal because the items they seek to seal deal in part with Allstate's

2  business information and in majority with the medical information of non-parties.

3

4       **IT IS THEREFORE ORDERED** that the Radar Parties' motion to compel (ECF No.

5  430) is **granted.**

6       **IT IS FURTHER ORDERED** that the Radar Parties' motion to seal (ECF  No. 438) is

7  **granted.**

8       DATED: August 15, 2022

9                                        _____

10                                    DANIEL J. ALBREGTS
                                  UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28