1

2

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

3   ALLSTATE INSURANCE COMPANY, et    Case No.: 2:15-cv-01786-APG-DJA
    al.,
4                                     **SEALED**
              Plaintiffs
5                                     **Order Granting in Part Defendants'**
    v.                                **Motion for Summary Judgment**
6
    RUSSELL J. SHAH, MD, et al.,      [ECF Nos. 460/461]
7
              Defendants
8

9        The plaintiffs (collectively, Allstate) are related Allstate companies who sued the

10  defendant doctors and their medical offices, alleging the defendants inflated their patients'

11  medical bills so the patients could extract more money from Allstate in personal injury

12  settlements.  Allstate asserts claims for federal and state RICO violations, fraud and conspiracy

13  to defraud, and unjust enrichment.  Allstate's claims are based on the defendants' medical bills in

14  197 personal injury claims that Allstate settled with the injured party, 150 of which are third

15  party insurance claims and 47 of which are uninsured/underinsured (UM/UIM) motorist

16  insurance claims.

17       The defendants (collectively, Radar) move for summary judgment on all of Allstate's

18  claims.  Allstate opposes.  The parties are familiar with the facts and the extensive record, so I

19  repeat the facts only as necessary to resolve the motion.  I grant Radar's motion in part.

20  **I.  ANALYSIS**

21       Summary judgment is appropriate if the movant shows "there is no genuine dispute as to

22  any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

23  56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

## A.  Causation and Damages

Radar contends that all of Allstate's claims fail because Allstate cannot show that the alleged fraudulent billing caused Allstate's claimed damages.  Radar argues that the factors in a RICO proximate cause analysis show that Radar did not proximately cause Allstate's harm because the patients are more direct victims, Allstate's damages are speculative, and the court will have to adopt complicated rules to apportion damages between Allstate and the patients. Additionally, Radar asserts that it is undisputed that the patients were in auto accidents, hired attorneys, and brought claims against Allstate, so regardless of Radar's bills, Allstate would have had to adjust the claims.  Radar contends that the question thus is whether Allstate can raise an issue of fact that but for Radar's alleged fraudulent bills, Allstate would have paid less to settle the claims.  Radar argues that the evidence shows that for 45 patients, Allstate would have settled for the same amount regardless of Radar's bills.  Radar contends that for the remaining patients,

1   Allstate's witnesses cannot state that Allstate could have settled for less because too many

2   factors impact settlement, including whether the claimant would have accepted a lower amount.

3   And Radar contends that the settlements were paid to the claimants in lump sums without

4   designating what portion represented Radar's or other medical providers' bills, so Allstate cannot

5   show that any of the settlement amount was related to Radar.  Radar thus contends that all of

6   Allstate's claims fail because causation is too remote and damages are too speculative.

7          Allstate responds that the objective of Radar's fraudulent scheme was to bilk Allstate out

8   of money, so but-for and proximate cause are satisfied.  Allstate contends that Radar treated its

9   patients on a lien basis and thus knew that payment would primarily come from insurance

10  companies like Allstate, who Radar knew would rely on those bills in settling the claims.

11  Allstate argues that Radar thus inflated medical bills through a variety of fraudulent means

12  (including illegal referrals, unnecessary treatment, upcoding, and billing for treatments never

13  provided) for the very purpose of inducing Allstate to pay more to settle the claims.  Allstate

14  contends that the patients are not more direct victims because they did not pay for the fraudulent

15  charges, Allstate's damages are not speculative, and there is no complicated apportionment

16  needed.  As for damages, Allstate asserts that it need not engage in the speculative exercise of

17  whether it could have settled the claims for less absent the fraud because Radar's deceptive

18  conduct is what has created the uncertainty, and uncertainty as to the amount of damages does

19  not preclude recovery.  Allstate contends that its damages model, which seeks to recover the

20  internally allowed amount that Allstate assigned to Radar's bills, along with some adjustments in

21  particular claims, is a sufficient basis for a jury to award damages.

22          To pursue a civil RICO claim under 18 U.S.C. § 1964(c), a plaintiff must show that it

23  was harmed in its business or property "'by reason of' the RICO violation." *Painters & Allied*

3

1  *Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1248

2  (9th Cir. 2019) (quoting § 1964(c)).  This requires the plaintiff to show "both proximate and but-

3  for causation." *Id.*  Proximate cause "demand[s] . . . some direct relation between the injury

4  asserted and the injurious conduct alleged." *Id.* (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503

5  U.S. 258, 268 (1992)).  In determining whether an injury is direct or too remote to support

6  causation, I consider "three nonexhaustive factors":

7  > (1) whether there are more direct victims of the alleged wrongful conduct who
   > can be counted on to vindicate the law as private attorneys general; (2) whether it
8  > will be difficult to ascertain the amount of the plaintiff's damages attributable to
   > defendant's wrongful conduct; and (3) whether the courts will have to adopt
9  > complicated rules apportioning damages to obviate the risk of multiple recoveries.

10  *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1169 (9th Cir. 2002).  Nevada law also requires

11  proximate cause for fraud.[1] *Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007).

12        Radar treated patients on a lien basis with the understanding that Radar would be paid

13  through a later settlement between the patient and the insurance company, and Radar knew the

14  insurance company would rely on Radar's bills as part of settling the insurance claim. *See, e.g.*,

15  ECF Nos. 560-2 at 11-12; 560-15 at 4; 560-18 at 10.  Radar does not dispute for purposes of this

16  motion that it engaged in various types of fraudulent billing—including upcoding, unnecessary

17  treatment, illegal referrals, or treatment that was billed but never provided—to inflate the value

18  of the insurance claims.  A reasonable jury could find that Allstate relied on those bills to

19  negotiate settlements with the insurance claimants. *See, e.g.*, ECF Nos. 469-1 at 159; 477-1 at

20  91; 486-2 at 35.  Thus, Allstate's injury can be directly traced to the alleged mail and wire fraud.[2]

21

22  [1]  The parties do not argue that Allstate could establish causation for federal civil RICO but not
23  the state law claims or vice versa.

[2]  In reaching this conclusion, I do not agree with Allstate's position that merely because the
object of the conspiracy was to bilk Allstate out of funds, proximate cause is established.  In the

1  I cannot say at this stage of the proceedings that Allstate's injury is too remote as a matter of law

2  under the three factors for determining direct injury for a RICO claim.

3                              1.  More Direct Victims

4          Radar argues that the patients are the more direct victims because ultimately the patients

5  are responsible for paying the medical bills regardless of an insurance settlement.  Radar's

6  argument presumes that there can be only one direct victim. *See Harmoni Int'l Spice, Inc. v.*

7  *Hume*, 914 F.3d 648, 652 (9th Cir. 2019) ("The defendants assume there can be only one direct

8  victim entitled to recover damages under RICO, but that is not always the case.").  Moreover, the

9  patients cannot be counted on to vindicate the law where the treatment was provided on a lien

10 basis and the liens were negotiated down after the insurance company settled the claims.  After

11 settling their insurance claims and their medical bills, the patients would be disinclined to

12 investigate or pursue legal action.  And individual patients are unlikely to discover a widespread

13 scheme of sophisticated medical billing fraud such as upcoding or illegal referrals, or to be able

14 to discern when some medical treatment is unnecessary.  This factor therefore weighs in favor of

15 finding Allstate's injury is direct.

16                              2.  Damages

17         Allstate's damages are not so speculative that causation fails as a matter of law.

18 Damages "need not be proven with mathematical exactitude," and "the mere fact that some

19 uncertainty exists as to the actual amount of damages sustained will not preclude recovery."

20 *Frantz v. Johnson*, 999 P.2d 351, 360 (Nev. 2000) (per curiam); *see also Pac. Shores Props.,*

21 *LLC v. City of Newport Beach*, 730 F.3d 1142, 1170-71 (9th Cir. 2013) (stating that "while the

22

23 ─────────────────────────
Ninth Circuit, neither specific intent nor foreseeability can substitute for proximate cause. *See*
*Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 929 (9th Cir. 1994).

1   damages may not be determined by mere speculation or guess, it will be enough if the evidence

2   show the extent of the damages as a matter of just and reasonable inference, although the result

3   be only approximate" (quotation omitted)).  "The rule against the recovery of uncertain damages

4   generally is directed against uncertainty as to the existence or cause of damage rather than as to

5   measure or extent." *Knier v. Azores Constr. Co.*, 368 P.2d 673, 675 (Nev. 1962); *see also*

6   *Mendoza*, 301 F.3d at 1171 ("[I]t is important to distinguish between uncertainty in the fact of

7   damage and in the amount of damage.").  "Although the amount of damages need not be proven

8   with mathematical certainty, testimony on the amount may not be speculative." *Clark Cnty. Sch.*

9   *Dist.*, 168 P.3d at 97.  Thus, Allstate must provide an evidentiary basis from which a jury may

10  determine damages. *Frantz*, 999 P.2d at 360.

11          Viewing the evidence in the light most favorable to Allstate, a reasonable jury could find

12  that Allstate has provided a basis on which to award nonspeculative damages for some of the

13  claim files that underly this lawsuit.  Allstate bases its damages on having considered Radar's

14  fraudulently inflated bills in adjusting certain claims submitted to Allstate. ECF No. 561-14 at 6,

15  8.  In brief and simplified terms, when an Allstate claims adjuster handles a claim, the claimant's

16  medical bills are run through a computer program called Mitchell DecisionPoint, which provides

17  suggestions for, among other things, the usual and customary rate for medical billing in a

18  particular geographic area to come up with "allowed amounts" for the patient's medical bills.

19  *See, e.g.*, ECF Nos. 561-14; 464-3; 464-4; 560-14 at 7-10.  The allowed amounts, also called

20  special damages, are then fed into a separate computer program called Colossus, which considers

21  the allowed amounts plus other factors to generate a valuation of general damages (such as pain

22  and suffering) and a proposed settlement range inclusive of both special and general damages. *Id.*

23  The adjuster is not bound by what the computer programs produce and can manually change the

1    programs' output. *Id.* Because a claimant's medical bills inform both special and general

2    damages, the overall settlement amount is impacted by the dollar amount of the claimant's

3    medical bills. A reasonable jury thus could find that in those cases where Allstate considered

4    Radar's bills in negotiating a settlement, the fact of damage is reasonably certain.

5        As for the measure of damages, Allstate Special Investigation Unit Analyst Aaron

6    Patterson sets forth Allstate's damages calculation.[3] ECF No. 561-14. Allstate seeks as damages

7    the allowed amounts that it calculated for Radar's bills in adjusting particular claims, with

8    certain adjustments. *Id.* at 12-14, 47-50. First, Allstate pursues allowed amounts only where its

9    medical experts have opined that the treatment or bills were unreasonable or unnecessary. *Id.* at

10   12. Second, Allstate adjusted where the total allowed amount for medical bills from all

11   providers exceeded the policy limit. *Id.* at 12-13. Third, Allstate adjusted for outside coverage

12   from another insurer, such as when the claim at issue was a UIM claim. *Id.* at 13-14.

13       Radar contends this methodology is too speculative and Allstate's damages are uncertain

14   because Allstate's adjusters concede that settlements are driven by many factors beyond Radar's

15   bills. Radar notes that Allstate's own witnesses could not state whether any claim would have

16   settled for less than it did, much less that the difference would be measured by Allstate's

17   internally allowed amount. But the measure of damages need not be precise, particularly where

18

19   [3] In reply, Radar objects to Patterson's declaration. ECF No. 572 at 10-12. I overrule Radar's
     objections. The aspects of Patterson's declaration that support denial of summary judgment are
20   not vague or conclusory. To the extent Radar believes there are contradictions between
     Patterson's testimony and that of Allstate's Rule 30(b)(6) witnesses, the examples Radar
21   identifies are not necessarily contradictory and Radar can explore those issues at trial. Radar's
     other objections similarly go to the weight of Patterson's declaration, not its admissibility,
22   because Radar's objections assume the correctness of its arguments. Patterson has knowledge
     and experience regarding how inflated medical billing affects Allstate's claims handling and
23   settlement amounts. Although Radar may have fodder for undermining Allstate's causation and
     damages theories at trial, Patterson's declaration provides a sufficient basis for a jury to
     determine Allstate's damages if they find in Allstate's favor.

Radar's alleged fraud has created the uncertainty. Allstate cannot go back in time and recreate a world where everyone knew about Radar's alleged fraud. Allstate's proposed damages model gives the jury some basis grounded in evidence to calculate damages. Thus, for at least some of Allstate's damages, this factor weighs in favor of finding Allstate's injury is direct.

However, Allstate does not present an evidentiary basis for the jury to find that Allstate was harmed where Radar's bills had no impact on settlement. These generally fall into three types of claims: (1) where other medical providers' bills or other factors like a future surgery recommendation led Allstate to settle for policy limits regardless of Radar's bills; (2) where Allstate's adjusters stated they were not considering any of Radar's bills in negotiating a settlement; or (3) where Allstate's Rule 30(b)(6) witnesses testified that more likely than not, the claim could not have settled for less even if Radar's bills were disregarded. *See, e.g.*, ECF Nos. 465-1 at 157, 190, 214-16; 466-1 at 2; 468-1 at 84; 469-1 at 121, 125; 471-1 at 71-72; 472-1 at 72-73, 180; 473-2 at 34-35. In these instances, Radar is entitled to summary judgment not just because of the uncertainty as to the amount of Allstate's harm, but uncertainty about the fact of harm at all. Allstate asserts that as soon as Radar submitted its fraudulent bills, the harm was done. But Allstate does not explain why, and its damages model is not tied to any theory other than that Allstate paid more than it should have to settle claims. Allstate does not argue, for example, that it was harmed because its adjusters wasted time reviewing fraudulent billing so it should be compensated for the monetary value of that time. Even if this was Allstate's theory of harm, its damages model is completely unconnected to that theory. The amount Radar billed for performing medical treatment on patients has no relation to the amount of time Allstate spent reviewing those bills.

Accordingly, I grant Radar's motion with respect to those underlying claims where Radar's bills had no impact on settlement. The parties shall confer and submit a stipulation identifying those claims they agree meet the criteria. Additionally, for any claims to which they do not agree, they must submit a joint status report setting forth their respective positions.

### 3.  Apportioning Rules

Complicated rules to apportion damages may be needed to obviate the risk of multiple recoveries. Allstate contends there are no complications because patients never paid Radar out of their own pockets. That is incorrect. The settlement money belonged to the patients, whose attorneys then negotiated the liens with Radar. Allstate has not presented any evidence that it directly paid Radar and Radar denies that Allstate did so. ECF No. 462-1 at 4.

It is theoretically possible that a patient could have discovered the fraud and sued to recover from Radar some or all of what the patient's lawyer negotiated to pay Radar on the lien. That scenario appears unlikely however because, as discussed above, the patients are unlikely to pursue recovery and the patients received a higher overall settlement from Allstate due to the alleged fraud.[4] Accordingly, this factor weighs only slightly against finding Allstate's injury is direct.

### 4.  Summary

Viewing the facts in the light most favorable to Allstate, I cannot say as a matter of law that Allstate's injury from Radar's alleged predicate acts of mail and wire fraud is too remote to

---

[4] *See Allstate Ins. Co. v. Seigel*, 312 F. Supp. 2d 260, 268-69 (D. Conn. 2004) ("[T]he Court does not understand how Seigel's tort victim patients would be entitled to recover from Seigel for payments made by Allstate for medical tests that were never performed or improperly performed or for injuries that the tort victims never sustained. Any recovery of these sums by the tort victim patients from Seigel would be subject to reimbursement to Allstate—which, after all, is the party that is actually out-of-pocket as a result of Seigel's fraud—or, if there were no reimbursement, any such recovery by the tort victim patients would be a windfall for them.").

1 support causation.  A reasonable jury could find that Allstate's injury is directly traceable to the

2 alleged mail and wire fraud and, except for instances where Radar's bills did not impact

3 settlement, that the fraud caused Allstate's damages.  I therefore grant in part Radar's motion for

4 summary judgment on causation and damages.

5      **B.  Fraud**

6      Radar argues the fraud and related conspiracy claims (counts 3 and 4) fail because

7 Allstate has no evidence that it detrimentally relied on Radar's bills where Allstate paid the

8 policy limits for some claims without considering Radar's bills.  Radar also contends that for

9 other claims, Allstate chose to settle even though it was investigating Radar at the time, so it did

10 not detrimentally rely on those bills.  Finally, Radar asserts that Allstate did not accept Radar's

11 bills at face value, chose whether to consider or ignore bills for settlement purposes, and had

12 various tools to discover fraud, overbilling, and excessive treatment.

13      Allstate responds that its adjustors reviewed and relied on Radar's bills in negotiating

14 settlements, including in cases where Allstate chose to settle for reasons unrelated to Radar's

15 bills.  Allstate argues that although it has some tools for discovering fraud, the adjustors are not

16 doctors and generally must accept the doctors' bills with some adjustments for charges above the

17 usual and customary rate for the area or for excessive treatment.  Additionally, Allstate notes that

18 it would have no way of determining whether treatment that was billed was never actually

19 provided.

20      I grant Radar's motion in part.  As discussed above, Allstate cannot show that it relied on

21 Radar's bills in certain types of claims where it settled for reasons unrelated to Radar's bills or

22 its adjusters chose to disregard all of Radar's bills.  But for the remainder of the underlying

23 claims, a reasonable jury could find that Allstate relied on Radar's bills to negotiate settlements.

1  *See, e.g.*, *Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1975); ECF Nos. 469-1 at 159; 477-1 at 91;

2  486-2 at 35.

3      **C.  Unjust Enrichment**

4      Radar argues the unjust enrichment claim fails because Allstate cannot show it conferred

5  a benefit on Radar where Allstate paid the claimants in a lump sum settlement without any

6  direction on how much Radar would receive.[5]  Allstate responds that it conferred a benefit by

7  relying on and including Radar's bills in negotiating and paying settlements, which are then used

8  to pay Radar's liens.

9      To show Radar was unjustly enriched, Allstate must establish that it conferred a benefit

10 on Radar, Radar appreciated the benefit, and Radar accepted and retained the benefit "under such

11 circumstances that it would be inequitable for [Radar] to retain the benefit without payment of

12 the value thereof." *Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683, 688 (Nev. 2021).

13     Viewing the facts in the light most favorable to Allstate, a reasonable jury could find that

14 Allstate conferred a benefit on Radar by including its bills in calculating a settlement range and

15 negotiating with the claimants' attorneys based in part on those bills, and those attorneys then

16 used the settlement funds to pay Radar's liens.  Radar treated its patients on a lien basis with the

17 understanding that this was how it would be compensated, so Radar knew and appreciated this

18 benefit.  A reasonable jury could find that the very purpose of the fraudulent billing was to obtain

19 funds from Allstate, with the claimants and their attorneys as conduits.  As discussed above,

20 however, Allstate cannot show it conferred a benefit on Radar where Radar's bills had no impact

21 on settlement.  I therefore grant in part Radar's motion for summary judgment on this claim.

22

23  _____
[5] Radar also argues that if I find the injury to Allstate is too remote for purposes of the RICO and
fraud claims, this claim also should fail.  Because I deny Radar's motion on that basis for the
other claims, I deny it for the unjust enrichment claim too.

## II.  CONCLUSION

I THEREFORE ORDER that the defendants' motion for summary judgment **(ECF Nos. 460/461) is GRANTED in part** as set forth above.  By September 1, 2023, the parties must confer and submit a stipulation identifying those claims they agree meet the criteria for summary judgment in Radar's favor as identified in this order.  For any claims to which the parties do not agree, they must submit a joint status report setting forth their respective positions.

I FURTHER ORDER the parties to review this order and determine what portions, if any, should be sealed.  Any party believing that parts of this order should be sealed must file a motion to seal by July 28, 2023, identifying with specificity what parts of the order should be redacted and explaining why those parts should be sealed under the standard set forth in *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006).  If no motion to seal is filed, this order will be unsealed in its entirety.  In the meantime, this order will remain sealed pending further order of the court.

DATED this 17th day of July, 2023.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE